IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICROSOFT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-090 (SLR) |
| | ) | |
| ALCATEL BUSINESS SYSTEMS and | ) | **REDACTED VERSION** |
| GENESYS TELECOMMUNICATIONS | ) | |
| LABORATORIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF THOMAS D. MORGAN

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Defendants*
  *Alcatel Business Systems and*
  *Genesys Telecommunications Laboratories, Inc.*

*Of Counsel*:
Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY  10022-4834
(212) 906-1200

David A. Nelson
LATHAM & WATKINS LLP
233 South Wacker Drive
Suite 5800
Chicago IL 60606
(312) 876-7700

Original Filing Date:  August 31, 2007
Redacted Filing Date:  September 10, 2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICROSOFT CORPORATION, | ) | |
| | ) | |
| *Plaintiff/Counterclaim Defendant,* | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 07-90-SLR |
| | ) | |
| ALCATEL BUSINESS SYSTEMS | ) | |
| and | ) | |
| GENESYS TELECOMMUNICATIONS | ) | |
| LABORATORIES, INC., | ) | |
| | ) | |
| *Defendants/Counterclaim Plaintiffs.* | ) | |

## DECLARATION OF PROFESSOR THOMAS D. MORGAN

I, Thomas D. Morgan, declare:

1. I am a graduate of the University of Chicago Law School and a member of the Bar of Illinois. From 1989 to 1998, and again since 2000, I have been the Oppenheim Professor of Antitrust and Trade Regulation Law at The George Washington University Law School. From 1998 to 2000, I served as the first Rex E. Lee Professor of Law at J. Reuben Clark Law School, Brigham Young University. From 1980 to 1985, I was Dean of the Emory University School of Law, and from 1985 to 1989, I was "Distinguished Professor of Law" at Emory. From 1966 to 1980, less time for military service, I was a professor at the University of Illinois College of Law.

2. Over the course of my career, the subject of most of my teaching and scholarly research has been the professional obligations of lawyers. I have taught courses in that subject one or more times each year since 1974.

   a. I have authored or co-authored numerous publications in that area, including a widely-used law school casebook in the subject, *Professional Responsibility: Problems and*

*Materials* (9th Edition 2006), published by Foundation Press.

     b.    I served as one of two Associate Reporters for the American Law Institute's Restatement of the Law (Third): The Law Governing Lawyers (hereafter Restatement), begun in 1986 and published in 2000. I also served for one year as one of two Associate Reporters for the American Bar Association's Commission on Revision of the Model Rules of Professional Conduct (Ethics 2000), whose work led to extensive revisions of the ABA Model Rules in 2002 and 2003. My book Lawyer Law, published in 2005, identifies over 200 kinds of lawyer obligations identified in the Restatement and the ABA Model Rules and what those authorities say about those obligations.

     c.    My curriculum vitae listing my publications, presentations and other professional activities is appended to this report as Attachment A.

     3.    I have rendered expert opinions on questions concerning lawyers' professional responsibilities, standards of care, and fiduciary obligations in affidavits, depositions and testimony in over seventy litigated cases, and my declarations, affidavits and testimony as an expert in those fields have been admitted in both state and federal courts all over the country. A list of cases in which I have testified at trial or been deposed since January 1, 2003, is appended to this report as Attachment B. I am being compensated at my regular fee of $600 per hour for my time in preparing this declaration.

     4.    I have reviewed the following fact materials in preparation of my opinions:

     a.    Declaration of Arnold Intal, dated August 22, 2007, and exhibits thereto.

     b.    Declaration of Jason Amiss, dated August 24, 2007.

     c.    Declaration of Po Ching Lin, dated August 27, 2007, and exhibits thereto.

     d.     A series of 350 pages of e-mails relating to the events described below, assembled by counsel for Alcatel.

     e.     Letter from Robert J. Malionek of Latham & Watkins to Linda Liu Kordziel of Fish & Richardson, dated August 24, 2007.

     f.     Response from John E. Gartman of Fish & Richardson to Robert J. Malionek, dated August 27, 2007.

     g.     Response from Mr. Malionek to Mr. Gartman, dated August 28, 2007.

     5.     I am, of course, not a fact witness to any of the following events, but based on reading the above-listed materials, I understand and assume the following facts to be true:

     a.     Sometime around June 13, 2007, Alcatel received a request from one of its business partners, Alliance Telecommunications, to help install an Alcatel OmniTouch Unified Messaging system and the Alcatel MyTeamwork application for a company called Miercom. On June 13, 2007, Alliance confirmed to Alcatel that Miercom wanted to use the two products with an Alcatel PBX system, and on June 18, 2007, Alcatel provided a quote for the installation. The Alliance representative said that this was a pilot installation and the customer promised to use Alcatel for more installations if this one went well.

     b.     I understand Miercom to be an important evaluator of such systems, so making the installation go well was important to both Alliance and Alcatel. Thus, on or about June 19, 2007, Alcatel assigned Po Ching Lin, who was one of a limited number of its senior engineers capable of performing the work, to make the installation at 1425 K Street, Washington, DC, a location that Alcatel understood to be a Miercom office. Mr. Lin was also assigned to provide confidential training on the administration, use and configuration of the Alcatel products,

