IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICROSOFT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-090 (SLR) |
| | ) | |
| ALCATEL BUSINESS SYSTEMS and | ) | **REDACTED –** |
| GENESYS TELECOMMUNICATIONS | ) | **PUBLIC VERSION** |
| LABORATORIES, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |

## ALCATEL BUSINESS SYSTEMS' REPLY BRIEF
## IN SUPPORT OF ITS MOTION TO DISQUALIFY COUNSEL,
## FOR EXCLUSION OF EVIDENCE AND FOR OTHER SANCTIONS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street, P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mnoreika@mnat.com

*Attorneys for Defendants*
*Alcatel Business Systems and*
*Genesys Telecommunications Laboratories, Inc.*

OF COUNSEL:

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY  10022-4834
(212) 906-1200

David A. Nelson
LATHAM & WATKINS LLP
233 South Wacker Drive
Suite 5800
Chicago IL 60606
(312) 876-7700

Original Filing Date:  September 27, 2007

Redacted Filing Date:  October 2, 2007

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      INTRODUCTION ............................................................................................................. 1

II.     THE FACTUAL RECORD ............................................................................................. 6

III.    ARGUMENT ..................................................................................................................... 8

        A.    F&R's Conduct Constituted a Violation of Rule 4.2 ........................................ 8

              1.    Alcatel USA and Mr. Lin Are Represented Persons in this Matter ............ 8

              2.    Mr. Lin Is Precisely the Type of Employee Covered by Rule 4.2 ............ 10

        B.    F&R's Conduct Constituted a Violation of Rule 4.3 ....................................... 12

              1.    F&R Was Required to, But Did Not, Identify Itself to Mr. Lin and
                    Disclose Its Adverse Role Representing Microsoft ................................... 12

              2.    There Was No Safe Harbor For F&R's Misconduct ................................. 13

        C.    Microsoft Does Not Seriously Dispute F&R's Deception ..................................... 14

        D.    The Appropriate Remedies For F&R's Misconduct Are To Disqualify F&R
              And Exclude All Evidence Derived From Its Misconduct ................................... 15

              1.    F&R's Misconduct Warrants Disqualification........................................... 16

              2.    Microsoft's Expert Jack Chang Should be Excluded ................................ 18

              3.    To Resolve Any Questions Regarding the Fruits of F&R's
                    Misconduct, This Court Should Order Discovery Into the Matter ........... 19

IV.     CONCLUSION ............................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>CASES</u>

*Apple Corps v. International Collectors Soc'y.,*
    15 F. Supp. 2d 456 (D.N.J. 1998) .................................................................... 14

*EEOC v. Hora, Inc.,*
    No. 05-5393, 2007 U.S. App. LEXIS 15705 (3d Cir. 2007)............................ 17

*Essex County Jail Annex Inmates v. Treffinger,*
    18 F. Supp. 2d 418 (D.N.J. 1998) .................................................................... 17

*Faison v. Thornton,*
    863 F. Supp. 1204 (D. Nev. 1993) .................................................................... 10

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.,*
    82 F. Supp. 2d 119 (S.D.N.Y. 1999).................................................................. 14

*Hammond v. Junction City,*
    167 F. Supp. 2d 1271 (D. Kan. 2001) ............................................................. 5, 17

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (U.S. 1982) .................................................................................. 14

*Hill v. Shell Oil Co.,*
    209 F. Supp. 2d 876 (N.D. Ill. 2002) ............................................................... 14

*Hull v. Celanese Corp.,*
    513 F.2d 568 (2d Cir. 1975).............................................................................. 5, 17

*In re Air Crash Disaster,*
    909 F. Supp. 1116 (N.D. Ill. 1995) .................................................................. 19

*In re Ark. Bar Ass'n,*
    No. 03-1049, 2005 Ark. LEXIS 787 (Ark. Mar. 3, 2005)................................ 11

*In re Corn Derivatives Litig.,*
    748 F.2d 157 (3d Cir. 1984).............................................................................. 17

*Inorganic Coatings v. Falberg,*
    926 F. Supp. 517 (E.D. Pa. 1995) .................................................................... 17

*LaPoint v. Amerisourcebergen Corp.,*
    No. 327-N, 2006 Del. Ch. LEXIS 134 (Del. Ch. July 18, 2006) ...................... 13

*Leonard v. Univ.of Del.,*
    No. 96-360 MMS, 1997 U.S. Dist. LEXIS 4196 (D. Del. March 20, 1997) .................... 12

*Midwest Motor Sports v. Arctic Cat Sales, Inc.*,
  347 F.3d 693 (8th Cir. 2003).................................................................11, 13, 14

*MMR/Wallace Power & Industrial, Inc. v. Thames Assoc.*,
  764 F. Supp. 712 (D. Conn. 1991) ..............................................................16, 20

*Monsanto Co. v. Aetna Casualty & Surety Co.*,
  593 A.2d 1013 (Del. Super. Ct. 1990) ...............................................................12

*National Union Fire Ins. Co. v. Stauffer Chemical Co.*,
  No. 87C-SE-11, 1990 Del. Super. LEXIS 340 (Del. Super. Ct. Sept. 10, 1990).............13

*Papanicolaou v. Chase Manhattan Bank, N.A.*,
  720 F. Supp. 1080 (S.D.N.Y. 1989)...................................................................16

*Paris v. Union Pac. R.R.*,
  450 F. Supp. 2d 913 (D. Ark. 2006).................................................................11

*Penda Corp. v. STK, L.L.C.*,
  No. 03-5578, 03-6240, 2004 U.S. Dist. LEXIS 13577 (E.D. Pa. July 16, 2004)..............11

*Showell v. Mountaire Farms*,
  No. 02C-01-016-RFS, 2002 Del. Super. LEXIS 492 (Del. Super. Ct. Nov. 18, 2002) ....13

*State ex rel. Ariz. Dep't of Health Servs. v. Gottsfield*,
  213 Ariz. 583 (Ariz. Ct. App. 2006) .................................................................11

*Texas Instruments v. Cypress Semiconductor Corp.*,
  90 F.3d 1558 (Fed. Cir. 1996).........................................................................20

*United States v. Rockwell Int'l*,
  897 F.2d 1255 (3d Cir. 1990) .........................................................................19

*Univ. Patents, Inc. v. Kligman*,
  737 F. Supp. 325 (E.D. Pa. 1990) ...................................................................19

