**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **MICROSOFT CORPORATION,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| ) | |
| v. ) | Civil Action No. 07-090 (SLR) |
| ) | |
| **ALCATEL LUCENT ENTERPRISE and** ) | |
| **GENESYS TELECOMMUNICATIONS** ) | |
| **LABORATORIES, INC.,** ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT GENESYS TELECOMMUNICATIONS LABORATORIES, INC.'S FIRST
NOTICE OF 30(B)(6) DEPOSITION TO PLAINTIFF MICROSOFT CORPORATION**

PLEASE TAKE NOTICE that on February 7, 2008 Defendant Genesys Telecommunications Laboratories, Inc. ("Genesys") will take, pursuant to Federal Rule of Civil Procedure 30(b)(6), the deposition upon oral examination of Plaintiff Microsoft Corporation ("Microsoft"), at the offices of LATHAM & WATKINS, 885 Third Avenue, New York NY 10022-4834.  The deposition will take place before a duly-qualified notary public or other office authorized by law to administer oaths.  Microsoft shall designate one or more officers, agents, or other persons who can testify on its behalf as to all matters known or reasonably available to the corporation regarding the matters set forth below in Exhibit A hereto.

The deposition will commence at 9:00 A.M. and will continue day to day until completed.  The deposition shall be recorded by stenographic means and may also be videotaped.  The deposition will be conducted in accordance with the Federal Rules of Civil Procedure.

Dated: January 21, 2008

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/*Maryellen Norieka*
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200

*Of Counsel:*

Steven C. Cherny
Clement J. Naples
Karen Y. Tu
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022
(212) 906-1200

*Attorneys for Genesys Telecommunications Laboratories, Inc.*

David A. Nelson
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606
(312) 876-7700

**SCHEDULE A**

**INSTRUCTIONS AND DEFINITIONS**

1. For all of the topics, the Definitions and Instructions set forth in Genesys' First Set of Interrogatories to Plaintiff apply as if fully set forth herein.

2. The terms "You" and "Your" shall mean Plaintiff, Microsoft.

3. Microsoft refers to (1) Microsoft Corporation and any parent, subsidiaries and divisions, (2) any predecessors and successors thereto, and (3) any and all persons or entities purporting to act or acting on Microsoft's behalf, including, but not limited to, all past and present agents, officers, employees, consultants, directors, affiliates, partners, associates, attorneys, or representatives thereof.

4. Genesys refers to (1) Genesys Telecommunications Laboratories, Inc. and any parent, subsidiaries and divisions, (2) any predecessors and successors thereto, and (3) any and all persons or entities purporting to act or acting on Genesys' behalf, including, but not limited to, all past and present attorneys, employees, consultants, directors, agents, officers, partners, affiliates, associates, or representatives thereof.

5. The terms "Microsoft Patents-in-Suit" or "Microsoft Asserted Patents" means U.S. Patent Nos. 6,430,289 ("the '289 patent"); and 6,421,439 ("the '439 patent").

6. The terms "Genesys Patents-in-Suit" or "Genesys Asserted Patents" means U.S. Patent Nos. 6,167,395 ("the '395 patent"); and 5,953,332 ("the '332 patent").

7. "Accused Microsoft Products" means Microsoft's Customer Care Framework and any Microsoft product that is capable of storing information related to call center transactions and accessing and utilizing said stored information in connection with call processing.

8. "Accused Genesys Product" means Inbound Voice.

9. The term "aware" shall mean when Microsoft had actual notice that any Genesys products were allegedly infringing the Microsoft Patents-in-Suit. *See, e.g., Advanced Cardiovascular Sys., Inc., v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993).

10. "Communication" means any transmission of information from one person to another, regardless of the medium of communication, and includes, without limitation, both oral and written communication. A document or thing transferred, whether temporarily or permanently, from one person to another is deemed a communication between such persons, whether or not such document or thing was prepared or created by the transferor or addressed to the transferee.

11. "Concern" or "concerning" means relating to, embodying, containing, comprising, constituting, indicating, referring to, identifying, described, discussing, involving, supporting, reflecting, evidencing, or otherwise in any way pertaining directly or indirectly to.

12. "Date" means the precise month, day, and year, if known, or as precise a statement of the month, day and year as is permitted by Microsoft's knowledge and the documents and information available to Microsoft.

13. The phrases "referring or relating to," "refer or relate to," "discussing," "summarizing," or "mentioning," as used herein, shall mean all information and all facts and/or documents that directly, indirectly or in any other way support, negate, bear upon, touch upon, incorporate, affect, include, pertain to and/or are otherwise connected with the subject matter in the Deposition Topics.

