# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

MICROSOFT CORPORATION,

      Plaintiff,

v.

ALCATEL-LUCENT ENTERPRISE
and
GENESYS TELECOMMUNICATIONS
LABORATORIES, INC.,

      Defendants.

C.A. No. 07-090-SLR

**PUBLIC VERSION**

## MICROSOFT CORP.'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY FOR ALL ASSERTED CLAIMS OF U.S. PATENT NO. 6,421,439

FISH & RICHARDSON P.C.
Thomas L. Halkowski (#4099)
Raymond N. Scott, Jr. (#4949)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607
John E. Gartman
12390 El Camino Real
San Diego, CA 92130

Ruffin B. Cordell
Linda Liu Kordziel
Indranil Mukerji
William Sekyi
Kfir Levy
Kori Anne Bagrowski
Robert Courtney
FISH & RICHARDSON P.C.
1425 K Street NW, Suite 1100
Washington, D.C. 20005

**ATTORNEYS FOR PLAINTIFF
MICROSOFT CORPORATION**

REDACTED DATE: June 27, 2008
ORIGINAL DATE: June 20, 2008

# TABLE OF CONTENTS

**Page(s)**

I.  NATURE AND STAGE OF THE PROCEEDING................................................................ 1

II.  SUMMARY OF THE ARGUMENT ............................................................................... 1

III.  STATEMENT OF MATERIAL FACTS IN DISPUTE.................................................. 3

    A.  Overview of the '439 Patent ............................................................................ 3

    B.  The ALE OXE System.................................................................................... 4

        1.  A VoIP softphone call is activity on the computer network ...................................................................4

        2.  The OXE system allows a user to set routing rules based on the user's status or activity on the computer network ..............................................6

        3.  The OXE system routes calls in accordance with the user's status or activity stored on the computer network ..............................................9

    C.  The ALE OXO System ................................................................................ 10

    D.  The Chestnut Reference .............................................................................. 12

IV.  APPLICABLE LEGAL STANDARDS ...................................................................... 13

V.  ARGUMENT ............................................................................................................ 13

    A.  Summary Judgment is Inappropriate Concerning ALE's Infringement of the '439 Patent .............................. 13

        1.  The ALE OXE System.....................................................14

        2.  The ITC Decision is Based on Factual and Legal Errors .......................................................25

        3.  The ALE OXO System ...................................................28

    B.  Summary Judgment is Inappropriate Concerning ALE's Indirect Infringement of the '439 Patent. ................. 28

    C.  The Chestnut Reference Does Not Invalidate the '439 Patent. ....................................................... 32

ii

## TABLE OF CONTENTS (cont'd)

Page(s)

1.  Chestnut does not disclose "a data structure contained within a computer network to store user-selectable criteria for call processing, wherein the data structure stores the user-selectable criteria in one or more lists that are used in filtering an incoming call" ........................................................................... 33

2.  Chestnut does not disclose "wherein some of the one or more lists are used to filter the incoming call according to current activity of subscribers on the computer network or according to current activity of the user on the computer network" ............................................... 34

3.  Chestnut does not disclose "a computer network access port used by the telephone network to access the data structure such that the telephone network has access to the one or more lists over the computer network access port" ........................................................... 35

4.  Chestnut does not disclose "a controller to receive the incoming call designated for the user telephone and to process the incoming call in accordance with the user-selectable criteria, the controller accessing the user-selectable criteria in the one or more lists of the data structure via the computer network access port and thereby applying the user-selectable criteria to the incoming call" .................................................. 37

5.  Chestnut does not disclose a computer program product for implementing the claimed method of processing an incoming call ............................................................................. 39

VI.   CONCLUSION ................................................................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bell Commc'ns Research v. Vitalink Commc'ns Corp.,
    55 F.3d 615 (Fed. Cir. 1995)...............................................................................22

Continental Can Co. v. Monsanto Co.,
    948 F.2d 1264 (Fed. Cir. 1991)...........................................................................37

In re Robertson,
    169 F.3d 743, 745 (Fed. Cir. 1999).....................................................................37

Koito Mfg. Co. v. Turn-Key-Tech, LLC,
    381 F.3d 1142 n.4 (Fed. Cir. 2004).....................................................................40

Liebel-Flarsheim Co. v. Medrad, Inc.,
    358 F.3d 898 (Fed. Cir. 2004).............................................................................27

Philips Elecs. N. Am. Corp. v. Contec Corp.,
    411 F. Supp. 2d 470 (D. Del. 2006).....................................................................22

Texas Instruments v. Cypress Semiconductor Corp.,
    90 F.3d 1558 (Fed. Cir. 1996)...............................................................................1

**Statutes**

35 U.S.C. § 271..........................................................................................30, 31

## I.    NATURE AND STAGE OF THE PROCEEDING

Plaintiff Microsoft Corporation ("Microsoft") filed this patent case on February 16, 2007, as a companion district court case to an investigation of the U.S. International Trade Commission ("ITC")[1] against Alcatel-Lucent Enterprise ("ALE") for infringement of four Microsoft patents—U.S. Patent Nos. 6,421,439; 6,430,289; 6,263,064; and 6,728,357. [D.I. 1].  On May 9, 2008, ALE filed a Motion for Summary Judgment of Non-infringement and Invalidity of U.S. Patent No. 6,421,439 (the '439 patent).  [D.I. 159-60.]  Microsoft files this brief in opposition to ALE's motion.  For the reasons discussed below, there are genuine issues of material fact as to both infringement and invalidity, and ALE is not entitled to judgment as a matter of law.