3

something Alcatel only does for bona fide customers.

      c.     The work was to be performed from June 26 to 29, 2007. When Po Ching Lin and an Alliance technician, Dan McGirr, arrived at the designated address on June 26, however, they discovered that the occupant was Fish & Richardson, not Miercom. Mr. McGirr contacted Alliance and was told that they were at the right place for the installation.

      d.     Po Ching Lin was met at Fish & Richardson by Rama Elluru. During the installation at Fish & Richardson, Mr. Lin dealt extensively with Ms. Elluru and Joshua Pond, both of whom I am told are Associates at the Fish & Richardson law firm who have been actively working as counsel for Microsoft in the current proceedings with Alcatel. Later, Mr. Lin also met with Ahmed Davis, a principal in Fish & Richardson who again is one of the key lawyers representing Microsoft in the current proceedings with Alcatel.

      e.     Both Ms. Elluru and Mr. Pond, and presumably Mr. Davis, knew that Po Ching Lin was an experienced Alcatel professional service engineer. Neither Ms. Elluru, nor Mr. Pond, nor Mr. Davis, identified herself or himself as an attorney, and none of them revealed that they were representing Microsoft in a lawsuit against Alcatel concerning the very system Po Ching Lin was being asked to install and explain.

      f.     Throughout the installation process, Ms. Elluru and Mr. Pond asked Mr. Lin specific questions about the functionality of MyAssistant, how the Alcatel System performed call routing, how call routing could be performed using caller-identification or entries into a user's calendar using MyAssistant or Microsoft Outlook, and whether the Alcatel System could be used with a Microsoft Exchange Server. Ms. Elluru and Mr. Pond wrote down Po Ching Lin's answers to the questions, and requested and received copies of all end-user guides for the Alcatel System.

4

g.    On or about June 29, 2007, the MyAssistant software application was not working properly and Po Ching Lin was asked to return to Fish & Richardson to fix it but also to perform additional training. On July 2, 2007, he went back, fixed the MyAssistant problem and started training Ms. Elluru and Mr. Pond on the Alcatel System, providing them with confidential information intended only for customers. They, in turn, asked him extensive questions about the ability of an administrator to modify the call routing functionality of the system and whether the software could be integrated with Microsoft Outlook.

h.    On July 3, 2007, Ms. Elluru and Mr. Pond had Po Ching Lin return again to Fish & Richardson. This time they put him in a conference room while they allegedly tried to operate the Alcatel System on their own. They kept him there for 5 to 6 hours, during which time Ms. Elluru and Mr. Pond repeatedly asked questions directed primarily toward attempting to configure the Alcatel System to perform call routing based on entries in a user's Microsoft Outlook or My Assistant calendar. Po Ching Lin explained to them that the Alcatel System could not be integrated with the Microsoft Outlook's calendar to perform call routing.

i.    Also on July 3, 2007, during the time Ms. Elluru and Mr. Pond were questioning Po Ching Lin, Microsoft's technical expert Jack Chang was at the Fish & Richardson offices preparing his infringement expert report on the very system Po Ching Lin had been asked to install and about which Mr. Lin was being asked technical questions.

j.    Following the training, some technical personnel at Alcatel expressed concern about having done work at Fish & Richardson, but Alliance reassured them that it had been a "real install." The sequence of events and their significance became clear on August 14, 2007, however, when Alliance reported to Alcatel that Alliance realized Fish & Richardson had

5

deceived Alliance when it declared that it planned to install the Alcatel system nationwide.
Alliance also believed that Fish & Richardson had intimidated Alliance by threatening a lawsuit
if Alliance did not continue to provide Alcatel technical information and support, and Alliance
now realized that Fish & Richardson currently represented Microsoft in the current proceedings
with Alcatel. At that point, the matter was referred to Alcatel corporate counsel and, after
investigation, Alcatel lodged its written complaint with Fish & Richardson about the conduct of
Fish & Richardson attorneys and the effect of that conduct on these proceedings, including on
Mr. Chang's report.

6.      In my opinion, Ms. Elluru, Mr. Pond and Mr. Davis of Fish & Richardson
violated professional standards, including those set forth in ABA Model Rules of Professional
Conduct 4.1, 4.2, 4.3, 4.4 and 8.4(c). Those provisions are identical to the corresponding
provisions of the Delaware Lawyers' Rules of Professional Conduct. The named attorneys also
violated the only slightly different provisions of the DC Rules of Professional Conduct to which
they were also subject as members of the DC Bar.

a.      Model Rule 4.2 prohibits a lawyer from communicating "about the subject of the
representation with a person the lawyer knows to be represented by another lawyer in the matter"
without the consent of that person's lawyer or a court order. As applicable here, Alcatel is
represented by counsel in its litigation with Microsoft, and Microsoft is represented by Fish &
Richardson. Po Ching Lin is a senior professional services engineer at Alcatel whom Fish &
Richardson employees examined for several hours without Alcatel's counsel being present or
having given consent to the interview.