*Wang Laboratories, Inc. v. Toshiba Corp.*,
  762 F. Supp. 1246 (E.D. Va. 1991)..................................................................18

*X-It Prod., L.L.C. v. Walter Kidde Portable Equip., Inc.*,
  227 F. Supp. 2d 494 (E.D. Va. 2002).................................................................13

## OTHER AUTHORITIES

ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 91-359 (1991) ...............................4

AMERICAN BAR ASSOCIATION, *Lawyer's Manual on Professional Conduct* (2007) ...................12

Model Rules of Prof'l Conduct R. 4.1 (2004)..........................................................15

Model Rules of Prof'l Conduct R. 4.2 (2004)..................................................................*passim*

Model Rules of Prof'l Conduct R. 4.3 (2004)..................................................................*passim*

Model Rules of Prof'l Conduct R. 8.4 (2004)..........................................................................15

## I.    INTRODUCTION

The material facts regarding Fish & Richardson's ("F&R") misconduct are not seriously in dispute. Alcatel submits that, given F&R's violations of the Model Rules, the only question left is what action this Court should take.

The record shows that Alcatel has been prejudiced because of Microsoft's and F&R's admitted and continued use of what they call the "highly protected attorney work product" that they developed from lengthy and illicit interrogations of an unwitting Alcatel employee. (D.I. 44 at 30.) Alcatel, however, has not been able to identify the *full extent* of the prejudice resulting from this violation of the pertinent ethics rules because F&R and Microsoft have refused to produce the documents detailing F&R's misconduct and the identity of all of the participants. (Malionek Decl. at ¶ 18.) Until F&R is forced to provide the notes and other documents detailing its interactions with the Alcatel engineer Po Ching Lin, and until the interrogating attorneys reveal, under oath, the questions they asked Mr. Lin, neither Alcatel nor the Court will know the full extent of the misconduct or the resulting prejudice to Alcatel. Had Microsoft and F&R deposed Mr. Lin through formal discovery, there would have been representation and a transcript. Instead, Microsoft chose a different path – one where Mr. Lin was not represented as he provided information about configuring an accused system and where the documents detailing those six days of interactions are hidden behind a sham work product claim. At a minimum, and as an *initial* remedy, the Court should order Microsoft and F&R to provide discovery to determine the extent of their misconduct and the extent to which they are attempting to capitalize on that misconduct and taint this litigation.

Microsoft admits, or does not contest, the following facts:

- Po Ching Lin is "a twenty-year veteran of the Alcatel corporate family" (D.I. 44 at 26), a senior Alcatel engineer who helped develop the Alcatel System, *which is the very subject of this litigation,* ██████████████████████████

- F&R led Po Ching Lin to believe that he should "treat[] the installation of the accused products at F&R, and the training of F&R's personnel, as a routine transaction in the ordinary course of his business" (*id.*);

- Over the course of several days, while Po Ching Lin was at their offices, F&R's attorneys questioned him at length about the very subject of this litigation—variously admitting that they questioned him regarding "features that are the subject of this lawsuit" (*id.* at 28), and that they interrogated him *ex parte* regarding "how [the System] could be used" (*id.*), as well as "how the system operates" (*id.* at 17);

- Over the entire course of their *ex parte* interrogations, the F&R attorneys never disclosed to Mr. Lin their role as counsel for an adverse party in this litigation, or F&R's true purpose in questioning Mr. Lin; one F&R attorney, Joshua Pond, does not even dispute concealing the fact that they were *attorneys* (Pond Decl. at ¶ 4); in F&R's view, the attorneys were entitled to use "some pretense as to [their] identity or purpose" (D.I. 44 at 23), and were not obligated to tell Lin "that F&R was representing Microsoft in a lawsuit against ABS concerning these products" (*id.* at 20);

- F&R's questioning was not part of a legitimate business installation, but was undertaken to assist F&R in manufacturing support for Microsoft's claims in this litigation, including to prepare Microsoft's expert witness, Jack Chang (*id.* at 22) (admitting that transaction was not for business use, but "to prepare their case");

- F&R does not dispute that it sought Mr. Lin's unwitting assistance in attempting to *reconfigure* the Alcatel System in an allegedly-infringing manner (Lin Decl. at ¶ 30);

- At no time did F&R contact Alcatel's counsel to seek permission to interrogate Mr. Lin outside the presence of counsel. Indeed, Microsoft still asserts that "F&R still has neither actual knowledge nor reason to believe that prior permission from Latham & Watkins was necessary *or appropriate*." (D.I. 44 at 19.)

Microsoft's primary argument—that F&R was not obliged to comply with Rule 4.2 when interrogating Mr. Lin because "ABS's counsel is not representing Mr. Lin's employer in this litigation" (D.I. 44 at 11)—is disingenuous. Microsoft and F&R consistently have treated the Alcatel entities and all of their employees as represented by Latham & Watkins LLP ("Latham"). In the parallel U.S. International Trade Commission ("ITC") investigation, Microsoft and F&R served interrogatories and document requests upon Latham seeking documents and information from "Alcatel," *defined as "Alcatel and any domestic or foreign divisions, departments, subsidiaries, or parents" as well as all "employees or agents thereof."*

2

They served a notice upon Latham requesting that it produce an employee of an Alcatel USA company for deposition, and Latham *represented that Alcatel USA employee* at his deposition. They served requests for admission upon Latham seeking admissions *from Alcatel USA*. In discovery, Microsoft and its counsel understood that Latham was representing Alcatel USA. Thus, they knew that Alcatel USA was represented by counsel and should not have been the target of improper informal discovery.