14. If, in responding to any Deposition Topic, you encounter any ambiguity in construing either the topic or a definition or instruction relevant to it, set forth the matter deemed ambiguous and the construction selected or used in responding.

15. As used herein, "and" and "or" are to be construed either disjunctively or conjunctively so as to acquire the broadest possible meaning.

16. As used herein, "any," "all," or "each" are to be construed as "any, all, and each" inclusively.

17. "Product" means a manufacture, machine, device, apparatus, instrument, mechanism, appliance, collection of components/parts (either individually or together), method or process which are designed to function together electrically, mechanically, or otherwise, to achieve a particular purpose or function.

18. As used herein, "document" or "documents" have the broadest meaning which can be ascribed to them pursuant to Fed. R. Civ. P. 34, including without limitation all final forms and all drafts and revisions of any type of written or graphic matter, original or reproduced, and all copies thereof which are different in any way from the original, regardless of whether designated "confidential," "privileged," or otherwise restricted. Without limiting the foregoing, the term "document" includes video tapes, films, audio tapes, computer disks, electronic mail messages, books, papers, letters, telegrams, facsimile transmissions, memoranda, communications, minutes, notes, schedules, tabulations, vouchers, accounts, statements, affidavits, reports' abstracts, agreements, contracts, diaries, calendars, plans, specifications, drawings, sketches, photostats, photographs, charts, graphs and other similar objects, and any kind of transcript, transcription or recording of any conversation, discussion or oral presentation of any kind, and any information stored on and reproducible in documentary form from a computer or other electronic information storage device.

19. The term "Prior Art" shall mean all documents, information or acts that qualify as

prior art to any of the Microsoft Patents-in-Suit under any section or subsection of 35 U.S.C. §§ 102 and 103, or any system, method, apparatus, publication, patent or use which has been cited to Microsoft by any person or entity as prior art to any of the Microsoft Patents-in-Suit.

20. "Each" and "every" shall be construed to mean both each and every.

21. As used herein, the use of the singular form of any word includes the plural and vice versa.

22. The term "identify":

   a. when used with reference to natural persons, shall mean to state the person's (a) full name; (b) employer; (c) position; (d) present or last known business address; (e) the business organization with which he or she was affiliated during the time period covered by the Deposition Topic; (f) present or last known home address; (g) whether the person ever has been employed by Microsoft and, if so, all employment positions held by the person, including the dates the person was employed by Microsoft at each such position; and (h) in the event that Microsoft is unaware of the person's present whereabouts, all information known to Microsoft that reasonably may be helpful in locating said person (for example, the names and addresses of known relatives);

   b. when used with reference to an organization, proprietorship, firm, company, corporation, association, or governmental agency or office, shall mean to state (a) its name; (b) its legal status; (c) the address and telephone number of its principal place of business; (d) the place of its incorporation or organization; and (e) the name, title, and telephone number of all officers, employees, and agents having knowledge of the subject matter of the interrogatory;

c. when used with reference to statements or communications, shall mean to state (a) the date on which the statement or communication occurred; (b) the mode of communication; (c) the participants to and/or recipients of the communication or statement; and (d) the contents of the statement or communication;

d. when used with reference to a document, shall mean to state (a) the author of the document; (b) the date appearing on the document and, if no date appears thereon, the answer shall so state and shall give the date or approximate date such document was prepared; (c) the identifying or descriptive code number, file number, title, or label of such document; (d) the general nature or description of such document (i.e., whether it is a letter, memorandum, drawing, etc.), and the number of pages of which it consists; and (e) the name of the person currently in possession, custody, or control of the document;

e. when used with reference to a patent or patent application additionally means to give the following information: (a) its country, patent and application numbers; (b) its dates of filing, publication, and grant; (c) the name of patentees or applicants; (d) its title; (e) the identity of each corresponding U.S. and foreign patent application and patent; and (f) the docket number or other designation thereof used by Microsoft.

**EXHIBIT A**

**TOPICS OF THE DEPOSITION**

**TOPIC NO. 1.**

The development of the invention of each claim of the Microsoft Patents-in-Suit, including conception, reduction to practice and diligence, and the identity of documents relating to that development and the persons who were involved in the development.

**TOPIC NO. 2.**

How and when Microsoft first learned of the Accused Genesys Product.

**TOPIC NO. 3.**

How and when Microsoft first became aware that the Accused Genesys Product allegedly infringes any of the Microsoft Patents-in-Suit.

**TOPIC NO. 4.**

The diligence performed by Microsoft prior to asserting each of the Microsoft Patents-in-Suit against Genesys.