## II.    SUMMARY OF THE ARGUMENT

To prevail on a motion for summary judgment of noninfringement and invalidity, ALE must demonstrate that there are no genuine issues of material fact and that, viewing the facts in a light most favorable to Microsoft, no reasonable jury could find that the '439 patent is infringed or is valid.  ALE does not and cannot meet this high burden.  ALE's brief is based on its opinion of how the facts should be decided, not on an issue of law – and in this context all factual disputes must be resolved in Microsoft's favor.  The entire non-infringement position ALE sets forth comes down to whether the accused ALE systems process calls based on the activity of

---

[1] Regarding the '439 patent, on May 19, 2008, the ITC reversed Judge Luckern's finding of infringement by the accused Alcatel OXE system and instead found no infringement of claims 1, 28 and 38 of U.S. Patent No. 6,421,439.  The ITC also reversed Judge Luckern's finding of validity and instead found that claims 1, 28 and 38 of the '439 patent are invalid in view of U.S. Patent No. 6,041,114 or U.S. Patent No. 5,652,789.  See Notice of Commission Decision to Reverse-In-Part and Modify-In-Part a Final Initial Determination Finding a Violation of Section 337 and Termination of the Investigation With a Finding of No Violation, Investigation No. 337-TA-598 (May 19, 2008).  The ITC's decision is not binding on this Court and does not address all the asserted claims in this case.  See Texas Instruments v. Cypress Semiconductor Corp., 90 F.3d 1558, 1570 (Fed. Cir. 1996).

users or callers on the computer network. In support of this position, ALE provides its views, supported by little more than its own expert's opinions, on how questions of fact should be decided – for example, whether a VoIP softphone call constitutes the user's activity on the computer network; and whether the OXE and OXO systems route calls in accordance with the user's activity on the computer network. [ALE Br. 15-19.] Despite ALE's assertions, the documentary and testimonial evidence shows that a VoIP softphone call is activity on the computer network, and the OXE and OXO systems route calls in accordance with the user's activity on the computer network. As such, ALE infringes the '439 patent; at the very least, the evidence establishes genuine issues of material fact. Therefore, ALE cannot satisfy the summary judgment standard for non-infringement.

In addition, ALE has moved for summary judgment of invalidity. ALE's claim that Chestnut invalidates the '439 patent is flawed in several respects. ALE fails to address how each and every claim limitation of the '439 patent is disclosed in Chestnut. Instead, ALE presents its arguments in broad strokes, glossing over the details, and ignoring the actual claim language. For example, all the asserted claims of the '439 patent expressly require the existence of a "computer network access port" that allows the telephone network to access a data structure – and the user-selectable criteria stored on that structure – which is on the computer network. ALE fails to show any disclosure whatsoever of a "computer network access port" in Chestnut, referring instead to vague "CTI applications," none of which does what the claims require of the computer network access port. [ALE Br. 28.] As a result, the validity of the '439 patent in view of Chestnut is, at best, replete with questions of fact regarding how one of ordinary skill would read and discern Chestnut. Therefore, ALE's motion for summary judgment of invalidity should be denied.

2

### III.    STATEMENT OF MATERIAL FACTS IN DISPUTE[2]

#### A.    Overview of the '439 Patent

U.S. Patent No. 6,421,439 (filed Mar. 24, 1999) ("the '439 patent") is directed to leveraging computer technology to address certain problems faced by telephone users. Entitled "System and Method for User Affiliation in a Telephone Network," the '439 patent teaches a system giving users more control over their incoming calls by allowing them to define call-processing criteria through their computers, basing call-processing criteria on such factors as the identity of the caller and the activity or status of the caller or user on the computer network.

The '439 patent solved a problem in that the existing telephone technology did not always provide the user with the desired degree of control over incoming calls. [Ex. 35,[3] '439 patent col. 1:23–35.] As noted in the specification, in prior systems, "[t]he user may answer all incoming calls or may choose not to answer any incoming call." [Id. at col. 2:57-63.] The '439 patent gave users more control over their incoming calls by allowing them to define call-processing criteria through their computers.

According to the '439 patent, the user-selectable call-processing criteria is stored on a data structure on the computer network and is accessible by the telephone network through a computer network access port. [See, e.g., id. at col. 14:27-37.] For example, the '439 patent allows the user to have certain calls sent to another destination (thus not disturbing the user with a ringing phone), while still routing calls from a special set of callers – e.g., the user's family, or his boss – to the user's telephone. [See, e.g., id., fig.2, col. 1:44–2:32.] The user can further

_____

[2] ALE neglected to include a concise statement of facts with its motion, as required by LR 7.1.3(c). Had ALE done so, the many fact questions which preclude summary judgment would have been apparent. Microsoft offers this statement of facts to instruct the Court and to respond to ALE's positions on the factual record, insofar as Microsoft understands those positions.

[3] All exhibit numbers refer to exhibits attached to the Declaration of Raymond Scott in Support

configure the system so that different rules come into effect based on the user's current activity on the computer network.  [See, e.g., id. at col. 14:18-26.]  The system described in the '439 patent further includes a controller on the telephone network that accesses the user-selectable criteria (stored in the data structure on the computer network) through the computer network access port.  [See, e.g., id. at col. 14:31-37.]  The controller then processes the incoming call in accordance with that user-selectable criteria.  [Id.]