b.      I acknowledge at the outset that if Fish & Richardson had simply acquired an

6

Alcatel communications product for the firm's own use and had talked to a random Alcatel employee during installation in an effort to optimize how the system would meet the firm's needs, that contact would not have violated Model Rule 4.2. Comment 4 to Rule 4.2 captures that principle when it says: "[T]his rule does not prohibit communication with a represented person, or an employee or agent of such a person, concerning matters outside the representation."

      c.      However, the facts recited above that I assume to be true, take this case well beyond any safe harbor. Po Ching Lin is an experienced Alcatel engineer who had helped develop the system, not a random installer. He seems clearly to be the kind of person whose statements § 100 of the Restatement had in mind as having "the effect of binding the organization with respect to proof of the matter." Having Mr. Lin make the system function was one thing, but in my opinion, examining him in detail about the very matters at issue in this litigation clearly violated the principles underlying Model Rule 4.2.

      d.      Comment 7 to Model Rule 4.2 goes on: "In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization. See Rule 4.4." Alcatel had proprietary rights to the technical information and manuals that it entrusted to Po Ching Lin, and Alcatel had a right to determine to whom they should be communicated. In my opinion, Fish & Richardson deceived Po Ching Lin into turning the information over to Fish & Richardson in violation of Alcatel's rights. Such deception thus violated both Model Rules 4.2 and 4.4.

      e.      Even more offensive, and also violating the spirit of Rule 4.2, was the conduct of the Fish & Richardson attorneys that violated the first two sentences of Model Rule 4.3:

            In dealing on behalf of a client with a person who is not represented by counsel, a

lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

Po Ching Lin was not represented by counsel in his dealings with Ms. Elluru and the other Fish & Richardson attorneys. Any reasonable reading of the facts in this matter leaves no doubt that the Fish & Richardson attorneys knew that Po Ching Lin did not even know they were attorneys, must less that they represented Microsoft in litigation with Alcatel over the very matters about which they were questioning him.

      f.      DC Rule of Professional Conduct 4.2(b) expresses the Washington-based Fish & Richardson's lawyers duties in just such a situation as this:

> During the course of representing a client, a lawyer may communicate about the subject of the representation with a nonparty employee of an organization without obtaining the consent of that organization's lawyer. If the organization is an adverse party, however, prior to communicating with any such nonparty employee, a lawyer must disclose to such employee both the lawyer's identity and the fact that the lawyer represents a party that is adverse to the employee's employer.

In my opinion, while that language does not appear directly in Model Rule or Delaware Rule 4.2, it is absolutely consistent with the point made by the language I have quoted from Model Rule and Delaware Rule 4.3. *See also, Carter-Herman v. City of Philadelphia*, 897 F. Supp. 899 (E.D. Pa. 1995) (counsel may contact non-managerial police officers but must "advise any employee or member of the Philadelphia Police Department of: (a) counsel's representative capacity; (b) counsel's reasons for seeking the interview; (c) interviewee's right to refuse to be interviewed; and (d) the interviewee's right to have his or her own counsel present").

      g.      In addition, in my opinion, deception of Po Ching Lin and the Alcatel employees who sent him to provide technical assistance to Alliance in work said to be for Miercom, the

intermediary Fish & Richardson apparently used to avoid initial detection of its own role, violated Model Rules 8.4(c) and 4.1(a). Rule 8.4(c) prohibits a lawyer from engaging in "conduct involving dishonesty, fraud, deceit or misrepresentation." Rule 4.1(a) prohibits a lawyer's knowingly making "a false statement of material fact or law to a third person," and Comment 1 to Rule 4.1 says: "Misrepresentations can also occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements." It is hard to imagine a case more accurately described by those provisions. At least based on the facts I have seen, the Fish & Richardson lawyers' intent to deceive seems clear and it is simply irrelevant that much of the deception was by failing to correct misunderstandings and not exclusively by making statements that were affirmatively false.

7.     In addition, in my opinion, all supervisory lawyers at Fish & Richardson who ordered, or with knowledge of the specific conduct of the Fish & Richardson attorneys, ratified those attorneys' conduct in this matter violated the same cited standards. See ABA Model Rule 5.1(c) and the same provisions of the Delaware Lawyers' and DC Rules of Professional Conduct.

8.     I declare under the penalty of perjury that the foregoing are my true and correct opinions. I reserve the right to offer further opinions as additional information becomes available or other issues are raised by parties in this matter.