Notably, although Microsoft claims that it "still has, no reason to believe—let alone the actual knowledge required by Rule 4.2—that Mr. Lin was or is represented by counsel in connection with the pending litigation" (D.I. 44 at 18), prior to filing its brief, Microsoft served a notice seeking Mr. Lin's deposition as "an employee of Alcatel-Lucent" *on Latham as his counsel.* (Malionek Decl., Ex. A.) Microsoft's argument that it believed Mr. Lin was fair game for informal discovery is not credible and is belied by Microsoft's inability to keep its story straight on this point. For example, Ms. Elluru, one of the attorneys who interviewed Mr. Lin for six days, signed a September 11, 2007 declaration (submitted with Microsoft's Opposition Brief) claiming that upon seeing Mr. Lin's card she consciously determined that it "indicated that he was an employee of Alcatel-Lucent, an entity I knew specifically not to be a party" adverse to Microsoft (Elluru Decl. at ¶ 11). But, by the time Microsoft filed its September 17, 2007 Opposition Brief, it realized that Mr. Lin's business card—submitted as an exhibit to his declaration—identified him as working for "Alcatel Interworking," not "Alcatel-Lucent," as Ms. Elluru had previously and erroneously declared. Microsoft then tried to sweep the inconsistency under the rug and simply substituted "Alcatel Internetworking" for "Alcatel-Lucent," in its Opposition Brief. (*See* D.I. 44 at 7 (stating that Mr. Lin's business card indicated "an affiliation with Alcatel Internetworking" citing to Ms. Elluru's inconsistent Declaration); *see also id.* at 18

and 26 n.16.)  Microsoft and F&R cannot credibly justify their misconduct by reference to Ms. Elluru's alleged assessment of which Alcatel entity employed Mr. Lin and whether that entity was, in Ms. Elluru's interested opinion, represented by counsel—given that her accounting of the facts in her sworn declaration is inconsistent with those in Microsoft's brief.[1]

Microsoft also relies on a misstatement of Rule 4.2.  It repeatedly argues that the Rule "only applies to" a represented "*party*."  (D.I. 44 at 11.)  The Rule, however, expressly covers communications with any represented "person," regardless of whether he or she is a party (or an employee thereof) to a proceeding.  Microsoft's arguments regarding Rule 4.3 are similarly flawed.  Microsoft contends that neither Rule 4.2 nor Rule 4.3 applies.  That, of course, is logically impossible—Mr. Lin is either a "represented" person for purposes of this litigation or he is unrepresented.  If he is deemed to fall outside the ambit of 4.2, Mr. Lin *by necessity* falls within that of Rule 4.3, which requires that "in dealing on behalf of a client with a person who is not represented by counsel," when the person is an employee of an adverse represented entity, a lawyer must "make clear the nature of the lawyer's role in the matter giving occasion for the contact, including the identity of the lawyer's client," and must disclose the adversity between the parties.  ABA Comm. on Ethics and Prof'l Resp., Formal Op. 91-359 (1991).

F&R *concedes* that it failed to adhere to Rule 4.3—indeed, in its view, its attorneys were entitled to use "some pretense as to [their] identity or purpose" (D.I. 44 at 23), and were not obligated to tell Mr. Lin "that F&R was representing Microsoft in a lawsuit against ABS concerning these products" (*id.* at 20).  Thus, if F&R attorneys did not run afoul of Rule 4.2, they failed to comply with the complementary dictates of Rule 4.3.  Either violation merits the relief sought by Alcatel.

---

[1]    These inconsistencies are the type of issues for which Alcatel seeks to depose Ms. Elluru.

Courts do not hesitate to disqualify counsel and order other sanctions when there is a *mere risk* that attorneys who have engaged in improper contact with a witness might make use of the opposing party's confidential information—in other words, when the evidence suggests the improper contacts were utilized to develop work product or other information in the aid of a litigation strategy. (*See* cases discussed *infra* § III.D.1, including *Hammond v. Junction City*, 167 F. Supp. 2d 1271, 1289 (D. Kan. 2001) (ordering disqualification and other sanctions when it was impossible to "ascertain the potential advantage that the ex parte communications *may* have provided"), and *Hull v. Celanese Corp.*, 513 F.2d 568, 572 (2d Cir. 1975) ("there need not be intent, bad faith, or even actual disclosure of confidential information. Conduct that merely suggests that one side might enjoy the disclosure of confidential information may warrant disqualification.").) Here, there is more than mere risk. Notwithstanding Microsoft's contention that it should escape sanctions if "ABS has failed to demonstrate any prejudice resulting from F&R's actions" (D.I. 44 at 2), the record demonstrates that F&R and Microsoft *are prejudicing Alcatel by taking improper advantage of the fruits of F&R's misconduct.* Indeed, although Microsoft argues that it will not "rely" on anything it and its attorneys obtained from Mr. Lin (D.I. 44 at 9), it concedes that Mr. Lin trained F&R lawyers on how "to use some of the features that are the subject of this lawsuit," but protests that the disqualification of the lawyers would be unfair, forcing Microsoft to employ successor counsel "without [such] instruction in the use of the infringing products." (D.I. 44 at 33.) And if, as Microsoft argues, the F&R lawyers were "not acting in their capacity as lawyers" (*id.* at 21), then their notes taken during the interrogations cannot qualify as "highly protected attorney work product." (*Id.* at 30.) And although Microsoft argues that F&R attorneys did not go beyond acting "solely as customers," it concedes that the purpose and effect of F&R's conduct was "building Microsoft's case" (*id.* at

27) against Alcatel.[2] Those concessions entirely belie Microsoft's insistence that Alcatel has not been prejudiced by F&R's conduct.

In short, the record thus far compiled compels the requested sanctions. To the extent the facts have not yet been developed, Microsoft's and F&R's refusal to provide any discovery is to blame. Alcatel is ready to proceed with discovery on this issue to fill in whatever gaps Microsoft contends exist. The fact that Microsoft and F&R refuse to allow any discovery regarding this allegedly "routine installation" speaks volumes regarding what additional information that such discovery likely will show.

## II.     THE FACTUAL RECORD

As discussed above, the pertinent facts are undisputed. Furthermore, where Microsoft claims that a factual dispute exists, its factual account is demonstrably wrong. Thus, although Microsoft takes pains to assert that Mr. Lin returned to F&R's offices "on Tuesday July 3, 2007, and not on Monday, July 2, 2007 as Mr. Lin noted" (D.I. 44 at 8), contemporaneous emails show otherwise and belie the assertions of Ms. Elluru and Mr. Pond on that subject. Thus, in a July 2 email to Dan McGirr, Mr. Lin reported that:

(Malionek Decl., Ex. B.) Mr. Lin soon thereafter reported to Mr. McGirr that he

(Malionek Decl., Ex. C.)

---

[2]     There is no basis for Microsoft's suggestion that Alcatel delayed in bringing this Motion. (D.I. 44 at 3). Given that F&R took affirmative steps "to limit any premature exposure of the manner in which it was building Microsoft's case" (*id.* at 27), it took weeks for Alcatel to uncover the conduct at issue. (D.I. 31 at 14-15.) Those circumstances are of Microsoft's creation, and Microsoft should hardly be able to rely upon the timing of the misconduct and the precautions initiated to avoid its detection in order to avoid sanctions. Simply put, it took time for the duped non-lawyers to recognize Microsoft's deception.