**TOPIC NO. 5.**

Microsoft's knowledge of call forwarding in Voice Over Internet Protocol systems prior to the filing dates of the '289 patent and the '439 patent.

**TOPIC NO. 6.**

Microsoft's testing and/or certification of any Genesys products, including, but not limited to, the Accused Genesys Product.

**TOPIC NO. 7.**

The corporate structure and organization of Microsoft, including the structure and organization of the portion or portions of Microsoft responsible for the licensing of the Microsoft Patents-in-Suit.

**TOPIC NO. 8.**

Microsoft's licensing practices, including all licenses and attempts to license any patents related to call center or call routing technology and all licenses and attempts to license any of the Microsoft Patents-in-Suit.

**TOPIC NO. 9.**

Microsoft's revenue from the sale and licensing of the Microsoft Patents-in-Suit.

**TOPIC NO. 10.**

The commercial success of all Microsoft products covered by the Microsoft Patents-in-Suit.

**TOPIC NO. 11.**

The portion of the profit or price of all Microsoft products covered by the Microsoft Patents-in-Suit attributable to or derived from the patented features of the Microsoft Patents-in-Suit.

**TOPIC NO. 12.**

The identification, design and operation of all Microsoft products covered by the Microsoft Patents-in-Suit.

**TOPIC NO. 13.**

All competitors of Microsoft concerning sales of products covered by the Microsoft Patents-in-Suit.

**TOPIC NO. 14.**

All sales Microsoft claims to have lost as result of sales of the accused Genesys products

**TOPIC NO. 15.**

The identity of all products or parties that you are aware of since the issuance of the Microsoft Patents-in-Suit that practice any invention claimed in the Microsoft Patents-in-Suit.

**TOPIC NO. 16.**

The market or markets for the products in which the Accused ALE Products compete, and the participants in that market.

**TOPIC NO. 17.**

The identity, function, and purpose of all Microsoft products that interface with any Genesys products, including, but not limited to, the Accused Genesys Product.

**TOPIC NO. 18.**

All efforts to market, sell, and/or use Microsoft products that interface with any Genesys products, including, but not limited to, the Accused Genesys Product.

**TOPIC NO. 19.**

All Microsoft products that compete with the Accused Genesys Product.

**TOPIC NO. 20.**

All facts and circumstances relating to communications between Microsoft and Genesys regarding the installation, configuration, and/or interfacing of Genesys' products, including, but not limited to, the Accused Genesys Product, with any Microsoft products.

**TOPIC NO. 21.**

Any U.S. and foreign patents and patent applications, and any continuations, continuations in-part, divisions, interferences, reexaminations, reissues, parents, or foreign counterpart applications, owned, licensed or controlled by Microsoft that disclose, describe, discuss or refer to the Microsoft Patents-in-Suit.

**TOPIC NO. 22.**

All efforts taken by Microsoft to ensure that licensees of the Microsoft Patents-in-Suit and all other parties practicing any invention claimed in the Microsoft Patents-in-Suit complied with 35 U.S.C. § 287.

**TOPIC NO. 23.**

Any past, present, or planned litigation, administrative proceeding, or other legal proceeding relating to any of the Microsoft Patents-in-Suit and/or Accused Microsoft Products.

**TOPIC NO. 24.**

Microsoft's search, collection, and production of documents in the instant action.

**TOPIC NO. 25.**

The policies regarding retention or destruction of documents and things at Microsoft and the persons responsible for developing, managing, revising, and enforcing those policies.

**TOPIC NO. 26.**

Any settlements reached regarding any litigation over the Microsoft Patents-in-Suit.

**TOPIC NO. 27.**

Users, potential users, customers, distributors, and licensees of the Microsoft Patents-in-Suit and/or Accused Microsoft Products.

**TOPIC NO. 28.**

The prosecution of the patent application that matured into the '289 patent, including why the prior art identified on the face of the '439 patent was not submitted to the United States Patent and Trademark Office during the prosecution of the patent application that matured into the '289 patent.

**TOPIC NO. 29.**

The prosecution of the patent application that matured into the '439 patent, including why the prior art identified on the face of the '289 patent was not submitted to the United States Patent and Trademark Office during the prosecution of the patent application that matured into the '439 patent.

**TOPIC NO. 30.**

How and when Microsoft first became aware of the Genesys Patents-in-Suit, including all actions Microsoft took upon becoming aware of the Genesys Patents-in-Suit, and the person(s) who first became aware of the Genesys Patents-in-Suit.

**TOPIC NO. 31.**

The conception, design, structure, development, architecture, function, operation, and method of installing the Accused Microsoft Products.