**B.    The ALE OXE System**



**1.    A VoIP softphone call is activity on the computer network**



of Microsoft's Oppositions to Defendant's Motions for Summary Judgment.



admits as much by stating that "[a] soft phone is simply an *application that runs on a general purpose computer* used with a microphone and a speaker to allow the user to create a telephone *using resources of the computer* (as opposed to a stand alone phone))." [See ALE Br. 2.]

More accurately described, a softphone is a telephone that is also a computer application (to wit: "softphone" = <u>soft</u>ware <u>phone</u>).  There is no dispute that running the application (<u>i.e.</u>, using the softphone) requires using the computer's CPU, memory, hard drive, network card, sound card, microphone, speakers, and operating system resources just like any other computer



[Beckmann Decl. at ¶ 19.]  Thus, while acting as a telephone, a softphone is also an application running on a computer on a computer network.  [Beckmann Decl. at ¶ 20.]





2.     The OXE system allows a user to set routing rules based on the user's status or activity on the computer network











**D.    The Chestnut Reference**

There are material facts in dispute with respect to the validity of the '439 patent in light of Chestnut. The Chestnut patent discloses a "telecommute server" that is used to implement a method and system for controlling call forwarding, based upon the device used by the called party to log onto a computer network. [See, e.g., Ex. 36, Chestnut at Abstract; Beckmann Decl. at ¶ 34.] Chestnut teaches that the location of the called party is determined by associating the device used to log onto a computer network with a particular telephone. [Ex. 36, Chestnut at Abstract; Beckmann Decl. at ¶ 34.] As the Abstract states, "[c]alls are forwarded based upon the device used to log onto the computer network by the called party." [Ex. 36, Chestnut at Abstract.] For example, Chestnut teaches that if the called party was logged onto the computer network from the party's office workstation, then the call would be directed to the party's office extension. [Id. at col. 4:58–60; Beckmann Decl. at ¶ 34.] If, by contrast, the called party were logged onto the computer network from the home workstation, then the telecommute server would instruct the PBX to forward the call to called party's home phone. [Ex. 36, Chestnut, col. 4:60–64; Beckmann Decl. at ¶ 34.]

The parties dispute several material facts regarding the disclosures in Chestnut, including at least:

- whether Chestnut discloses a telecommute server that is on the telephone network;

12

- whether Chestnut discloses a data structure storing user-selectable criteria;

- if so, whether Chestnut discloses storing said criteria in lists such as caller lists;

- whether the CTI applications mentioned in Chestnut disclose giving the "private telephone switch" access to the data structure;

- whether Chestnut discloses a "controller" as it is defined in the '439 patent; and

- whether Chestnut discloses a computer program product that performs the steps disclosed in the '439 patent.

In its brief, ALE does not address each of these material factual disputes nor explain how, when these facts are viewed in the light most favorable to Microsoft, no reasonable jury could find the '439 patent valid. [ALE Br. 24-30.] This treatment simply does not resolve the many genuine issues of material fact regarding Chestnut and the '439 patent.

## IV.    APPLICABLE LEGAL STANDARDS

This Court is already familiar with the legal standards concerning summary judgment, infringement and validity. These standards are also laid out in Microsoft's Opposition to Defendant's Motion for Summary Judgment of Non-Infringement and Invalidity for All Asserted Claims of U.S. Patent Nos. 6,263,064 and 6,728,357, filed herewith, the relevant section of which is hereby incorporated by reference. [Plaintiff Microsoft's Opposition to Defendant's Motion for Summary Judgment of Non-Infringement and Invalidity of all Asserted Claims of United States Patent Nos. 6,263,064 and 6,728,357 ("O'Neal Opposition") at Section IV.A.]

## V.    ARGUMENT

### A.    Summary Judgment is Inappropriate Concerning ALE's Infringement of the '439 Patent

ALE has failed to show that, viewing the factual record in the light most favorable to Microsoft, no reasonable jury could find that the accused ALE systems infringe the '439 patent. In fact, when viewing the facts in Microsoft's favor, a reasonable jury would have to conclude

that the systems infringe. At the very least, there are genuine issues of material fact.

### 1.    The ALE OXE System

ALE's non-infringement position centers around the factual question of whether the OXE system routes calls based on the current activity of the user on the computer network. [ALE Br. 10-11; 14-19.] Under either party's construction, a reasonable jury could find that it does.

### a.    A softphone call is activity of a user on the computer network

First, ALE asserts that a softphone call cannot constitute activity of the user on the computer network. In doing so, ALE fails to acknowledge the overwhelming evidence that (1) a softphone is a computer application running on a computer and (2) during a softphone call, the user's computer running the softphone application processes the user's voice into digital data, packetizes that data, and transmits the data packets over the computer network. [Beckmann Decl. at ¶¶ 14-20.]







Beyond the testimony and documents, the ALE softphones – in operation – are practically indistinguishable from any other software applications running on a PC. Mr. Leroy acknowledged this fact:





Accordingly, regardless of any litigation-based characterization of its softphone activity for purpose of this litigation, ALE's witnesses, its internal and external documents, and the operations of its software prove that its softphones are software applications running on a computer. For this reason, the evidence demonstrates that ALE's softphones at issue – the web-based My Phone and the 4980 My Softphone – are programs running on the computer. The evidence further establishes that a user on a softphone call constitutes activity of the user on the computer network. At the very least, there are genuine issues of material fact, and ALE cannot meet its burden of showing that no reasonable jury could find for Microsoft on this issue.