Thomas D. Morgan

Date: August **27** , 2007

9

EXHIBIT A

**Curriculum Vitae**                                      Atttachment A
**THOMAS D. MORGAN**

**Personal Data:**

Born:  February 8, 1942, in Peoria, Illinois

Home:  1314 Round Oak Ct., McLean, VA 22101     (703) 312-0001

Office: George Washington University Law School, 720 20th Street, N.W.,
     Washington DC 20052   (202) 994-9020   e-mail: tmorgan@law.gwu.edu

**Undergraduate Education:**

Northwestern University, Evanston, Illinois, 1959-62
     B.A. degree, highest distinction   Member, Phi Beta Kappa

**Legal Education:**

University of Chicago Law School, Chicago, Illinois, 1962-65
     J.D. degree with honors;  Member, Order of the Coif
     Comment Editor, Volume 32, University of Chicago Law Review

**Professional Experience:**

Oppenheim Professor of Antitrust and Trade Regulation Law, George Washington
     University, 1989-98; since 2000

Rex E. Lee Professor of Law, Brigham Young University, 1998-2000

Dean, Emory University School of Law, 1980-85
     Distinguished Professor of Law 1985-89

Professor of Law, University of Illinois, 1974-80
     Associate Professor, Illinois, 1970-74
     Assistant Professor, Illinois, 1966-67

Visiting Professor, Brigham Young University, Fall 1994
     Monash University (Australia), Spring 1988
     Cornell University, Winter 1974

Special Assistant to Assistant Secretary of Defense, 1969-70
     Attorney, Office of Air Force General Counsel, 1967-69

Bigelow Teaching Fellow, University of Chicago Law School, 1965-66

**Publications:**

**A.    In the Field of Professional Responsibility**

PROFESSIONAL RESPONSIBILITY: PROBLEMS AND MATERIALS (Foundation
   Press 1976); 2nd Edition 1981; 3rd Edition 1984; 4th Edition 1987; 5th Edition
   1991; 6th Edition 1995, 7th Edition 2000, 8th Edition 2003, 9th Edition 2006 (co-
   authored with R. Rotunda; with Teachers' Manuals)

SELECTED STANDARDS ON PROFESSIONAL RESPONSIBILITY (published
   annually since 1981) (co-authored with R. Rotunda)

AMERICAN LAW INSTITUTE, RESTATEMENT OF THE LAW (THIRD): THE
   LAW GOVERNING LAWYERS (2000) (with C. Wolfram & J. Leubsdorf)

LAWYER LAW: COMPARING THE ABA MODEL RULES OF PROFESSIONAL
   CONDUCT WITH THE ALI RESTATEMENT (THIRD) OF THE LAW
   GOVERNING LAWYERS (2005)

LEGAL ETHICS (Gilbert Law Summaries) (8th Edition 2005)

"Where Do We Go From Here with Fee Schedules?," 59 A.B.A.J. 1403 (1973)

"The Evolving Concept of Professional Responsibility," 90 Harvard L. Rev. 702 (1977)

"Appropriate Limits on Participation by a Former Agency Official in Matters Before
   an Agency," 1980 Duke L.J. 1

"Conflicts of Interest and the Former Client in the Model Rules of Professional Conduct,"
   1980 American Bar Foundation Research J. 993

"The Fall and Rise of Professionalism," 19 U. Richmond L. Rev. 451 (1985)

"Screening the Disqualified Lawyer: The Wrong Solution to the Wrong Problem," 10
   Univ. Arkansas (Little Rock) L. J. 37 (1987-88)

"An Introduction to the Debate over Fee Forfeitures," 36 Emory L. J. 755 (1987)

"Public Financial Disclosure by Federal Officials: A Functional Approach," 3
   Georgetown J. Legal Ethics 217 (1989)

"The Quest for Equality in Regulating the Behavior of Government Officials:  The
   Case of Extrajudicial Compensation," 58 George Washington L. Rev. 490 (1990)

2

"Thinking About Lawyers as Counselors," 42 Florida L. Rev. 439 (1990)

"Vintage Freedman in a New Bottle," Review of Freedman, Understanding Lawyers'
      Ethics, 4 Georgetown J. Legal Ethics 847 (1991)

"Heroes for Our Time: Going Beyond Ethical Codes," Clark Memorandum (Brigham
      Young University), Fall 1992, p. 23

"Economic Reality Facing 21st Century Lawyers," 69 Washington L. Rev. 625 (1994)

"Sanctions and Remedies for Attorney Misconduct," 19 S. Illinois U.L.Rev. 343 (1995)

"Legal Representation in a Pluralist Society," 63 Geo. Washington L. Rev. 984 (1995)
      (co-authored with Robert W. Tuttle)

American Perspectives on the Duty of Loyalty: Conflicts of Interest and Other Issues of
      Particular Concern to the International Practitioner, in Mary C. Daly & Roger J.
      Goebel, Eds., Rights, Liability, and Ethics in International Law Practice (1995)

"Law Faculty as Role Models," in ABA Section of Legal Education, Teaching and
      Learning Professionalism: Symposium Proceedings (1996)

"Suing a Present Client," 9 Georgetown J. Legal Ethics 1157 (1996), reprinted in 1
      Journal of Institute for Study of Legal Ethics 87 (1996)

"Conflicts of Interest in the *Restatement*: Comments on Professor Moore's paper," 10
      Georgetown J. Legal Ethics 575 (1997)

"Whose Lawyer Are You Anyway?," 23 William Mitchell L. Rev. 11 (1997)

"Use of the Problem Method for Teaching Legal Ethics," 39 William & Mary L. Rev.
      409 (1998)

"Conflicts of Interest and the New Forms of Professional Associations," 39 S. Texas
      L. Rev. 215 (1998)

"What Insurance Scholars Should Know About Professional Responsibility," 4 Conn.
      Insurance L. J. 1 (1997-98)

"Interview with Professor Thomas Morgan on Professional Responsibility," 13 Antitrust
      4 (Fall 1998).