Microsoft also resorts to half-truths. For example, although Ms. Elluru asserts in her declaration that "I never suggested to Mr. McGirr or Mr. Linn [*sic*] that there was a possibility that this installment could lead to a larger roll-out project" (Elluru Decl. at ¶ 16), that was never Alcatel's contention. Instead, Alcatel submitted to this Court contemporaneous email correspondence indicating that ███████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████ Indeed, it was on that basis that Ms. Elluru demanded that Mr. Lin promptly return to F&R's offices so that F&R could obtain "the technology to be submitted for expert evaluation" in order to "build[] Microsoft's case." (D.I. 44 at 27; *see also* D.I. 31 at 10.)[3] F&R carefully chose the words of sworn declarations to try to create impressions that are not consistent with what actually happened.

Microsoft simultaneously protests that the record is incomplete and inconsistent while precluding development of a full record. Microsoft refuses to provide the notes and other documents regarding the improper interrogations or to submit itself or its attorneys to any discovery, including the depositions noticed by Alcatel. (Malionek Decl., Exs. L, M, N.) F&R claims that its notes are nothing more than routine notes regarding a routine business transaction, but at the same time it says they are protected from discovery as highly confidential work

---

3  ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ (Intal Decl., Ex. C.) F&R's argument in response is merely that "[c]ertainly the alleged misrepresentation could not originate with F&R, because the firm does not have 29 offices." (D.I. 44 at 26.) But Alcatel has never claimed that Ms. Elluru said that F&R has "29 offices" (the statement relates to the number of office managers that allegedly were going to examine the Alcatel System). F&R's self-serving argument is less credible than contemporaneous documents, and Ms. Elluru admits that she requested Mr. Lin's return specifically for further questioning, ███████████████████████ (Elluru Decl. at ¶ 14.)

product.  Thus, F&R treats the supposedly routine business information it extracted from Mr. Lin as litigation material.  And Alcatel does not know the extent to which Microsoft's expert, Jack Chang, based his opinions on Mr. Lin's actions as directed under false pretenses by F&R.  Thus, if these factual issues must be resolved before the Court can address the sanctions requested by Alcatel, it should *at a minimum* order Microsoft and F&R to submit to discovery immediately.

**III.    ARGUMENT**

      **A.    <u>F&R's Conduct Constituted a Violation of Rule 4.2</u>**

            **1.    <u>Alcatel USA and Mr. Lin Are Represented Persons in this Matter</u>**

Microsoft repeatedly misquotes Rule 4.2 by asserting that it applies to "represented parties" (D.I. 44 at 11, 12) and claiming that, because Alcatel USA is not a named party in this action, F&R did not need to comply with the Rule. (D.I. 44 at 12.)  By its plain terms, however, Rule 4.2 applies to any "person" whom a lawyer understands "to be represented by another lawyer in the matter," regardless of whether the person is a party. [4]

F&R's course of conduct leaves no room for doubt that it realized Mr. Lin was represented by Latham in this matter.  At the outset of the related ITC Investigation, when Microsoft and F&R were trying to determine which Alcatel entity to name as a respondent, Latham made the scope of its representation quite clear:

> We would not object to the substitution of Alcatel Business Systems as the named party in both the ITC and Delaware actions in place of Alcatel Lucent.  We will not object to or resist any reasonable discovery based upon the corporate structure identified above.  So, for example, if one of the companies in the chain is "in possession, custody or control" of relevant (non-privileged) documents sought by discovery requests to

---

[4]     Rule 4.2 states: "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

Alcatel Business Systems in the litigation, we will produce documents in response to such requests. ***No subpoena will be required of these entities***.

(D.I. 44, Ex. 2 at 1 (emphasis added).)   Latham thus unambiguously informed F&R and Microsoft that Latham would represent all of the Alcatel entities for purposes of "both the ITC and Delaware actions," and that "no subpoena will be required of these entities."

F&R and Microsoft have acted accordingly.  In the ITC Investigation:

- Microsoft (through F&R) served interrogatories on Latham, specifically defining "Alcatel" to encompass "Alcatel and any domestic or foreign divisions, departments, subsidiaries, or parents, or present . . . employees or agents thereof." (Malionek Decl., Ex. D.) Latham has responded on behalf of those entities, specifically providing information regarding Alcatel USA.  (Malionek Decl., Ex. F (responding to interrogatory to provide the identity of facilities "you" have occupied with ███████████████████████);

- Microsoft (through F&R) likewise served document requests utilizing that same convention (Malionek Decl., Ex. E), and Latham produced documents accordingly, without the need for a subpoena to Alcatel USA.  Indeed, as noted in Alcatel's opening brief, it specifically produced a number of documents identifying Mr. Lin as having information relating to the Alcatel System. (*See, e.g.,* Malionek Decl., Ex. G.);

- Microsoft (through F&R) served upon Latham requests for admission which employed a definition of "Alcatel" that encompassed ABS as well as any "parent, subsidiaries and divisions" and "affiliates." (Malionek Decl., Ex. H.)  Certain of those requests sought admissions directed specifically to Alcatel USA.  (*Id.*)  Latham responded, again without the need for any subpoena.  (Malionek Decl., Ex. I);

- Microsoft (through F&R) served notices, not subpoenas, upon Latham requesting the depositions of a number of individuals. (*See, e.g.* Malionek Decl., Ex. J and ¶ 13.) F&R served those notices upon Latham in the latter's capacity as counsel for "Respondent Alcatel Business Systems ('ABS') and/or Alcatel-Lucent." (*Id.*, Ex. J);

- Among the individuals F&R noticed for deposition through Latham was Edwin Afshalimi, an employee of an Alcatel USA entity. (*Id.*)  When F&R emailed Latham to "provide/confirm deposition dates for" Mr. Afshalimi, among others (Malionek Decl., Ex. O), Latham responded with a date and place for his deposition.  (Malionek Decl., Ex. P.)  Having produced him for deposition without subpoena, Latham then represented him at the deposition. (Malionek Decl., Ex. K at 23:16, 23:20);