**TOPIC NO. 32.**

The operation of the Accused Microsoft Products in a call center environment, including the operation of the Accused Microsoft Products with call routing functionality.

**TOPIC NO. 33.**

Any training and/or technical support provided by or on behalf of Microsoft in connection with any of the Accused Microsoft Products, including, but not limited to, training courses.

**TOPIC NO. 34.**

The production, assembly, supply, manufacture, and distribution of each of the Accused Microsoft Products.

**TOPIC NO. 35.**

The identity of the Microsoft business units and each person at managerial level involved in the manufacture, sale, offer for sale, and marketing of the Accused Microsoft Products.

**TOPIC NO. 36.**

Installations of the accused Microsoft products in the US.

**TOPIC NO. 37.**

The date the Accused Microsoft Products were first made, used, offered for sale, and sold in the United States by any company or entity, including Microsoft.

**TOPIC NO. 38.**

The identity of each entity (U.S. and foreign) that has made, used, sold, offered for sale, or exported any Accused Microsoft Products, and the financial and corporate relationship(s) between each such entity and Microsoft.

**TOPIC NO. 39.**

Microsoft's revenue and profit from the sale or licensing of the Accused Microsoft Products, including, but not limited to, gross income or receipts, costs, expenses, and discounts.

**TOPIC NO. 40.**

All reports provided to Microsoft's management, including the corporate board, that refer or relate to sales, costs, sales and cost trends, sales and cost forecasts, sales and cost projections, and financial performance of the Accused Microsoft Products.

**TOPIC NO. 41.**

Microsoft's relationship with CosmoCom.

**TOPIC NO. 42.**

The development and operation of any Microsoft products that integrate or can be used in conjunction with any CosmoCom product, including, but not limited to, the integration of Microsoft's Customer Care Framework with CosmoCom's CosmoCall Universe.

**TOPIC NO. 43.:**

The testing, inspection, demonstration, marketing, and sale of any Microsoft products that integrate or can be used in conjunction with any CosmoCom products, including, but not limited to, the integration of Microsoft's Customer Care Framework with CosmoCom's CosmoCall Universe.

**TOPIC NO. 44.:**

The sales of all Microsoft products that can be integrated and/or used in conjunction with CosmoCom products, including, but not limited to, the integration of Microsoft's Customer Care Framework with CosmoCom's CosmoCall Universe.

**TOPIC NO. 45.:**

CosmoCom's selection as Microsoft's launch partner for Microsoft's Customer Care Framework product.

**TOPIC NO. 46.**

Microsoft's knowledge of CosmoCom's UniFrame Product.

**TOPIC NO. 47.:**

Users, potential users, customers, distributors, and licensees of any Microsoft product used, deployed, or implemented in conjunction with CosmoCom's CosmoCall Universe.

**TOPIC NO. 48.:**

Any patent licenses or negotiations for patent licenses between Microsoft and CosmoCom related to call routing.

**TOPIC NO. 49.:**

Microsoft's Technology Adoption Program, including, but not limited to, CosmoCom's participation in and the role of CosmoCall Universe and CosmoCom's UniFrame Product in the Technology Adoption Program, the timing of CosmoCom's entry into the Technology Adoption Program, and the relation of these matters to Genesys' involvement in or departure from Microsoft's Technology Adoption Program.

**TOPIC NO. 50.:**

Communications related to Genesys' participation in or departure from the Microsoft Technology Adoption Program, including all such communications with CosmoCom.

**TOPIC NO. 51.**

The identification of any documents relating to the subjects of paragraphs 1-50.

**TOPIC NO. 52.**

The identification of any persons with knowledge of the subjects of paragraphs 1-51.

CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on January 21, 2008 I electronically filed the foregoing document, which will send notification of such filing(s) to the following:

Thomas L. Halkowski, Esquire
FISH & RICHARDSON P.C.

I also certify that copies were caused to be served on January 21, 2008 upon the following in the manner indicated:

**BY ELECTRONIC MAIL**
**and HAND DELIVERY**

Thomas L. Halkowski, Esquire
FISH & RICHARDSON P.C..
919 N. Market Street
Suite 1100
Wilmington, DE  19801

**BY ELECTRONIC MAIL**

Ruffin B. Cordell, Esquire
Linda Liu Kordziel, Esquire
FISH & RICHARDSON P.C.
1425 K. Street, N.W.
11th Floor
Washington, DC 20005

John E. Gartman, Esquire
FISH & RICHARDSON P.C.
12390 EL Camino Real
San Diego, CA  92130

*/s/ Maryellen Noreika*

Maryellen Noreika (3208)