       **b.**      **A softphone call is activity of a user on the computer network under either party's construction**

The "activity" here – being on a VoIP call using a softphone – satisfies the claim term "activity of the user on the computer network" under either party's construction.

ALE argues that a softphone call is not activity on a computer network because when a computer is used as a softphone, it is transmitting telephony information. Therefore, asserts ALE, it is activity on a telephone network. [ALE Br. 18-19.] Contrary to ALE's assertions, softphone activity is activity on the computer network under either party's construction. When a

18

user is busy on a softphone call, the user is active on the computer network <u>and</u> the telephone network. [Beckmann Decl. at ¶ 20.] As explained in detail above, when a user is busy on a softphone call, the user is utilizing the computer's resources, including the computer's CPU, memory, hard-drive, keyboard, mouse, sound card, speakers, microphone, and network card. [Beckmann Decl. at ¶¶ 15-18.] When on a softphone call, the user is transmitting packets of data (such as digitized sound packets of the user's voice) through the computer network. [<u>Id.</u>] The user is also receiving similar packets (such as the caller's voice) through the computer network for the user's computer to process into sound to be played on the computer's speakers. [<u>Id.</u>]

Under either party's construction, this is activity on the computer network. Because the data packets are indisputably digital data originated by a computer, the softphone call also constitutes activity on a computer network. [Beckmann Decl. at ¶ 20.] There is nothing in either party's constructions that precludes the user's activity from being on both the telephone network as well as the computer network. All that is required is that the system route calls in accordance with activity on the computer network.

As to ALE's contention that softphone activity does not constitute activity on the computer network, it is inconsistent with the evidence and common sense because the argument boils down to an untenable premise: that a computer running a softphone software application ceases to be a computer and becomes only a telephone, so that the activity can only be telephonic activity. Such an argument stretches credulity and runs counter to the evidence. Like any other computer, a computer running a softphone has a highly active microprocessor, executes software instructions, still processes digital information coming over the LAN, and possesses all other basic attributes of being a computer.

test.).]  Yet, ALE and Mr. Hyde-Thomson believe that a mere label change in the guise of expert testimony can fundamentally alter the nature of a computer. [4]

Softphone activity also satisfies either party's construction of "activity."  Under Microsoft's construction of "activity" as "status," a user is active or busy on the computer network when engaged in a VoIP call using either the web-based My Phone softphone or the 4980 My Softphone application.  [Beckmann Decl. at ¶ 21.]  Under ALE's construction of "activity" as "present," a user is present on the computer network when engaged in a VoIP call because the computer is executing the 4980 My Softphone software application or the My Phone softphone through a web browser platform.  [Beckmann Decl. at ¶ 21.]

When viewing these facts in the light most favorable to Microsoft, a reasonable jury could find that a user's softphone activity is indeed activity on the computer network.  At the very least, this is a material question of fact and this Court should deny ALE's motion.

> **c.    The OXE system routes calls in accordance with user activity on the computer network**





Furthermore, under Microsoft's construction of user activity on a computer network ("user status on a computer network"), a user's status is not limited to simply being "busy" or "not busy" on a softphone.



ALE's argument is unavailing. It does not matter whether and how the OXE system routes calls when the user is "busy" on a traditional telephone. Indeed, Microsoft does not assert infringement in that scenario precisely because talking on a traditional telephone is not activity on a user computer. In the configuration Microsoft has accused, however (when the user has a softphone, the use of which is activity on the computer network), the OXE system does infringe the '439 patent. See e.g., Philips Elecs. N. Am. Corp. v. Contec Corp., 411 F. Supp. 2d 470, 475 (D. Del. 2006) ("even though Defendants' URCs 'sometimes, but not always' embody the claimed method, they infringe the '359 patent") (citing Bell Commc'ns Research v. Vitalink Commc'ns Corp., 55 F.3d 615, 622-23 (Fed. Cir. 1995) ("an accused product that sometimes, but not always, embodies a claimed method nonetheless infringes")).

A reasonable jury could also find that the OXE system infringes the '439 patent under ALE's construction of activity on a computer network ("present on a computer network"). In

that case, the question of fact would merely shift to what activity is taken into account when a

user is "present" or not on the computer network, and how the OXE system accounts for that

presence.



Under either party's construction, a reasonable trier of fact could, when viewing the facts

in the light most favorable to Microsoft, conclude that the OXE system does route calls in

accordance with the user's activity on the computer network. ALE has therefore not met its

burden, and this Court should deny ALE's motion for summary judgment.

> **d.    ALE's argument regarding the state of the telephone extension misses the mark.**

Finally, ALE argues that it is the state of the telephone extension ("on-hook" or "off-

hook") stored in a register on the OXE, and not any computer network activity, that determines

how to route the call when the user is busy on a softphone call. [ALE Br. 16-18.] For the

reasons discussed above, ALE's argument ignores the obvious fact that a softphone call is both

telephone activity, as well as computer activity.

More importantly, the '439 patent claims simply require that the routing takes place

"according to" or "conditioned on" the user's activity on the computer network. [See, e.g., Ex.

35, '439 patent at col. 14:17-26.]





Viewing these facts in the light most favorable to Microsoft, a reasonable jury could conclude that a softphone call is routed in accordance with the user's activity on the computer network. At the very least, there are genuine issues of material fact. Accordingly, this Court should deny ALE's motion for summary judgment.