"The Impact of Antitrust Law on the Legal Profession," 67 Fordham L. Rev. 415 (1998)

"Toward a New Perspective on Legal Ethics," in American Bar Foundation, Researching the Law (2000).

"Real World Pressures on Professionalism," 23 U. Ark. (Little Rock) L. J. 409 (2001)

"Practicing Law in the Interests of Justice in the Twenty-First Century," 70 Fordham L. Rev. 1793 (2002)

"Toward Abandoning Organized Professionalism," 30 Hofstra L. Rev. 947 (2002)

"Creating a Life as a Lawyer," 38 Valparaiso L. Rev. 37 (2003)

"Sarbanes-Oxley: A Complication, Not a Contribution in the Effort to Improve Corporate Lawyers' Professional Conduct, 17 Georgetown J. Legal Ethics 1 (2003)

"The Client(s) of a Corporate Lawyer," 33 Capital U. L. Rev. 17 (2004)

"Educating Lawyers for the Future Legal Profession," 30 Okla City U. L. Rev. 537 (2005)

"The Corporate Lawyer and 'The Perjury Trilemma'," 34 Hofstra L. Rev. 965 (2006)

"It's Not Perfect, But the ABA Does a Key Job in State-Based Regulation of Lawyers," 11 Tex. Rev. of L. & Politics 381 (2007)

"Comment on Lawyers as Gatekeepers," 57 Case Western Res. L. Rev. 375 (2007)

**B.    In the Fields of Economic Regulation and Administrative Law**

MODERN ANTITRUST LAW AND ITS ORIGINS: CASES AND MATERIALS (West Publishing Co. 1994; 2nd Edition 2001; 3rd Edition 2005)

ECONOMIC REGULATION OF BUSINESS: CASES AND MATERIALS (West Publishing Co. 1976)

ECONOMIC REGULATION OF BUSINESS: CASES AND MATERIALS (2nd Edition 1985) (co-authored with J. Harrison & P. Verkuil)

REGULATION AND DEREGULATION: CASES AND MATERIALS (West Publishing Co. 1997; 2nd Edition 2004) (co-authored with J. Harrison and P. Verkuil)

"The General Accounting Office: One Hope for Congress to Regain Parity of Power with the President," 51 N. Carolina L. Rev. 1279 (1973)

4

Review of "Inner City Housing and Private Enterprise," 1972 U Ill. L Forum 833 (1973)

"Achieving National Goals Through Federal Contracts: Giving Form to an Unconstrained Administrative Process," 1974 Wisconsin L. Rev. 301

"Toward a Revised Strategy for Ratemaking," 1978 U. Illinois L. Forum 21

"Procedural Impediments to Optimal Rate Making," in W. Sichel, Ed., Public Utility Rate Making in an Energy-Conscious Environment (Westview Press 1979)

"Federal Chartering of Corporations" and "Shareholder Remedies in Corporations" in M.B. Johnson, Ed., The Attack on Corporate America: The Corporate Issues Sourcebook (McGraw-Hill 1978)

Review of "Economic Analysis and Antitrust Law," 33 Vanderbilt L. Rev. 1523 (1980)

"The Deregulation Bandwagon: Too Far, Too Fast?," 2 J. Law & Commerce 1 (1982)

## C.    In The Field of Legal Education

"Computer-Based Legal Education at the University of Illinois:  A Report of Two Years' Experience," 27 J. Legal Education 138 (1975) (with P. Maggs)

"Teaching Students for the 21st Century," 36 J. Legal Education 285 (1986)

"Thinking About Bar Examining: The Challenge of Protecting the Public," 55 Bar Examiner 27 (Nov.1986)

"President's Address", 90-1 AALS Newsletter 1 (Feb. 1990)

"Should We Oppose Ranking of Law Schools?, 90-2 AALS Newsletter 1 (Apr. 1990)

"Legal Education Organizations in Business", 90-3 AALS Newsletter 1 (Aug. 1990)

"The Challenge to Maintain Diversity in Legal Education", 90-4 AALS Newsletter 1 (Nov. 1990)

"A Defense of Legal Education in the 1990s", 48 Wash. & Lee L. Rev. 1 (1991)

"Admission of George Mason to Membership in the Association of American Law Schools," 50 Case Western Reserve L. Rev. 445 (1999)

5

**Participation in Public Programs:**

**A.  Endowed Lectures Given**

>    Mellon Lecture, University of Pittsburgh - 1981
>    Altheimer Lecture, University of Arkansas (Little Rock) - 1987
>    Dunwody Lecture, University of Florida - 1990
>    Lane Foundation Lecture, Creighton University - 1990
>    Tucker Lecture, Washington & Lee University - 1990
>    Pirsig Lecture, Wm. Mitchell Law School - 1996
>    Van Arsdell Lecture, University of Illinois - 1997
>    Keck Award Lecture, American Bar Foundation - 2000
>    Tabor Lecture, Valparaiso University - 2003
>    Sullivan Lecture, Capital University - 2004