- In the same email to Latham regarding Mr. Afshalimi's deposition, F&R asked Latham whether a "subpoena to Alcatel USA" would be required in order to "take discovery from Alcatel USA," or whether "ABS's document production data included documents collected from Alcatel USA and its employees. . . ." (Malionek Decl, Ex. O.)  A

Latham attorney confirmed that the document production included materials in the possession of Alcatel USA. (Malionek Decl., Ex. P.) Therefore, F&R was on notice that it did not need to serve a subpoena on Alcatel USA, because Latham represented Alcatel USA and was producing discovery on its behalf;

- In fact, following this correspondence regarding Latham's production of documents for Alcatel USA, *Microsoft and F&R agreed to withdraw a subpoena duces tecum* previously served upon Alcatel USA in the ITC Investigation. (Malionek Decl. at Q.) In that subpoena, Microsoft acknowledged that *"Alcatel USA, Inc." is "a company related to Respondent Alcatel Business Systems."* (Malionek Decl. at R.) Microsoft stated that it was focused on Alcatel USA because Alcatel USA provides "a number of customer support services, including installation and technical support of the accused systems. Thus, Alcatel USA has knowledge of high [*sic*] relevant and discoverable facts relating to, *inter alia*, . . . use and configuration of the accused products . . . relevant to infringement, importation, and remedies issues in this case." (*Id.*)

Given Microsoft's course of conduct, its suggestion that "F&R had, and still has, no reason to believe . . . that Mr. Lin was or is represented by counsel in connection with the pending litigation" (D.I. 44 at 18) simply is not credible. Indeed, several weeks before submitting its Opposition Brief, Microsoft (through F&R) served upon Latham a deposition notice requesting that *Latham produce Mr. Lin himself for deposition*. (Malionek Decl., Ex. A). Thus, F&R has known all along that Latham represents the Alcatel-Lucent entities and their employees, including specifically Mr. Lin.[5]

### 2. Mr. Lin Is Precisely the Type of Employee Covered by Rule 4.2

Microsoft also argues that Mr. Lin falls outside the ambit of Rule 4.2 because he allegedly cannot enter into "a stipulation, settlement or other agreement on behalf of ABS." (D.I. 44 at 15-16.) Microsoft is wrong.

---

[5]    Although plainly belied by the facts, Alcatel also notes that Microsoft's contention that "F&R did not have actual knowledge that Mr. Lin is represented by counsel" (D.I. 44 at 18) is immaterial. "[T]he lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious." Model Rules of Prof'l Conduct R. 4.2 cmt. 8 (2004). "Negligence, ignorance, or lack of intent do not excuse a violation of" the ethics rules, including Rule 4.2. *Faison v. Thornton*, 863 F. Supp. 1204, 1214 (D. Nev. 1993).

First, under Third Circuit law, Rule 4.2 applies to any communication with an employee of a represented organization if the subject of the *ex parte* contact is "within the scope of that employee's employment." *Penda Corp. v. STK, L.L.C.*, No. 03-5578, 03-6240, 2004 U.S. Dist. LEXIS 13577, at *7, 14-15 (E.D. Pa. July 16, 2004); *see also Midwest Motor Sports v. Arctic Cat Sales, Inc.*, 347 F.3d 693, 698 (8th Cir. 2003) ("Where, as here, attorneys elicit specific admissions from an opponent's low-level employees that the attorneys know would be advised against by the employer's counsel, we have no doubt that the ethical considerations in Rule 4.2 apply."); *State ex rel. Ariz. Dep't of Health Servs. v. Gottsfield,* 213 Ariz. 583, 586 (Ariz. Ct. App. 2006) (forbidding *ex parte* contacts with employees of a represented party because those employees' statements may be admissible under Arizona's version of Federal Rule of Evidence 801(d)(2)(D)). Microsoft does not and cannot contest that F&R interrogated Mr. Lin on subjects falling within the scope of his duties. Rule 4.2 prohibits such *ex parte* contacts.[6]

Second, as noted in its Opening Brief, Mr. Lin falls within the scope of Rule 4.2 not just because of his potential for making admissions that could be used against Alcatel, but also because of his "position and level of responsibility with respect to the Alcatel System—the very subject matter of this investigation." (*See* D.I. 31 at 20, and cases cited therein.) Thus, Mr. Lin falls within the ambit of Rule 4.2 for the additional reason that "his acts or omissions may . . . be imputed to ABS for liability."[7] (D.I. 44 at 15.) Under any reasonable reading of the undisputed facts, F&R violated Rule 4.2, to the great detriment of Alcatel.

---

[6]    Paris *v. Union Pac. R.R.,* 450 F. Supp. 2d 913 (D. Ark. 2006), which Microsoft cites, did not follow the Third Circuit rule.

[7]    Indeed, that is *precisely* what Microsoft is attempting to do. As Microsoft admits, the point of the clandestine endeavor "was to obtain a fully operational system, with a few trained users." (D.I. 44 at 17.) F&R interrogated Mr. Lin as part of an effort to gain "access to evidence, here, the technology to be submitted for expert evaluation." (*Id.* at 27.) That exercise was part of "building Microsoft's case." (*Id.*) In short, if Mr. Lin's

**B.**    <u>**F&R's Conduct Constituted a Violation of Rule 4.3**</u>

    **1.**    **F&R Was Required to, But Did Not, Identify Itself to Mr. Lin and Disclose Its Adverse Role Representing Microsoft**

        Microsoft also argues that the F&R lawyers were free to conceal their identity when interrogating Mr. Lin because "[n]either Mr. Lin nor Mr. McGirr misunderstood F&R's 'role' within the meaning and intention of Rule 4.3" and "both appeared to know that the law firm had purchased a product, and was therefore on the 'opposite side' from [Alcatel]." (D.I. 44 at 20.) Microsoft fails to cite anything to support its novel theory of Rule 4.3. There is no such support. The requirements of Rule 4.3 are straightforward, concrete, unambiguous and long-established: "Rule 4.3 has three components: First, do not imply any disinterestedness; second, clear up any misunderstanding about your role; and third, do not give legal advice if the unrepresented person's interests may be adverse." AMERICAN BAR ASSOCIATION, *Lawyer's Manual on Professional Conduct*, at 71:501 (2007). In addition, "courts have cited Rule 4.3 in imposing a duty on the attorney to ask the individual whether he is represented by counsel." *Id.* at 71:503. Indeed, Microsoft brazenly ignores the plethora of governing decisions involving Delaware law to which this Court may look for guidance with respect to the Rules[8] holding that lawyers making *ex parte* contact with employees of organizations *must at a minimum* (1) identify themselves as attorneys and (2) identify their client. *See, e.g., Monsanto Co. v. Aetna Casualty & Surety Co.*, 593 A.2d 1013, 1022 (Del. Super. Ct. 1990) (requiring use of script during interview of employee of adverse party disclosing the parties' positions and the employee's rights to counsel and not to be interviewed); *Showell v. Mountaire Farms*, No. 02C-

---

actions—installing and configuring the Alcatel System, as well as indirectly training Mr. Chang on how to use it—purportedly cannot bind ABS, then Mr. Chang's expert opinions relating to that system cannot be admissible *with respect to ABS*.