### 2.    The ITC Decision is Based on Factual and Legal Errors

In addition, the ITC Opinion is not helpful to ALE. The ITC Opinion ignored Federal Circuit law, statements in the '439 patent specification, and the clear and unambiguous documentary evidence regarding the operation of the OXE system. In particular, the ITC found non-infringement on the grounds that a VoIP softphone call is neither "computer activity" nor "on the computer network."

In making this determination, the ITC based its finding primarily on two points – that a VoIP call is telephone activity and therefore cannot be activity on a computer network, and that VoIP calls cannot be computer activity because the specification and prosecution history of the '439 do not refer to VoIP phone calls. [Ex. 32, ITC Commission Opinion at 10-16.] With regard to the first point, the ITC seemed to require that any activity on a computer network be exclusive of any activity on a telephone network. This requirement contradicts the plain language of the '439 patent. There is no requirement in the '439 patent, or in the patent's prosecution history, that "activity" that takes place on a computer network could not also take place on a telephone

network. Nor is there a requirement that the computer network be distinct and separate from the

telephone network. Rather, the '439 patent contemplates and expressly describes the overlap of

computer networks and telephone networks.

> The communication between the user computer 154 and the Internet 134 is a conventional communication link used by millions of computers throughout the world. For example, the user computer 154 may be a personal computer (PC) containing a communication interface, such as a modem (not shown). The network link 156 may be a simple telephone communication link using the modem to communicate with the Internet 134. The Internet controller 152 functions in a conventional manner to communicate with the user computer 154 via the network link 156. Although the communication link 132 and the network link 156 are both communication links to the Internet, the network link 156 is a conventional computer connection established over a telephone line, a network connection, such as an Ethernet link, or the like.

[Ex. 35, '439 patent at col. 6:31-45.] Thus, there is nothing in the intrinsic evidence that

precludes VoIP softphone calls from being activity on the telephone network, as well as activity

on the computer network.[5]

With regard to the second point, that VoIP calls cannot be computer activity because the

specification and prosecution history of the '439 patent do not refer to VoIP phone calls, it is

established Federal Circuit law that a claim's scope is not limited to the systems or embodiments

expressly called out in the specification. As the Federal Circuit explained:

> [T]his court has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment. See, ACTV, Inc. v. Walt Disney Co., 346 F.3d 1082, 1091 (Fed. Cir. 2003); Apex Inc. v. Raritan Computer, Inc., 325 F.3d 1364, 1377 (Fed. Cir. 2003); Altiris, Inc. v. Symantec Corp., 318 F.3d 1363, 1373 (Fed. Cir. 2003);

---

[5] This position is consistent with the '439 patent's prosecution history, as well. While distinguishing a prior art reference (Brennan) during prosecution, the patentee explained that the '439 patent teaches processing an incoming call according to activity on a computer network. [Ex. 60, '439 Prosecution History at MSAL 00695 (emphasis added).] At no point, however, did the patentee disclaim the idea that the activity could occur on both the computer network and the telephone network. All that was required was activity on the computer network. [Id. (noting that the activity on the computer network "does not typically occur on the telephone network" (emphasis added)).]

Tex. Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1204-05 (Fed. Cir. 2002); Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1327 (Fed. Cir. 2002); SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1121 n.14 (Fed. Cir. 1985) (en banc). Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using "words or expressions of manifest exclusion or restriction." Teleflex, 299 F.3d at 1327.

For example, in Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc., 334 F.3d 1294, 1301 (Fed. Cir. 2003), the court interpreted the term "remote" broadly to include surgical procedures performed with the surgeon present in the same room as the patient, although the written description only described performing the surgical procedure without the surgeon present in the same room as the patient, because "no statement in the written description constituted a limitation on the scope of the invention." Likewise, in Altiris, Inc. v. Symantec Corp., 318 F.3d 1363, 1371 (Fed. Cir. 2003), despite the fact that the specification discussed only a single embodiment, we held that it was improper to read a specific order of steps into method claims because the specification "nowhere [included] any disclaimer of any other order of steps, or any prosecution history indicating a surrender of any other order of steps."

Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 906 (Fed. Cir. 2004) Similarly, the ITC's preclusion of VoIP calls from being computer activity on this basis was legal error. Although softphone VoIP calls are not expressly described as activity on a computer network in the '439 patent, it was well known in 1999 that software applications could run on a computer network. As explained in great detail above, a softphone call is just that. The softphone application runs on the user's computer and sends and receives digital data over a computer network, much like any other software application or web browser. Indeed, it is impossible to imagine a softphone call that does not include activity on a computer network. Moreover, neither softphone VoIP calls particularly, nor software applications generally, were expressly excluded in the '439 patent as activity on a computer network.

27



### 3.    The ALE OXO System

Although ALE contends that the OXO system does not infringe the '439 patent, it does

not address any of the specifics in its motion.  Instead, ALE seems to suggest that the OXO

system does not infringe for the same reasons it contends the OXE system does not infringe.  In

other words, ALE asserts that the OXO system does not meet the limitation "activity of the user

on the computer network."  Contrary to ALE's assertions, the same factual issues present for the

OXE system are present for the OXO system.  Specifically, a user on a VoIP call using the OXO

system's softphone (PIMphony IP) constitutes activity of the user on the computer network for

the same reasons discussed above with respect to the OXE system's softphone.  [Beckmann

Decl. at ¶¶ 29-32.]  Therefore, at the very least, there are existing questions of fact in dispute.  As

such, ALE has not met its burden for summary judgment and this Court should deny ALE's

motion.