**B.  Representative Programs on Which Served as Speaker or Panelist**

>    Lets Make a Deal (the Ethics of Negotiation) - ABA Conference on Professional
>        Responsibility (Palm Beach) - June 1992

>    Reporting a Client's Continuing Crime or Fraud - ABA Conference on Professional
>        Responsibility (Chicago) - May 1993

>    Ethical Issues in Representing Older Clients - Fordham University School of Law
>        (New York) - December 1993

>    Economic Reality Facing 21st Century Lawyers - University of Washington School of
>        Law (Seattle) - April 1994

>    Problem of Representing a Regulated Client, Eleventh Circuit Judicial Conference
>        (Orlando) - May 1994

>    Ethical Issues in Products Liability Cases - Products Liability Committee of the ABA
>        Litigation Section (Tucson) - February 1995

>    Ethical Issues Arising in the O.J. Simpson Case - University of Washington School of
>        Law (Seattle) - May 1995

>    Competition Policy for the New South Africa (Pretoria) - November 1995

>    Ethical Issues in Representing Children - Fordham University School of Law (New
>        York) - December 1995

6

Are We a Cartel? The ABA/DOJ Consent Decree - AALS Annual Meeting (San Antonio) - January 1996

Assuring Effective Law Firm Risk Management - ALAS Annual Meeting (San Juan) - June 1996

Professional Responsibilities of the Law Teacher - AALS (Washington) - July 1996

Ethical Issues for Mediators and Advocates - ABA Annual Meeting (Orlando) - August 1996

Legal Issues in Cyberspace - ABA Annual Meeting (Orlando) - August 1996

Conflict of Interest Rules -- An Economic, Comparative & Political Assessment - Federalist Society Lawyers' Convention (Washington) - November 1996

Ethical Obligations of Insurance Defense Lawyers - AALS Annual Meeting (Washington) - January 1997

Teaching Legal Ethics by the Problem Method - College of William & Mary--Keck Foundation Conference (Williamsburg) - March 1997

Litigators Under Fire: Handling Professional Dilemmas In and Out of Litigation - televised ALI/ABA CLE program (Washington) - April 1997

Conflicts of Interest in the New Forms of Law Practice - South Texas Law School Symposium (Houston) - September 1997

The Place of Rules in the Judgment of Christian Lawyers - AALS Annual Meeting (San Francisco) - January 1998

Fiduciary Obligations in Dismissal of a Law Firm Partner - Washington & Lee Law School Symposium (Lexington, VA) - April 1998

Impact of Disciplinary Action on Lawyer's Status as Certified Specialist - ABA Committee on Specialization National Roundtable (Washington) - May 1998

Conflicts of Interest in the Restatement of the Law Governing Lawyers - National Organization of Bar Counsel (Toronto) - July 1998

The Ethics of Teaching Legal Ethics - Association of American Law Schools (Washington) - October 1998

The New Restatement of the Law Governing Lawyers: What Is It & How Does It Affect Your Practice? - Assn of Bar of City of New York (New York) - November 1998

Imputation, Screens & Personal Conflicts - ABA Conference on Professional Responsibility (La Jolla) - June 1999

The Future of Legal Education - Dedication of Sullivan Hall, the new Seattle University Law Building (Seattle) - October 1999

Legal Ethics in the New Millennium - J. Reuben Clark Soc. (Dallas) - November 1999

Unauthorized Practice of Law and Ethical Risks to Lawyers from Multistate Practice - ALAS Telephone Seminar (Chicago) - December 1999

Ethics 2000: Rewriting the Standards for Lawyer Conduct - American Intellectual Property Law Association (La Quinta, CA) - January 2000

Real World Pressures on Professionalism - University of Arkansas at Little Rock Law School (Little Rock, AR) - February 2000

Professional Responsibility Issues Arising Out of Electronic Commerce - ABA Section of Public Contract Law (Annapolis, MD) - March 2000

Multidisciplinary Practice: Curse, Cure or Tempest in a Teapot - American Intellectual Property Law Association (Pittsburgh, PA) - May 2000

Ethics 2000: Proposed Changes in the Law Governing Lawyers - Conference of Chief Justices (Rapid City, SD) - July 2000

Multidisciplinary Practice: Dead Letter Issue or Here to Stay? - George Washington University Alumni Association - September 2000

Attorney Standards in Federal Courts and Developments in the Multidisciplinary Practice Controversy - Conference of Chief Justices (Baltimore) - January 2001

Proposed Changes in Rules Governing Former Government Lawyers - AEI & Brookings Transition to Governing Project (Washington) - February 2001

Multijurisdictional Practice - Turner Seminar (Memphis) - February 2001

Ethical Issues in Large Firms - Ass'n of Legal Administrators (Baltimore) - May 2001