[8]    *See, e.g., Leonard v. Univ.of Del.*, No. 96-360 MMS, 1997 U.S. Dist. LEXIS 4196 (D. Del. March 20, 1997) (Delaware Rules are "persuasive authority").

01-016-RFS, 2002 Del. Super. LEXIS 492 (Del. Super. Ct. Nov. 18, 2002) (following *Monsanto*); *LaPoint v. Amerisourcebergen Corp.*, No. 327-N, 2006 Del. Ch. LEXIS 134 (Del. Ch. July 18, 2006) (citing use of a *Monsanto* letter for *ex parte* contacts) *National Union Fire Ins. Co. v. Stauffer Chemical Co.*, No. 87C-SE-11, 1990 Del. Super. LEXIS 340 (Del. Super. Ct. Sept. 10, 1990) (requiring script and terminating *pro hac vice* admissions of attorneys violating Rule 4.3); *see also* the decisions cited in D.I. 31 at 21 n.13, *and Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.*, 144 F. Supp. 2d 1147, 1157 (D.S.D. 2001) (when interviewing an unrepresented employee of a corporate opponent, "[t]he attorney or investigator shall: (1) fully disclose his or her representative capacity to the employee, (2) state the reason for seeking the interview as it concerns the attorney's client and the employer, and (3) inform the individual of his or her right to refuse to be interviewed").

Microsoft candidly admits that the F&R attorneys failed to do so. (D.I. 44 at 20.) That is the end of the pertinent inquiry.[9]

### 2.    There Was No Safe Harbor For F&R's Misconduct

Microsoft's argument that Rule 4.3 does not apply to "routine consumer inquiries to unrepresented employees of [a] litigation adversary" (D.I. 44 at 21) is irrelevant, for the F&R attorneys' conduct far exceeded "routine consumer inquiries" and admittedly extended into "prepar[ing] their case" and "building their case." (D.I. 44 at 22, 27.) In short, Microsoft admits that the F&R attorneys were acting *as attorneys for purposes of developing Microsoft's*

---

[9]    Microsoft's claim that Mr. Lin should have divined F&R's role because there was a sign on the door of the conference room in which he was sequestered which read "Microsoft ALU ITC 10337-036LL1 See Lydia Dean-Reese x7702" (D.I. 44 at 6) is outlandish. Microsoft's attempt to shift the burden to Mr. Lin to police the attorney ethics rules himself is contradicted by all authority on point. *See, e.g., X-It Prod., L.L.C. v. Walter Kidde Portable Equip., Inc.*, 227 F. Supp. 2d 494, 520 (E.D. Va. 2002) (plaintiff's lawyer who allowed unrepresented defendant to believe lawyer was neutral violated Rule 4.3).

*litigation strategy*. That is demonstrated by their claim that their notes are "highly protected attorney work product." For this reason, the lone authority cited by Microsoft to support F&R's conduct is inapposite. *See Apple Corps v. International Collectors Soc'y.*, 15 F. Supp. 2d 456, 476 (D.N.J. 1998) (finding *ex parte* contacts permissible where "counsel and investigators in testing compliance were not acting in the capacity of lawyers. Therefore, the prohibitions of RPC 4.3 do not apply here.").[10] Here, F&R's attorneys spent days interviewing a senior Alcatel technical expert on the subject of the litigation, used the fruits of these interviews in preparing an expert witness (while admittedly taking great pains to hide the expert) and accumulating their "highly protected attorney work product" in the process. (D.I. 44 at 30.) By virtue of their efforts to "build" Microsoft's case, the F&R attorneys were subject to the Rule 4.3 requirements.

**C.    Microsoft Does Not Seriously Dispute F&R's Deception**

Based on the material undisputed facts thus far developed, it is equally clear that F&R violated both Model Rule 8.4(c), which prohibits a lawyer from "engag[ing] in conduct

---

[10]    Similarly, Microsoft's citations to "testing" cases are irrelevant. In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 368 (1982), the conduct at issue was by civil rights "testers" who were not acting as agents of attorneys engaged in litigation. In *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 119, 126 (S.D.N.Y. 1999), the court issued no sanctions because "Gidatex' investigators did not interview the sales clerks. . . . Rather, the investigators merely recorded the normal business routine in the Campaniello showroom and warehouse." By contrast, far from "merely record[ing] the normal business routine" countenanced in *Gidatex*, F&R demanded Mr. Lin's return to its premises, specifically elicited from him information and reconfiguration assistance on litigation issues he would not have provided had he been aware that F&R was adverse to his employer. Moreover, the decision in *Hill v. Shell Oil Co.*, 209 F. Supp. 2d 876 (N.D. Ill. 2002), cited by Microsoft (D.I. 44 at 16), clarifies *Gidatex* and *Apple* by explicitly reconciling those decisions with *Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.*, 144 F. Supp. 2d 1147 (D.S.D. 2001). The court in *Midwest* found impermissible deception violating Rule 4.3 where an investigator, acting on an attorney's behalf in furtherance of litigation, admitted at deposition that "the purpose of these trips wasn't to be a consumer shopping for a snowmobile, it was to attempt to elicit evidence in a pending civil case on behalf of the lawyers that hired" him. *Id.* at 1152. Similarly, the F&R attorneys' conduct was undertaken for the sole purpose of "prepar[ing] their case." (D.I. 44 at 22.)