**B.    Summary Judgment is Inappropriate Concerning ALE's Indirect
     Infringement of the '439 Patent.**

Again, ALE fails to meet its summary judgment burden.  As an initial matter, ALE has

been aware of the '439, '289 and '357 patents since December 9, 2004, and the '064 patent since

October 2005.  [See Ex. 8, ALE's (ITC) Resp. to Staff Interrog. No. 9.]  Microsoft further

informed ALE of its specific infringement allegations on February 16, 2007 when Microsoft

filed its complaint.  ALE has not relied upon any opinions of counsel as a defense.



In its motion, ALE seems to argue that because the OXE – one component of the accused

system – can be used outside the system, then the entire system must somehow have "substantial

non-infringing uses."  This is not the case.

29





Accordingly, the OXO system, including these components, also does not qualify as "a staple article or commodity of commerce suitable for substantial non-infringing use." 35 U.S.C. § 271(c).

In addition, there is ample evidence to support a reasonable jury's finding that ALE induces its customers to use the accused systems in an infringing manner.





These actions, in light of ALE's knowledge of the Microsoft Patents, represent indirect (as well as direct) infringement by ALE of all the asserted claims. In view of ALE's knowledge of the patents, its understanding that the components of the accused ALE systems were especially adapted for use in an infringing manner, its specific actions to encourage use of the accused ALE systems in an infringing manner, and the direct infringement of the patents by ALE's customers and resellers, ALE has contributed to and induced infringement of the patents-in-suit. At the very least, there are genuine issues of material fact regarding ALE's indirect infringement.

**C.      The Chestnut Reference Does Not Invalidate the '439 Patent.**

ALE has failed to show that, viewing the factual record in the light most favorable to

Microsoft, no reasonable jury could find the '439 patent valid in light of the Chestnut reference. When viewing the facts in Microsoft's favor, there are genuine issues of material fact regarding Chestnut and the '439 patent.

> **1.  Chestnut does not disclose "a data structure contained within a computer network to store user-selectable criteria for call processing, wherein the data structure stores the user-selectable criteria in one or more lists that are used in filtering an incoming call"**

ALE fails to show where and how Chestnut discloses this limitation of the '439 patent. Rather ALE identifies a reference to a memory described in Chestnut – "telecommute server 2 selects the telephone number to which incoming calls should be forwarded based upon a record stored in a <u>memory</u> which associates a forwarding telephone number, such as the number for called party home phone 22, with a network logon device, such as a called party home workstation 26." [Ex. 36, Chestnut at col. 4:64–5:2 (emphasis added).] ALE ties this memory to "any set of preprogrammed rules" and argues that no reasonable jury could deny that this satisfies the data structure limitation in the '439 patent.

The flaws in ALE's position begin with the fact that there is no support for assertion that the "memory" is "contained within a computer network." [Beckmann Decl. at ¶¶ 35-36.] Chestnut does not disclose whether the telecommute server is on the computer network or telephone network. [Beckmann Decl. at ¶ 36.] For some of its arguments, ALE contends that the telecommute server is part of the telephone network (when claiming the telecommute server satisfies the "controller" limitation). For others, such as this limitation, ALE posits that the telecommute server is on the computer network. On which network the telecommute server resides, is a question of fact. Even if the telecommute server resides on both the computer and telephone networks, whether Chestnut discloses that this "memory" sits on the computer network portion or telephone network portion (or if this is disclosed at all) is yet another question of fact

for the jury.  [See, e.g., Beckmann Decl. at ¶ 36.]  Another disputed issue of fact is whether Chestnut discloses storing the user-selectable criteria in "lists."  Also disputed is whether Chestnut discloses storing the user-selectable criteria in "caller lists," as required by claim 21. The evidence suggests that the "lists" ALE cites in its motion are lists of potential forwarding numbers for the called party – essentially a directory of users and their work and home numbers – not lists of callers and routing rules associated with those callers.  [Ex. 36, Chestnut at col. 6:64–7:12, 7:47–55; Beckmann Decl. at ¶¶ 37-38.]

When all these questions are answered, viewing the facts in the light most favorable to Microsoft, a reasonable jury can undoubtedly find that Chestnut does not meet this claim limitation.

    **2.**  **Chestnut does not disclose "wherein some of the one or more lists are used to filter the incoming call according to current activity of subscribers on the computer network or according to current activity of the user on the computer network"**

 ALE also fails to show where and how Chestnut discloses this claim limitation.  For the reasons noted above, there is a genuine issue of material fact regarding whether Chestnut discloses "wherein some of the one or more lists are used to filter the incoming call."  There are also issues of fact regarding whether Chestnut discloses filtering the incoming call according to the current activity of the user on the computer network.  If anything, the evidence suggests that Chestnut does not.

Chestnut is directed to forwarding an incoming call, rather than filtering the incoming call according to the current activity of the user on the computer network. [Beckmann Decl. at ¶¶ 38-40.]  Moreover, Chestnut's call forwarding is based upon which device the called party used to log onto the computer network, rather than the current activity, or even general presence, of the user on the computer network.  [Id.]  The act

of logging on does not satisfy the "current <u>activity</u> on a computer network" limitation, because it is only a <u>precursor</u> to a user's activity on the computer network. [<u>Id.</u>] The claim language of the '439 makes this point clear by requiring that filtering depends on the "current activity on the computer network." [Ex. 35, '439 patent at col. 14:23–26.] Even ALE's own expert distinguishes between activity on a computer network and logging on to a computer network.[6] [Expert Report of Mr. Hyde-Thomson at ¶ 20.] At the very least, whether Chestnut discloses filtering an incoming call according to the current activity is a question of fact for the jury.