Law Firm Ancillary Services - ALAS Annual Meeting (Bermuda) - June 2001

Changes in Ethical Standards Created by the Ethics 2000 Project - Promotion Marketing Association (Washington) - December 2001

How Can We Teach Professionalism? - George Washington Law School Dean's Board of Advisers (Washington) - March 2002

New Rule 1.6 on Disclosure of Confidential Client Information - ABA Civil Justice Roundtable (Washington) - March 2002

Ethics for Corporate In-House Counsel - American College of Investment Counsel (Chicago) - April 2002

Ethical Issues in Tax Audits - Nat'l Ass'n of Bond Lawyers (Washington) - May 2002

Treading Water: A Young Lawyer's Guide to Ethics in Varying Practice Environments - ABA Tax Section Young Lawyers Committee (Washington) - May 2002

Shifting Ethical Sands: Ethics 2000 and Beyond - Federal Communications Bar Ass'n (Washington) - June 2002

Multijurisdictional Practice - ABA Forum on Franchising (Phoenix) - October 2002

The Sarbanes-Oxley Act of 2002 and the ABA Task Force on Corporate Responsibility Report (ALAS Telephone Seminar) - October 2002

Multijurisdictional Practice - Transportation Law Institute (Washington) - Nov. 2002

Asset Protection Planning - ALI-ABA Teleconference Program - Nov. 2002

At the Bar and in the Boardroom: The Ethics of Corporate Lawyering - Federalist Society (Washington) - Nov. 2002

Law Firm Risk Management: Post-Enron Challenges - Hildebrandt Conference (New York) - Nov. 2002

Future Regulation of Securities Lawyers - ABA Section of Business Law, Committee on Federal Securities Regulation (Washington) - Nov. 2002

What Lawyers Need to Know to Comply with the New SEC Professional Conduct Rules - ABA Section of Business Law Televised Forum (Washington) - Feb 2003

Ethics in Representing Organizational Clients After Sarbanes-Oxley - ABA Section of Business Law Spring Meeting (Los Angeles) - April 2003

9

Corruption in the Executive Suite: The Nation Responds - National Teleconference from ABA Public Utility Section Spring Meeting (Washington) - April 2003

Sarbanes-Oxley Revolution in Disclosure and Corporate Governance: Complying with the New Requirements - ABA National Institute (Washington) - May 2003

Client Confidentiality, Corporate Representation and Sarbanes-Oxley - ABA National Conference on Professional Responsibility (Chicago) - May 2003

Friend or Foe: The Restatement of Law Governing Lawyers - ABA National Legal Malpractice Conference (La Jolla) - September 2003

Where Were the Lawyers in Enron? - Cato Institute (Washington) - October 2003

Federalism & Regulation of Attorneys - Federalist Soc. (Washington) - November 2003

Testified before the House Subcommittee on Capital Markets' Hearing on the Role of Attorneys in Corporate Governance (Washington) - February 2004

The Lawyer-Lobbyist "on the Frontier": What Legal and Ethical Rules Apply? - ABA Mid-Year Meeting (San Antonio) - February 2004

The Client(s) of a Corporate Lawyer - Capital U. Law School (Columbus) - March 2004

Judicial Ethics: A Reprise of Recent Events - Federalist Soc. (Washington) - April 2004

Ethical Issues Facing Public Interest Law Firms - Heritage Foundation (Washington) - October 2004

Drafting an Ethical Code for a Diverse Legal Profession - Univ. of Memphis Law School (Memphis) - October 2004

Ethical Issues in International Trade Cases - International Trade Trial Lawyers Association (Washington) - November 2004

Professional Regulation of Business Lawyers Isn't Going to Get Any Easier - ABA Section of Business Law (Washington) - November 2004

Problems for Corporate Lawyers in Complying with the Sarbanes-Oxley Act - New Jersey Corporate Counsel Association (Livingston, NJ) - January 2005

Avoiding Conflicts in Business Law Practice: Seven Deadly Sins - ABA Section of Business Law (Nashville) - April 2005

Fireside Chat on Legal and Accounting Ethics - SEC Historical Society (Washington) - November 2005

When Good Clients Go Bad - ALAS Annual Meeting (Toronto) - June 2006

Lawyers Face the Future - St. Thomas Univ. Law School (Minneapolis) - August 2006

Regulating Corporate Morality - George Washington Corporate & Business Law Society (Washington) - September 2006

Comments on Noisy Withdrawal - Case Law School Leet Symposium (Cleveland) - October 2006

The ABA Role in Law School Accreditation - Federalist Society Lawyers' Convention (Washington) - November 2006

Investigative Techniques: Legal, Ethical and Other Limits - ABA Section of Antitrust Law (National) - December 2006

Ethics Issues in Corporate Internal Investigations - Georgia Bar (Atlanta) - March 2007

Are Regulatory Lawyers' Ethical Obligations Changing? - ABA Section of Public Utility Law (Washington) - April 2007

Antitrust Litigation Ethics From Soup to Nuts - ABA Section of Antitrust Law (Washington) - April 2007

How to Survive in Today's Competitive Environment and Comply With the Rules of Professional Conduct - Wisconsin State Bar (Milwaukee) - May 2007