14

involving dishonesty, fraud, deceit or misrepresentation," (Model Rules of Prof'l Conduct R. 8.4 (2004)), and Model Rule 4.1, which prohibits a lawyer from "knowingly mak[ing] a false statement of material fact or law to a third person." Model Rules of Prof'l Conduct R. 4.1 (2004). Despite these unambiguous Rules, Microsoft argues only that Alcatel "misconstrues the purpose and effect of Rule 8.4(c) and Rule 4.1," but does not say why or how. (D.I. 44 at 22.) Microsoft's corollary suggestion that the foregoing rules were not implicated because the F&R attorneys allegedly made no affirmative "misrepresentation" (D.I. 44 at 25), merely begs the question, for a material omission of the sort at issue qualifies as deception for purposes of the Rules. (D.I. 31 at 24.) And to the extent there are factual disputes or facts not yet developed, further discovery would be appropriate.

### D. The Appropriate Remedies For F&R's Misconduct Are To Disqualify F&R And Exclude All Evidence Derived From Its Misconduct

Microsoft argues that F&R engaged only in a "routine transaction" in which F&R elicited from Mr. Lin only the same information "easily obtained by anyone in the public" (D.I. 44 at 30, 31) and thus that Alcatel cannot be prejudiced because no confidential information possibly could be implicated. That claim is simply not credible in light of Microsoft's concomitant assertion that the information it obtained from its improper interrogations of Mr. Lin constitutes *highly guarded and confidential work product which F&R is using to further its litigation goals* against Alcatel.

If the information developed by F&R through its interrogation of Mr. Lin were as "routine" as Microsoft now argues, Microsoft would have no basis to refuse to produce F&R's notes, described as "highly protected attorney work product." (*id.* at 30; Malionek Decl. at ¶ 18.) Instead, F&R and Microsoft are preparing their case against Alcatel pending before this Court,

preparing their expert, Jack Chang, and preparing for trial before the ITC, all with the benefit of the information they developed through their improper contacts with Mr. Lin.

Courts routinely order disqualification and the exclusion of evidence where it is merely *possible* that confidential information *might* be utilized.[11]   *See, e.g., MMR/Wallace Power & Industrial, Inc. v. Thames Assoc.*, 764 F. Supp. 712, 714-16 (D. Conn. 1991) (despite safeguards against inadvertent disclosure of confidential information, the offending counsel's *ex parte* interview of a former employee of its opposing party required disqualification).

### 1.    F&R's Misconduct Warrants Disqualification

Despite Microsoft's arguments to the contrary, disqualification is entirely appropriate[12] for violations of the no-contact rules, a fact recognized even by its own expert. (*See* Hodes Decl. at ¶ 18 ("disqualification for violation of the no-contact rule is second in frequency only to disqualification for violation of conflicts of interest rules")).   Microsoft's argument that Alcatel "has suffered absolutely no prejudice from F&R's *purchase of the ABS system*" (D.I. 44 at 37 (emphasis added)), is irrelevant.   Alcatel has not questioned F&R's right to purchase the Alcatel System.   Rather, F&R breached its ethical obligations when it interrogated at length a senior Alcatel employee with expertise in the accused products about

---

[11]    F&R's promise not to introduce as evidence at trial any of Mr. Lin's statements elicited during the interrogation (*see* D.I. 44 at 9, 15-16) is, of course, besides the point.   F&R and Microsoft's witnesses have been, in Microsoft's words, "tainted in a manner that invades Alcatel's legitimate rights." (*Id.* at 30.)

[12]    Microsoft also argues that it would be prejudiced by the disqualification of its counsel due to the "significant discovery" that has already taken place in the related ITC investigation. (D.I. 44 at 33.) That attorneys have invested time in a matter is no bar to disqualification. *See Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080, 1086 (S.D.N.Y. 1989) (disqualifying counsel for violations of Rule 4.2, even though "[Counsel] spent almost seven thousand five hundred hours working on this case and have reviewed more than thirty-five thousand pages of documents. Deposition transcripts total almost six thousand pages. Forty-one subpoenas have been issued.").

precisely the matters that underlie Microsoft's claims of infringement.[13]  Microsoft's attorneys who will try this case are thus privy to Alcatel's confidential information and can use it to cross-examine witnesses, prepare Microsoft's witnesses and make arguments to this Court.  In the face of such ethical misconduct, "any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975).  This is especially true where, as here, the litigation is still in its early stages.[14]

Courts, including those in the Third Circuit, recognize that the prejudice to the offended party is inherent in the improper contact itself, and order disqualification when misconduct **might** result in an unfair advantage. *See, e.g., Inorganic Coatings v. Falberg*, 926 F. Supp. 517, 520 (E.D. Pa. 1995) (disqualification is required where the substance of the *ex parte* discussion "went to the nub of the lawsuit . . . [in order] to protect [the adverse party] from any unfair advantage [the attorney] **might** have achieved by the improper [contact]") (citations omitted) (emphasis added)); *Arnold v. Cargill Inc.*, No. 01-2086, 2004 U.S. Dist. LEXIS 19381, at *23 (D. Minn. Sept. 24, 2004) (disqualification "is appropriate where an attorney's conduct **threatens** to work a continuing taint on the litigation and trial") (emphasis added); *Hammond*, 167 F. Supp. 2d at 1289 (ordering disqualification and other sanctions when it was impossible to

---

[13]     Microsoft cites *EEOC v. Hora, Inc.*, No. 05-5393, 2007 U.S. App. LEXIS 15705 (3d Cir. 2007), for the proposition that disqualification is unwarranted for F&R's ethical violations.  Under Third Circuit Internal Operating Procedure Rule 5.7, *Hora* is not precedential for any purpose.  Second, *Hora* is not analogous.  The *Hora* employee, unlike Mr. Lin, was a mere "executive assistant" whom the movants conceded did not fall within the ambit of Rule 4.2. *Id.* at *5.

[14]     *See, e.g., Essex County Jail Annex Inmates v. Treffinger*, 18 F. Supp. 2d 418, 445 (D.N.J. 1998) (acknowledging counsel's long representation of the party, but ordering disqualification and noting that "[t]his is not a case where, for instance, we are on the eve of trial and disqualification of a party's attorney will work an extreme prejudice on that party"); *see also In re Corn Derivatives Litig.*, 748 F.2d 157, 166 (3d Cir. 1984) (Adams, C.J., concurring) (noting that disqualified counsel represented a large corporation with resources to secure new counsel).

"ascertain the potential advantage that the ex parte communications *may* have provided") (emphasis added).

Notably, Microsoft does not deny that the information elicited from Mr. Lin was utilized to prepare for depositions taken in the ITC investigation since the offending conduct, is being used by F&R to prepare for trial in that proceeding, and will be utilized in the course of the instant litigation. The prejudice to Alcatel resulting from Microsoft's continued representation by F&R, in fact, is inherent and continuing every day.