> **3.    Chestnut does not disclose "a computer network access port used by the telephone network to access the data structure such that the telephone network has access to the one or more lists over the computer network access port"**

ALE fails to prove that no reasonable jury could find for Microsoft on this issue. When viewing the evidence in the light most favorable to Microsoft, a reasonable jury would find that Chestnut does <u>not</u> satisfy this limitation. Thus, there is a genuine issue of material fact to be decided at trial.

In its motion, ALE spends a mere seven lines of text to make its entire argument. ALE just refers to vague "CTI applications" in Chestnut that it contends are the specific "computer network access port" claimed in the '439 patent. [ALE Br. 28.] ALE also claims that because the telecommute server is "connected" to a computer network and a public switched telephone network, that it must somehow contain a computer network access port with the specific functionality required by the '439 patent. [<u>Id.</u>] In other words, ALE's position that no

---

[6] The ITC's opinion effectively reads out the "current" requirement expressly claimed in the patent and explained in the '439 patent specification. Accordingly, the ITC's finding that having "logged on" to a computer network is "real-time" activity is incorrect. Having logged on to a computer network is simply not current activity on a computer network. At best, it is an action

reasonable jury could find the '439 patent valid rests entirely on vague references to CTI

applications and Figure 7 (below).



**Fig. 7 – Chestnut Patent Figure 1**

However, the facts suggest the contrary. Indeed, nothing in Figure 7, or the specification

of the Chestnut patent, teaches a computer network access port used by the telephone network to

access a data structure such that the telephone network has access to one or more lists of user-

selectable criteria over that computer network access port. [Beckmann Decl. at ¶ 41.] The CTI

applications mentioned in the Chestnut specification are not shown to be used by the

telephone network to access a data structure, much less a data structure storing the "one or

more lists . . . used to filter the incoming call." [Id.] ALE makes no effort to prove otherwise

and has failed to meet its burden for summary judgment. As a result, ALE has left an open

---

preceding activity on a computer network.

question of fact for the jury regarding whether Chestnut somehow discloses the computer network access port claimed in the '439 patent.

In addition, the ITC Opinion is not helpful to ALE. For both this element and the "controller" element, the ITC fails to show an express disclosure of the element claimed in the '439 patent. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The ITC reasons that because it finds the telecommute server to be on both the computer network and telephone network, that the computer network access port specifically claimed in the '439 patent must exist in Chestnut. [Id.] This simply cannot support a finding of an express disclosure. Rather, this is, at best, a finding that Chestnut inherently discloses a computer network access port – without adhering to the Federal Circuit's requirement of showing that the specific, claimed computer network access port must necessarily be present in Chestnut. See In re Robertson, 169 F.3d 743, 745 (Fed. Cir. 1999). "Inherency . . . may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient." Id. (quoting Continental Can Co. v. Monsanto Co., 948 F.2d 1264, 1268 (Fed. Cir. 1991)).

In sum, ALE fails to establish that Chestnut discloses this limitation, either expressly or inherently.

    **4.**    **Chestnut does not disclose "a controller to receive the incoming call designated for the user telephone and to process the incoming call in accordance with the user-selectable criteria, the controller accessing the user-selectable criteria in the one or more lists of the data structure via the computer network access port and thereby applying the user-selectable criteria to the incoming call"**

In the eight lines of text ALE spends on the matter, it fails to prove that Chestnut

discloses the controller claimed in the '439 patent. ALE's own expert is unable to state unambiguously which component disclosed in Chestnut is the controller. In his expert report, Mr. Hyde-Thomson argues first that the telecommute server is the controller, and then that the "private telephone switch" satisfies this limitation. [Expert Report of Mr. Hyde-Thomson at ¶ 205-215.] Therefore, even considering only ALE's expert's report, there is clearly a material question of fact.

ALE's argument in its motion that the telecommute server is the controller raises yet another question of fact – whether the telecommute server is on the telephone network or on the computer network. ALE itself offers contradicting arguments on the issue. ALE expressly assert that the telecommute server is "on the computer network" in the brief accompanying its Motion for Summary Judgment of Non-Infringement and Invalidity of All Asserted Claims of U.S. Patent No. 6,430,289. Simultaneously, ALE here claims that the same telecommute server of the Chestnut system satisfies the "controller" limitation of the '439 patent and is therefore on the telephone network. Review of the '439 patent claims demonstrates that the "controller" element is expressly on the <u>telephone network</u>. This apparent inconsistency—whether the telecommute server is on the computer network or the telephone network—would be sufficient grounds for a reasonable jury to conclude that the Chestnut reference did not disclose this limitation. If the telecommute server is on both the telephone network and computer network, there is a question of fact regarding whether Chestnut discloses a telephone network portion of the telecommute server and a computer network portion – and what components exists on which portion.

The facts show that Chestnut does not disclose a controller as claimed in the '439 patent and certainly that the telecommute server does not satisfy this limitation. The Chestnut telecommute server does not receive the incoming call or process the incoming call in

accordance with the user-selectable criteria. [Ex. 36, Chestnut at fig.1; Beckmann Decl. at ¶¶ 42-43.] Instead, Chestnut teaches that the PBX receives and forwards the incoming call. [Ex. 36, Chestnut at col. 4:48–57; Beckmann Decl. at ¶¶ 42-43.] Additionally, there is no disclosure that the telecommute server accesses the user-selectable criteria via the "computer network access port," which also has not been sufficiently identified. [Beckmann Decl. at ¶ 41.]