Audit Response Letters: Will There Be Peace Under the Treaty? - ABA National Conference on Professional Responsibility (Chicago) – May 2007

The Buried Bodies Case: Alive and Well After Thirty Years - ABA National Conference on Professional Responsibility (Chicago) – May 2007

## Major Civic and Professional Activities:

### A.  In the Field of Professional Responsibility

Associate Reporter, American Law Institute Restatement of the Law, The Law Governing Lawyers, 1986-2000

Associate Reporter, American Bar Association Ethics 2000 Commission, 1998-99

Member, Advisory Board, ABA/BNA Lawyers' Manual on Professional Conduct, since 1984; chair 1986-87 & 1992-93

Reporter, American Bar Association Commission on Professionalism, 1985-86

Chair, Federalist Society Practice Group on Professional Responsibility and Legal Education 2005-2007

Member, Drafting Committee, Multistate Professional Responsibility Examination, National Conference of Bar Examiners, 1986-89

Member, Committee on Professional Ethics, Illinois State Bar Association, 1974-1980; Vice Chair 1979-80

Chair, Association of American Law Schools Professional Development Workshop on Professional Responsibility - Washington, October 1993.

**B.    In the Fields of Economic Regulation and Administrative Law**

Vice Chair, ABA Section of Administrative Law & Regulatory Practice, 2001-2002

Consultant, Administrative Conference of the U.S., 1975-1979 & 1985-1989

Participated in consultations with governments of Malaysia, Slovenia and South Africa on proposed national competition policies

Council Member, ABA Section of Administrative Law, 1983-1986

Chair, Section on Law and Economics, Ass'n of American Law Schools, 1979-1980

**C.    In the Field of Legal Education**

President, Association of American Law Schools, 1990
    Member, AALS Executive Committee, 1986-1991

Chair, AALS Long Range Planning Committee, 1988-1989

Member, AALS Special Committee on Faculty Recruitment Practices, 2005-2007

Member, AALS Committee on the Ethical and Professional Responsibilities of Law Professors, 1988-1989

**Legal Consulting:**

> Testified in twenty contested trials or hearings involving issues of lawyer discipline, disqualification, right to fees and malpractice. Gave depositions in twenty-seven cases resolved prior to trial. Submitted affidavits in twenty-five other cases, typically in connection with motions for summary judgment or to disqualify.

**Organization Memberships:**

> American Bar Association
> American Law Institute (Life Member)
> American Bar Foundation (Fellow)
> Illinois State Bar Association
> Illinois Bar Foundation (Honorary Fellow)
> Association of Professional Responsibility Lawyers
> American Judicature Society
> American Law & Economics Association
> American Intellectual Property Law Association
> The Federalist Society

**Current as of August 2007**

13

# EXHIBIT B

Attachment B

Cases in Which Thomas D. Morgan Has Testified
in Person or by Deposition Since January 2003

<u>Meyer & Collins v. Kummer, Kaempfer, Bonner & Renshaw</u>, U.S. Dist. Ct., Nevada (2004)
    (deposition)

<u>Congoleum Corporation v. Ace American Insurance Co.</u>, State Ct., N. Jersey (2005) (deposition)

<u>Timbers v. USEC</u>, Private Arbitration (2005) (deposition)

<u>Meyer, et al. v. Kummer, Kaempfer, Bonner & Renshaw</u>, State Ct, Reno, NV (2006) (deposition)

<u>Prousalis v. Cohen, Milstein, Hausfield & Toll</u>, PLLC, DC Superior Ct. (2006) (deposition)

<u>Donaldson v. Federal Express</u>, U.S. Dist. Ct., W.D. Tenn (2007) (deposition) (under seal)

<u>Martin v. Dept. Homeland Security</u>, U.S. Merit Systems Protection Bd. (2007) (deposition)

<u>In re Steven B. Kelber</u>, U.S. Patent & Trademark Office of Enrollment & Discipline (2007)
    (in person hearing testimony)

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on September 10, 2007 I electronically filed the foregoing document, which will send notification of such filing(s) to the following:

Thomas L. Halkowski, Esquire
FISH & RICHARDSON P.C.

I also certify that copies were caused to be served on September 10, 2007 upon the following in the manner indicated:

**BY ELECTRONIC MAIL
and HAND DELIVERY**

Thomas L. Halkowski, Esquire
FISH & RICHARDSON P.C.
919 N. Market Street
Suite 1100
Wilmington, DE  19801

**BY ELECTRONIC MAIL**

Brian R. Nester, Esquire
Jeffrey R. Whieldon, Esquire
Rama G. Elluru, Esquire
William E. Sekyi, Esquire
Linda Liu Kordziel, Esquire
FISH & RICHARDSON P.C.
1425 K. Street, N.W.
11th Floor
Washington, DC 20005

John E. Gartman, Esquire
FISH & RICHARDSON P.C.
12390 EL Camino Real
San Diego, CA  92130

*/s/ Maryellen Noreika*
Maryellen Noreika (#3208)
mnoreika@mnat.com