### 2.    <u>Microsoft's Expert Jack Chang Should be Excluded</u>

This Court has the inherent power to preclude experts from testifying in matters pending before them whenever the remedy is required to preserve public confidence in the integrity of judicial proceedings. *See Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991) ("no one would seriously contend that a court should permit a consultant to serve as one party's expert where it is undisputed that the consultant was previously retained as an expert by the adverse party in the same litigation and had received confidential information from the adverse party pursuant to the earlier retention."). Here, because Mr. Chang received confidential information from Mr. Lin, he should be excluded.

Recognizing that F&R could not extract information from Mr. Lin if F&R brought Mr. Chang into the same room and gave Mr. Chang direct access to Mr. Lin (since doing so might have led Mr. Lin to discover F&R's scheme), Microsoft states that F&R carefully kept Mr. Chang and Mr. Lin apart. (D.I. 44 at 9.) Microsoft apparently believed that it would have been inappropriate to have Mr. Lin directly feeding insight and information to Mr. Chang, but is unable to explain how F&R's admitted shuttling of information from Mr. Lin to Mr. Chang is qualitatively different or cures the resulting prejudice. Therefore, in order to prevent Microsoft, F&R and Mr. Chang from benefiting from the improper conduct, Microsoft and F&R should be

barred from introducing Mr. Chang's report and all other information acquired through the interrogations of Mr. Lin. *See In re Air Crash Disaster*, 909 F. Supp. 1116, 1118 (N.D. Ill. 1995) (ordering evidence derived from *ex parte* contact with airline's pilots regarding their training—the subject matter of the litigation—must be excluded).

### 3.    To Resolve Any Questions Regarding the Fruits of F&R's Misconduct, This Court Should Order Discovery Into the Matter

Based on the undisputed material facts already in the record, and based upon the substantial authority highlighting the impropriety of F&R's conduct and the appropriateness of the requested sanctions, Alcatel submits that the disqualification of F&R, and the exclusion of any tainted evidence, is appropriate. This Court should also permit Alcatel to take discovery to resolve any questions about Microsoft's and F&R's conduct. Thus far, Microsoft has claimed that all of F&R's notes and other documents, and the testimony of its lawyers, are privileged.

Microsoft also asserts, however, that F&R's improper interrogation of Mr. Lin comprised a routine commercial transaction. If so, then the information requested by Alcatel in connection with its effort to take discovery regarding this matter *cannot* be privileged. *See United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990) (no work product protection exists for materials prepared "in the ordinary course of business"). Indeed, to the extent that F&R attorneys have made declarations about these events—some of which are demonstrably inconsistent (disc. supra § I.)—they should submit to discovery to test their veracity.

Although Microsoft fails to cite any cases to support its refusal to submit to *any* discovery, courts—including courts in this circuit—routinely order the production of such materials in exactly these circumstances. *See Faison*, 863 F. Supp. at 1218 (disqualifying counsel and ordering production of all documents and materials related to the improper contact); *Univ. Patents, Inc. v. Kligman*, 737 F. Supp. 325, 329 (E.D. Pa. 1990) (precluding information

from *ex parte* contacts and ordering production thereof); *Penda*, 2004 U.S. Dist. LEXIS 13577, at *20-21 (ordering exclusion and production of information related to the improper contact).

Underscoring the appropriateness of discovery into this serious matter, the ITC recently issued an order "making no determination" on whether F&R's conduct violated the ethical rules (Malionek Decl., Ex. S at 16 n.12), and concluding that because there were insufficient factual details regarding prejudice to Alcatel, sanctions could not be ordered under ITC Rules. The ITC order has no bearing upon the instant motion, however, particularly because the administrative law judge's determination was based upon the ITC's own rules and standards, which are not at issue in the present motion. (*Id.* at 8 (citing ITC Rule 210.15(a) and ITC precedent requiring that disqualification be ordered only as a last resort based on a "high standard of proof" regarding prejudice).)[15]

If Microsoft wants to maintain its assertion of "no prejudice" to Alcatel, then it should be required to establish such a lack of prejudice by disclosing all materials it presently asserts constitute work product, and by submitting to depositions. Mr. Lin, a layperson, cannot be expected to identify the prejudice in the confidential information he provided to F&R. *See MMR/Wallace*, 764 F. Supp. at 726-27 (ordering disqualification of counsel without a showing of actual disclosure of confidences because the layperson could not have identified confidential information without his counsel).

## IV.    CONCLUSION

For the foregoing reasons, in addition to those set forth in its opening brief, Alcatel respectfully requests that the Court enter an order granting the relief requested in the Motion and ordering any other relief it deems appropriate.

---

[15]    *See Texas Instruments v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996) (decisions of the ITC Commission have no preclusive effect in another forum).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mnoreika@mnat.com

*Attorneys for Defendants and Counterclaimants*
  *Alcatel Business Systems and*
  *Genesys Telecommunications Laboratories, Inc.*

OF COUNSEL:

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY  10022-4834
(212) 906-1200

David A. Nelson
LATHAM & WATKINS LLP
233 South Wacker Drive
Suite 5800
Chicago IL 60606
(312) 876-7700

September 27, 2007
1247442

21

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on October 2, 2007 I electronically filed the foregoing document, which will send notification of such filing(s) to the following:

Thomas L. Halkowski, Esquire
FISH & RICHARDSON P.C.

I also certify that copies were caused to be served on October 2, 2007 upon the following in the manner indicated:

**BY ELECTRONIC MAIL
and HAND DELIVERY**

Thomas L. Halkowski, Esquire
FISH & RICHARDSON P.C.
919 N. Market Street
Suite 1100
Wilmington, DE 19801

**BY ELECTRONIC MAIL**

Brian R. Nester, Esquire
Jeffrey R. Whieldon, Esquire
Rama G. Elluru, Esquire
William E. Sekyi, Esquire
Linda Liu Kordziel, Esquire
FISH & RICHARDSON P.C.
1425 K. Street, N.W., 11th Floor
Washington, DC 20005

John E. Gartman, Esquire
FISH & RICHARDSON P.C.
12390 EL Camino Real
San Diego, CA 92130

*/s/ Maryellen Noreika*
Maryellen Noreika (#3208)
mnoreika@mnat.com