As with the previous element, the ITC Opinion does not help ALE. For example, the ITC relies on the same element in Chestnut – the telecommute server – for the "controller" disclosure. However, neither ALE nor the ITC are able to show where and how Chestnut discloses that the telecommute server processes the incoming call. Both ALE and ITC ignore the "connecting the call" aspect of processing the call – as described in the '439 patent specification. [Ex. 35, '439 patent at col. 9:24-32.] In Chestnut, there can be no dispute regarding whether the telecommute server connects the call. It does not. The PBX in Chestnut connects the call. [Ex. 36, Chestnut at col. 4:47-57.] Therefore, the telecommute server in Chestnut cannot be the "controller" claimed in the '439 patent. As with the other claim limitations, ALE's motion raises more questions of fact than it purports to answer.

5.     **Chestnut does not disclose a computer program product for implementing the claimed method of processing an incoming call**

For this element, too, ALE glosses over the facts and provides little more than conclusory statements. First, there are many issues of material fact regarding whether Chestnut discloses many of the steps and components taught in the '439 patent. These questions must carry over to whether Chestnut discloses a computer program product for implementing those steps. In fact a reasonable jury could find that Chestnut does not disclose this limitation. This limitation cannot be met by some general computer program product with a computer readable medium. [Beckmann Decl. at ¶ 44.] Rather, it requires a computer program product, comprising a

computer readable medium, that performs the specific steps recited in the relevant claims.  [Id.] ALE presented no such disclosure in Chestnut, either in Mr. Hyde-Thomson's report or during his testimony at the ITC (ALE cites to no other "facts" in its motion).  At the very least, ALE has identified yet another genuine issue of material fact to be decided at trial.

Indeed, for virtually every element ALE addressed, ALE failed to provide the required supporting testimony or evidence.  The Federal Circuit has stated that explanatory expert testimony is required when presenting an allegedly anticipatory reference, noting an exception for cases in which the reference and patent-at-issue cover "simple" matters, unlike the present case.  Koito Mfg. Co. v. Turn-Key-Tech, LLC, 381 F.3d 1142, 1152 n.4 (Fed. Cir. 2004).  As the Federal Circuit explained, this explanatory testimony must "explain in detail how each claim element is disclosed in the prior art reference.  The testimony is insufficient if it is merely conclusory."  Id. at 1152 (emphasis added).  ALE does not meet this burden.  As noted above, for its invalidity position, ALE offers nothing more than conclusory statements from Mr. Hyde-Thomson and unexplained citations to Chestnut in support of its motion.  This simply does not meet the Federal Circuit's evidence standard required to show anticipation.  Accordingly, ALE has not established that a reasonable jury must find the '439 patent invalid in light of Chestnut.

## VI.    CONCLUSION

ALE's motion for summary judgment is unsupported by the language of the '439 patent, the proper construction of the claims, or the facts of the case.  When the facts are viewed in the light most favorable to Microsoft, a reasonable jury could conclude that the OXE and OXO systems infringe the asserted claims of the '439.  Additionally, a reasonable jury could find that the Chestnut patent does not invalidate the '439 patent.  Accordingly, ALE's motion should be denied.

Dated: June 20, 2008

Respectfully submitted,

**FISH & RICHARDSON P.C.**


/s/ *Thomas L. Halkowski*
Thomas L. Halkowski (#4099)
Raymond N. Scott, Jr. (#4949)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607
halkowski@fr.com
John E. Gartman
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099
gartman@fr.com

Ruffin B. Cordell
Linda Liu Kordziel
Indranil Mukerji
William Sekyi
Kfir Levy
Kori Anne Bagrowski
Robert Courtney
1425 K Street NW, 11th Floor
Washington, D.C. 20005
Tel: (202) 783-5070
Fax: (202) 783-2331
cordell@fr.com
kordziel@fr.com
mukerji@fr.com
sekyi@fr.com
kylevy@fr.com
bagrowski@fr.com
courtney@fr.com

**ATTORNEYS FOR PLAINTIFF
MICROSOFT CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2008, I electronically filed with the Clerk of Court the attached **PUBLIC VERSION –MICROSOFT CORP.'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT AND INVALIDITY FOR ALL ASSERTED CLAIMS OF U.S. PATENT NO. 6,421,439**, using CM/ECF which will send notification of such filing to the following individuals:

Jack B. Blumenfeld - jblumenfeld@mnat.com
Maryellen Noreika - mnoreika@mnat.com
Richard J. Bauer - rbauer@mnat.com
MORRIS, NICHOLS, ARSHT & TUNNEL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
*(Also served via hand delivery)*

Steven C. Cherny - steven.cherny@lw.com
Karen Y. Tu - karen.tu@lw.com
Clement J. Naples - clement.naples@lw.com
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022

David A. Nelson - david.nelson@lw.com
Alan Devlin - alan.devlin@lw.com
Brett M. Doran - brett.doran@lw.com
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606

Michael J. Schallop - michael.schallop@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025

Susan S. Azad - susan.azad@lw.com
LATHAM & WATKINS LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071

/s/ *Thomas L. Halkowski*
Thomas L. Halkowski
halkowski@fr.com