# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MICROSOFT CORPORATION,
     Plaintiff,

v.

ALCATEL-LUCENT ENTERPRISE
and
GENESYS TELECOMMUNICATIONS
LABORATORIES, INC.,
     Defendants.

C.A. No. 07-090-SLR

**PUBLIC VERSION**

**MICROSOFT CORP.'S OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY
FOR ALL ASSERTED CLAIMS OF U.S. PATENT NO. 6,430,289**

**FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
Raymond N. Scott, Jr. (#4949)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607
John E. Gartman
12390 El Camino Real
San Diego, CA 92130

Ruffin B. Cordell
Linda Liu Kordziel
Indranil Mukerji
William Sekyi
Kfir Levy
Kori Anne Bagrowski
Robert Courtney
1425 K Street NW, Suite 1100
Washington, D.C. 20005

**ATTORNEYS FOR PLAINTIFF
MICROSOFT CORPORATION**

REDACTED DATE: June 27, 2008
ORIGINAL DATE: June 20, 2008

**TABLE OF CONTENTS**

I.     NATURE AND STAGE OF THE PROCEEDINGS ........................................ 1

II.    SUMMARY OF THE ARGUMENT ............................................................ 1

III.   STATEMENT OF FACTS ........................................................................... 3

     A.     Overview of the '289 Patent ........................................................... 3

     B.     The Accused ALE OXE System ..................................................... 3

     C.     The Accused ALE OXO System ..................................................... 7

     D.     The Accused Genesys System ......................................................... 8

IV.    APPLICABLE LEGAL STANDARDS FOR SUMMARY JUDGMENT ...................... 12

V.     ARGUMENT .......................................................................................... 12

     A.     Summary Judgment is Inappropriate Concerning ALE's
          Infringement ................................................................................... 12

          1.     The Accused ALE Systems Meet the Limitation
               "Monitoring Activity of a User Computer" Under
               Either Party's Construction ................................................. 12

          2.     The Accused ALE Systems Meet the Limitation
               "receiving information from the telephone
               network . . ." .................................................................... 22

          3.     The Accused ALE Systems Meet the Limitations
               "determine when the second party is available to
               take the call originated by the first party" ........................... 25

          4.     The Accused ALE Systems Meet the Limitation "to
               facilitate connecting the call . . ." ..................................... 29

     B.     Summary Judgment is Inappropriate Concerning ALE's
          Indirect Infringement of the '289 Patent .......................................... 30

     C.     Summary Judgment is Inappropriate Concerning Genesys's
          Infringement ................................................................................... 30

          1.     The Accused Genesys Systems Meet the Limitation
               "monitoring activity of a user's computer" ......................... 30

    2. The Accused Genesys Systems Meet the Limitation "receiving information from the telephone network . . ."............................................................36

    3. Summary Judgment is Inappropriate Regarding Genesys's Indirect Infringement................................37

  D. The Chestnut Reference Does Not Invalidate the '289 Patent.............................................................. 37

    1. Chestnut does not disclose "at the computer network, receiving information from the telephone network that a first party from whom a call is originating desires to establish telephone communication with a second party."......................38

    2. Chestnut does not disclose "at the computer network, monitoring activity of a user computer connected to the computer network and associated with the second party." ...................................38

    3. Chestnut does not disclose "at the computer network, storing a set of predetermined rules for determining when the second party is available to take a call from the first party." ...............................39

    4. Chestnut does not disclose "at the computer network, using the set of predetermined rules . . . to determine when the second party is available . . . ."...................................40

    5. Chestnut does not disclose the "computer program product" required by claims 7, 8, and 10. .................................40

VI. CONCLUSION............................................................ 40

# TABLE OF AUTHORITIES

**Cases**

Amgen Inc. v. Hoechst Marion Roussel, Inc.,
    314 F.3d 1313 (Fed. Cir. 2003) ................................................................. 19

Johnson Worldwide Assocs., Inc. v. Zebco Corp.
    175 F.3d 985 (Fed. Cir. 1999) ................................................................. 23

McCarty v. Lehigh Valley R.R. Co.
    160 U.S. 110 (1895) ................................................................. 22

Nike Inc. v. Wolverine World Wide, Inc.,
    43 F.3d 644 (Fed. Cir. 1994) ................................................................. 26

NTP, Inc. v. Research in Motion, Ltd.
    418 F.3d 1282 (Fed. Cir. 2005) ................................................................. 23

Phillips v. AWH Corp.
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................................................. 19, 22

Renishaw PLC v. Marposs Societa' per Azioni
    158 F.3d 1243 (Fed. Cir. 1998) ................................................................. 23

Teleflex, Inc. v. Ficosa N. Am. Corp.,
    299 F.3d 1313 (Fed. Cir. 2002) ................................................................. 18

Texas Instruments v. Cypress Semiconductor Corp.
    90 F.3d 1558 (Fed. Cir. 1996) ................................................................. 1

Ventana Med. Sys., Inc. v. BioGenex Labs., Inc.
    473 F.3d 1173 (Fed. Cir. 2006) ................................................................. 23

**Statutes**

Certain Unified Comm'cns Sys.
    Inv. No. 337-TA-598, 2008 WL 317757 (USITC Jan. 28, 2008) (final initial and
    recommended determination) ................................................................. 1

**Other Authorities**

35 U.S.C. § 102 (2000) ................................................................. 38

**Rules**

Fed. R. Civ. P. 56 ................................................................. 33

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This case is a companion to an investigation of the U.S. International Trade Commission ("ITC")[1] against Alcatel-Lucent Enterprise ("ALE") for infringement of four Microsoft patents—U.S. Patent Nos. 6,421,439; 6,430,289; 6,263,064; and 6,728,357. [Compl., D.I. 1.] Genesys Telecommunications Laboratories, Inc. ("Genesys") was added to the litigation on May 30, 2007. [Am. Compl., D.I. 15.] On May 9, 2008, ALE and Genesys filed a Motion for Summary Judgment of Non-infringement and Invalidity of U.S. Patent No. 6,430,289. [D.I. 154.] Plaintiff Microsoft Corporation ("Microsoft") files this brief in opposition to Defendants' motion. For the reasons discussed below, there are genuine issues of material fact, and Defendants are not entitled to judgment as a matter of law.

## II.    SUMMARY OF THE ARGUMENT

Both ALE and Genesys's primary non-infringement argument rests on the premise that monitoring computers running software is not monitoring "computer activity."

In ALE's case, its contention is that monitoring a computer using a "softphone" (i.e., a software phone) is not monitoring computer activity. This is contrary to the testimony of its own technical witnesses and expert, as well as ample documentary evidence, that a softphone is like any other computer program—when handling a call, it utilizes computer resources (hence, "activity of a user computer").

---

[1] On Jan. 28, 2008, Judge Luckern of the ITC found claims 1 and 7 of U.S. Patent No. 6,430,289 valid over the asserted prior art, but not infringed by ALE. Certain Unified Comm'cns Sys., Inv. No. 337-TA-598, 2008 WL 317757 (USITC Jan. 28, 2008) (final initial and recommended determination). Judge Luckern's findings regarding the '289 patent were not disturbed by the ITC. The ITC's decision is not binding on this Court and does not address all the claims asserted in this case. See Texas Instruments v. Cypress Semiconductor Corp., 90 F.3d 1558, 1570 (Fed. Cir. 1996).

In Genesys's case, its contention is that knowing (i) an event (such as an e-mail or chat) has been directed to a computer for handling, (ii) the identity of the computer, (iii) the start time of the event in real-time, (iv) the end time of the event in real-time, (v) how many other events the computer is handling at the same time in real-time; and (vi) knowing the maximum number of events the computer should be handling, **all does not amount to monitoring that computer's activity**. Indeed, Genesys starts from the implausible notion that a computer handling an e-mail or chat is not exhibiting "computer activity" at all. Needless to say, Microsoft disputes Genesys's assertions with substantial factual evidence. Since a reasonable jury could find Genesys to have infringed the '289 patent, summary judgment of non-infringement is not appropriate here.

Beyond this, Defendants' other non-infringement arguments are just as easily disposed:

- The evidence does not support Defendants' position that the claims of the '289 patent are limited to systems in which a "desire to communicate" is somehow detected before a telephone call is ever placed. The '289 specification specifically discloses systems in which the "desire to communicate" is signaled by a telephone call.

- The evidence does not support Defendants' position that the '289 patent requires that the user must be "available" to take a call. Defendants contend without support that, in a system where "activity of a user computer" is the activity associated with processing a softphone call, a user on such a call can never be "available." Defendants' attempt to bootstrap a noninfringement position by distorting the claims' plain meaning should fail.

Defendants' motion for summary judgment of invalidity of the '289 patent based on the Chestnut patent is equally unavailing. Setting aside the many factual disputes regarding the technical content of the Chestnut patent, as an initial matter Defendants fail to carry their heavy burden on invalidity by failing to identify where many of the required elements of the '289 patent are disclosed in the Chestnut patent. As the Court is aware, every element must be disclosed in order for a finding of invalidity by anticipation. On the substance of Chestnut, a reasonable jury would find Chestnut's disclosure to be inadequate in describing many of the

limitations required by the '289 patent claims. Either deficiency is enough to foreclose summary judgment on invalidity.

In view of the genuine issues of material fact relating to infringement and validity, Defendants are not entitled to judgment as a matter of law, and their motion should be denied.

## III.    STATEMENT OF FACTS[2]

### A.    Overview of the '289 Patent

1.      U.S. Patent No. 6,430,289 (filed Apr. 13, 1999) ("the '289 patent") leverages the advantages of computer technology to process telephone calls. [Ex. 34, '289 patent.][3] Entitled "System and Method for Computerized Status Monitor and Use in a Telephone Network," the '289 patent is directed to determining whether a user is available for a call by monitoring the activity of his computer.

### B.    The Accused ALE OXE System



---

[2] Defendants neglected to include a concise statement of facts with their motion, as required by LR 7.1.3(c). Had Defendants done so, the many fact questions which preclude summary judgment would have been apparent. Microsoft offers this statement of facts to inform the Court and to respond to Defendants' positions on the factual record, insofar as Microsoft understands those positions.

[3] All exhibits referenced as "Ex. ___" are exhibits to the accompanying Declaration of Raymond Scott, dated June 20, 2008, submitted herewith.

3.    A "softphone"▬ ████████████████████████████████████

████████████████▬is a computer application that allows a user to make telephone calls

using his personal computer, rather than a conventional telephone handset. ████████████

████████████████████████    Softphone applications, like other computer applications,

utilize computer resources to process computer input—e.g., the user's voice, spoken into a

computer microphone; mouse movements or keyboard input to dial a telephone number—into

digital data packets. ██████████████████████    Beckmann Decl. ¶ 14.] ████

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

Defendants' statement that "[a] soft phone is a telephone which uses computer apparatus as the

speaker and dialer instead of a regular telephone" is incomplete.  [See Br. 2 n.2.]  A softphone is

a telephone that is also a computer application: it uses the computer's CPU, memory, hard drive,

network card, and operating system resources just like any other computer application.  [See ████

███████████████████████████████████████████████████████

see also Beckmann Decl. ¶ 14.]

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████







## C.    The Accused ALE OXO System





**D.     The Accused Genesys System**











IV.    **APPLICABLE LEGAL STANDARDS FOR SUMMARY JUDGMENT**

This Court is already familiar with the legal standards concerning summary judgment, infringement, and validity.  These standards are also laid out in Microsoft's brief, filed contemporaneously, opposing summary judgment of invalidity and noninfringement of U.S. Patent Nos. 6,263,064 and 6,728,357, the relevant sections of which are hereby incorporated by reference.  [MS Opp. Defs. '064/'357 MSJ, D.I. __, at 15.]

V.    **ARGUMENT**

A.    **Summary Judgment is Inappropriate Concerning ALE's Infringement**

ALE fails, on both legal and factual grounds, to prove that no reasonable jury could find the accused ALE systems to infringe the '289 patent.

1.    **The Accused ALE Systems Meet the Limitation "Monitoring Activity of a User Computer" Under Either Party's Construction**

In its motion, ALE tries to support its noninfringement theory by selectively quoting from its own witness' testimony and mischaracterizing infringing features in its own products.  The facts, however, do not support ALE's position.  ALE claims that the "monitoring activity of a user computer" element of the '289 patent is not met by a system monitoring a softphone running on a computer.  But neither Defendants' brief nor Mr. Hyde-Thomson's declaration lays out any logical or legal support for this premise beyond blunt assertion by Defendants and their expert.

**(a)    ALE's Mischaracterization of Softphone Activity Should Be Rejected**

ALE's noninfringement theory is based on its argument that softphone activity cannot constitute computer activity.  Defendants take the position that a softphone—███████████ ███████████████████████████████—is merely a telephone "which uses computer apparatus as the speaker and dialer instead of a regular telephone."  [Br. 2 n.2.] They provide no citation for this position, and make no effort to address Microsoft's position that My Softphone and My Phone are not just telephones, but computer applications that require computer resources to handle a telephone call.

ALE fails to acknowledge the overwhelming evidence that a softphone is a computer application running on a computer and thus, constitutes computer activity.  The evidence— ██████████████████████████████████████—establishes that the accused products can route incoming calls when the user's computer is running a softphone application during a VoIP communication. ███████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

It is virtually beyond dispute that a softphone is a computer application running on a computer. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

13





The ALE softphones are software applications with a graphical user interface shown in a software window. Both software applications engage the user in a form of interactivity, anticipate and respond to the user's keyboard or mouse inputs, and communicate with a particular server by processing and transmitting digitized and packetized information.



Hence, in operation, the softphone software applications are like any other software programs.

All this evidence commands a simple conclusion—a softphone is a computer program, and softphone activity is computer activity.  In the current case, this conclusion applies no matter which of the parties' proposed constructions for the term "activity of a user computer" is applied.

**(b)　　Activity on a computer running a softphone software program satisfies the "activity of a user computer" limitation under either party's construction**

The monitored "activity" here—being on a VoIP call using a softphone—satisfies the claim term "activity of a user computer" under either party's construction of this limitation. [Beckmann Decl. ¶¶ 18–19.] Under the plain meaning of "activity" or Microsoft's construction of "activity" as "status," a computer on which the user is running his softphone software application would be in a "busy" state when engaged in a VoIP call

Under ALE's construction of "activity" as "active or idle," a computer would be in an "active" state when engaged in a VoIP call.



At the very least, there are genuine issues of material fact, and ALE cannot meet its burden of showing that no reasonable jury could find for Microsoft on this issue.

a computer handling a softphone call is busy capturing the user's voice, compressing the voice information using various standard codecs,

digitizing the voice into digital data, packetizing the digitized and compressed voice information into digital data packets, transmitting the packets over the network to their destination, and sending various control information necessary to sustain the VoIP call.  [Beckmann Decl. ¶ 14; ████████████████████████████████████████ At the same time, the computer also receives incoming digital data packets, and must reverse the digitizing and compression process to render analog voice over its speakers.  [Beckmann Decl. ¶ 14; ███████ ██████████████████████████████████████ The plain meaning of "activity of a user computer" comprises exactly these functions; indeed, it is difficult to imagine what "activity of a user computer" could mean if it did <u>not</u> refer to these software routines and their processing tasks.



In sum, a computer executing an ALE softphone during a VoIP communication satisfies the "activity of the user computer" requirement for the '289 patent.

**(c)    ALE's Arguments Lack Merit**

Given this fact, ALE relies on semantics, arguing that the monitored activity of the softphones in the ALE systems ███████████████████ is not computer activity, despite the extensive evidence to the contrary. [Br. 7.]

First, ALE erroneously compares the accused systems to a single disclosed embodiment in the '289 patent. ALE's noninfringement position is based on a contention that the OXE system does not route incoming calls based on the activity of a screen saver as discussed in the specification. [Br. 8.] But such comparison's improper framing—infringement is determined by comparing the accused product to the claims, not the specification—leads to errors throughout. "Specific examples" discussed in a patent specification are not the touchstone for claim interpretation—the claims themselves are. Phillips v. AWH Corp., 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) (cautioning courts to focus on "understanding how a person of ordinary skill in the art would understand the claim terms," and not to "confin[e] the claims to [disclosed] embodiments"); see also Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1346–47 (Fed. Cir. 2003) (vacating noninfringement finding where the district court compared the accused products to the preferred embodiment, because the district "court eschewed the cardinal principle that the accused device must be compared to the claims rather than to a preferred or commercial embodiment").

Even more, simply showing that a computer screen saver can indicate an "idle" state does not foreclose other indicators—e.g., a softphone waiting for a call—of "idle"-ness. Nor does it foreclose using a softphone's handling of a call to represent "active"-ness. Using such indicators

19

to determine whether a computer is "active" and "idle" would satisfy Defendants' proposed construction of "monitoring activity of a user computer."

Second, ALE's attempt to point to its witnesses' ITC testimony as supporting its noninfringement position is unavailing. [See Br. 8–9.]



Finally, Defendants assert that "the on-hook or off-hook state of the soft phone is not the monitored status of the user computer; it is the state of the user's telephone on the telephone network." [Br. 9.] This argument ignores the obvious fact that a softphone is a computer application that is also a telephone. [See Beckmann Decl. ¶ 14.] Defendants offer no argument or evidentiary support for why the state of a softphone cannot also be "computer status" (or, more properly, "activity of a user computer"). Certainly nothing in the '289 claims indicates such a limitation.



Defendants' failure to resolve this inconsistency undercuts their motion for summary judgment due to the obvious presence of a fact question.



Such inconsistency in his testimony undercuts Defendants' motion for summary judgment because there are genuine issues of material fact, as well as credibility issues.

### 2. The Accused ALE Systems Meet the Limitation "receiving information from the telephone network . . ."

#### (a) Nothing in the asserted claims requires receiving information about a desire to communicate before any telephone call is placed.

This limitation requires "receiving information from the telephone network that a first party from whom a call is originating desires to establish telephone communication with a second party." [Ex. 34, '289 patent col.18:44–47.] Nothing in the language of the claim or the '289 specification indicates that the information must be received before any telephone call is placed. And it is black-letter law that limitations read into the claims must have a basis in the claims. Despite having both the law of claim construction and the text of the claims against them, Defendants' present brief and their opening Markman brief each argue for such a limitation. [See Br. 10–12; Defs. C.C. Br., D.I. 162, at 20–23.] Microsoft has already addressed most of the defects in Defendants' argument in its opening claim construction brief, which is hereby incorporated by reference. [See MS C.C. Br., D.I. 161, at 21–23.]

Claim limitations must come from the claims themselves—not from a selective reading of the specification. Phillips, 415 F.3d at 1323. Nothing in the asserted claims of the '289 patent indicates that the computer network must receive information about an incoming call before the call is even made. Neither the words "prior to the call being placed," nor any words of even approximate meaning, appear in the asserted claims. [See Ex. 34, '289 patent, col.18:35–19:60.] Lacking support in the claims, Defendants cannot identify a single legal precedent for the wholesale importation of limitations they propose, while the weight of contrary authority is compelling. See, e.g., McCarty v. Lehigh Valley R.R. Co., 160 U.S. 110, 116 (1895) ("[If] we once begin to include elements not mentioned in the claim in order to limit such claim . . . we should never know where to stop."); NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1310

22

(Fed. Cir. 2005) ("Our case law requires a textual 'hook' in the claim language for a limitation of this nature to be imposed."); Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1248 (Fed. Cir. 1998); Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 990 (Fed. Cir. 1999).

Though lacking both legal authority and any support in the claims, Defendants allege that certain lines from the specification describe an embodiment meeting the requirements of their proposed construction. [Br. 11–12.] But not even Defendants' cited matter supports their proposal, and even if it did, the specification is replete with alternative embodiments that explicitly do not.

Defendants make much of a statement in the "BACKGROUND OF THE INVENTION" in which the patentee noted that, in prior art systems, "[t]he caller has no choice but to place a call to the destination telephone and hope that the callee answers." [Ex. 34, '289 patent col.1:33–35; see also Br. 11; Def. C.C. Br., D.I. 162, at 21.] But the law is clear that during claim construction, statements in the "BACKGROUND OF THE INVENTION" section of a patent concerning prior art systems are not necessarily limiting on the claims. Ventana Med. Sys., Inc. v. BioGenex Labs., Inc., 473 F.3d 1173, 1180 (Fed. Cir. 2006). The claims need not read out every feature of the prior art. Id.

Defendants also point to discussion in the specification of a "mechanism for the caller to indicate to the system that he or she desires to set up a call with another party at a [future?] time when both parties are available." [Br. 11 (citing '289 patent, col.16:23–17:41).] But even in the cited disclosure, the caller "indicates a desire to telephone communication link with the callee" when he "picks up the originating telephone and dials the telephone number for the destination telephone." [Ex. 34, '289 patent, col.16:23–28.] Thus, the '289 specification teaches that the

desire for communication is expressed by a telephone call. The specification also teaches other

embodiments in which information about desired communication is expressly received by means

of a telephone call. [See, e.g., Ex. 34, '289 patent col.5:7–14 ("To place a call, the caller

activates the originating telephone 102 to dial the telephone number."), col.12:38–50 (identifying

the first step of the invention as "At a start 200, the calling party has placed a call from the

originating telephone."); fig.8 (identifying the first step in call processing as "receiving call data

from originating telephone.").]

With the law, the claims, and the specification all against them, Defendants' proposal to

add unsupported limitations to this claim term should fail.

        **(b)**      **A reasonable jury could find that the "receiving information from the telephone network . . ." limitation in the Accused ALE Systems.**





### 3.    The Accused ALE Systems Meet the Limitations "determine when the second party is available to take the call originated by the first party"

### (a)    A party's "availability" is determined by processing the monitored activity of a user computer and information about the incoming call, in light of the pre-determined rules.

The claimed system determines if a user is "available" to take a call as follows:

at the computer network, using the set of a pre-determined rules to process i) the information received from the telephone network regarding the call being originated by the first party, and ii) information regarding the monitored activity of the user computer of the second party, to determine when the second party is available to take the call originated by the first party;

[Ex. 34, '289 patent, col.18:55–61.]  The monitored activity of the user computer is only one

consideration in determining availability—the patent expressly describes that a user may be

"available" for some calls, and "unavailable" for others, based on certain conditions.  [See, e.g.,

id. col.9:52–62 (describing a user who is not "available" for calls, except for calls from his boss, etc.).]

Defendants mischaracterize the patent when they write that "being occupied on a soft phone call . . . . could never be used to determine that a called party is available to take a call since the caller would always be busy on another phone call." [Br. 12.] This is contrary to the direct teachings of the patent, which indicate that "availability" is a separate concept from the monitored activity of a user computer. [See, e.g., Ex. 34, '289 patent col.9:52–62, col.14:58–61.] The claimed system provides finer-grained control over "availability" than just pegging it to computer activity. ALE's argument modifies the meaning of the claim by requiring that the second party must be available, while the claim merely provides for a determination of whether or not the second party is available. Such unsupported limitations should be rejected. Nike Inc. v. Wolverine World Wide, Inc., 43 F.3d 644, 647 (Fed. Cir. 1994) (agreeing with district court's refusal to adopt unsupported claim construction, because a party "cannot, in effect, rewrite its patent claims to suit its needs in this litigation").

ALE's argument also reads out certain embodiments of the '289 patent. [See, e.g., Ex. 34, '289 patent col.9:3–13 (describing embodiment using "block lists" to render a caller unavailable for certain calls), col.16:23–36 (describing embodiment in which a caller uses lists to monitor the availability/non-availability of other users). Both embodiments contemplate that a caller may never connect with a called party, though the call may be "connected" to another location, such as to voicemail. [Id. col.9:3–13, col.16:23–36.] ALE's proposed arguments are therefore unsupportable. See SanDisk Corp. v. Memorex Prods., Inc., 415 F.3d 1278, 1285 (Fed. Cir. 2005) (vacating erroneous claim construction because "[a] claim construction that excludes

a preferred embodiment, moreover, 'is rarely, if ever, correct.'") (quoting <u>Vitronics Corp. v.</u>

<u>Conceptronic, Inc.</u>, 90 F.3d 1576, 1583 (Fed. Cir. 1996)).

**(b)** **A reasonable jury could find the "using the set of pre-determined rules . . . to determine when the second party is available to take the call originated by the first party" in the Accused ALE Systems.**





In sum, ALE's improper reading of these two limitations in the '289 patent is inconsistent with the intrinsic evidence and the understanding of a skilled artisan. But even under this incorrect construction of these limitations, the OXE system still meets the requirements of the asserted claims of the '289 patent. At the very least, there are genuine issues of material fact.

Defendants never argue that the OXO system does not meet this limitation; without any factual discussion its impossible for them to prove that no reasonable jury could find infringement. [See Beckmann Decl. ¶ 29 (discussing why OXO meets this limitation).]

4.      **The Accused ALE Systems Meet the Limitation "to facilitate connecting the call . . ."**

Viewing the record in the light most favorable to Microsoft, a reasonable jury could find that the Accused ALE Systems practice this limitation.

(a)      **Defendants' Proposed Construction Is Improper**

Defendants contend that a scenario where a user is busy on his softphone "never results in connecting the call to the second party because the second party is always busy." [Br. 13.] But the claims do not require "connecting the call"—only facilitating such a connection. [Ex. 34, '289 patent col.118:62–65.] When a user is busy on his softphone, and incoming calls routed to voicemail or to another user, the system is still "facilitating" a connection. [Beckmann Decl. ¶ 22.] But the claims specifically identify that the call is connected to the second party, not to any particular device that the second party may be using. [Ex. 34, '289 patent col.18:62–65.] Thus, a call from an important caller, such as the user's boss, could be directed to the second party's mobile phone, traditional phone, or an alternate location. [Beckmann Decl. ¶ 17.] Such routing would connect the call to the second party, though it would do so using a different device.

(b)      **A factual question exists as to the accused systems' ability to connect certain calls to a user who is already on a call using a softphone.**

Defendants appear to take the position that it is impossible for the accused systems to route a call to a user who is already handling a call using a softphone. [See Br. 13 ("Microsoft's expert relies on a scenario which never results in connecting the call to the second party because the second party is always busy ████████████████. Thus, the accused systems do not 'facilitate connecting the call' . . . .") (emphasis added).] Defendants' argument is similar to their argument that the '289 patent requires that the second party must be available. For the same reasons discussed above in Section V.A.3, a reasonable jury could find that the OXE and

OXO systems facilitate connecting a call to the second party, under either Microsoft's or Defendants' proposed construction.  [Beckmann Decl. ¶¶ 23, 30.]

**B.    Summary Judgment is Inappropriate Concerning ALE's Indirect Infringement of the '289 Patent.**

As set forth in detail in Microsoft's opposition regarding the '439 patent, Microsoft has pointed to evidence showing that the accused ALE Systems do not have substantial non-infringing uses, that ALE induced infringement, and that ALE or its customers have performed the steps of the method claims.  [See MS Opp. Defs. '439 MSJ, D.I. __, at 28–32.]  At the very least, there are genuine issues of fact regarding whether ALE indirectly infringes the '289 patent.

**C.    Summary Judgment is Inappropriate Concerning Genesys's Infringement**

Defendants' motion fails, on both legal and factual grounds, to prove that no reasonable jury could find the Accused Genesys System to infringe the '289 patent.

**1.    The Accused Genesys Systems Meet the Limitation "monitoring activity of a user's computer"**

Viewing the record in the light most favorable to Microsoft, a reasonable jury could find that the Accused Genesys System practices this limitation.

**(a)    "Monitoring activity of a user computer" includes monitoring the activity of programs handling chat and/or email interactions.**

As they did for the Accused ALE Systems, Defendants again present the unsupportable argument that "monitoring activity of a user computer" somehow excludes monitoring the activity of a program devoted to handling a chat or email session.

Like a softphone, an email or chat program is a computer program.  [Beckmann Decl. ¶ 34.]  In order to handle a chat or email session, such programs consume operating system, CPU, hard drive, and network resources.  [Id.;                                              For example, a program handling a

chat session must receive digital data packets over the computer network containing session-building information, as well as the chat content itself.  It must process those packets into a format such that the content of the chat session can be presented to the user.  In a windowed operating system (e.g., Microsoft Windows®), the computer must open a window (or take control of an already-opened window), and present information concerning the chat to the user.  And the computer must receive keyboard input from the user, translate such input into transmissible data packets, and send them out over the network for receipt by the other party.  Like a softphone, an email or chat program each requires computer resources.  [Beckmann Decl. ¶ 34.]

Genesys takes the position that tracking "that an agent has been assigned a chat or an email" is not the same as "monitor[ing] whether the agent is actually engaged in the activity indicated by the assigned state."  [Br. 19.] ███████████████████████████████ ████████████████████████████████████████████████This misconceives the requirements of the claim.  The '289 claims do not require that the activity of the user be monitored, but that of the user computer.  [Ex. 34, '289 patent, col.18:48–50; cf. Ex. 14, Forys Dep. Tr. 245:9–23.]  Tracking whether an agent's computer is handling an email or chat session is well within the plain meaning of that term.  Whether the agent is actually paying attention to the chat/email is unimportant if the computer is occupied with the chat/email session.

Even if the claim did require monitoring both the activity of the computer and that of the agent, it would still be satisfied by tracking whether an agent has been assigned a chat or email.  Given the existence of a statistic showing that an agent has been assigned a chat or email, Defendants have failed to provide any meaningful reason why such a statistic could not be a reliable indicator that the agent is actually chatting/emailing (i.e., he is actually typing, or reading text presented on the screen).  [Br. 19.]  Instead, they resort to odd examples, such as an agent

abandoning an active chat to use the bathroom.



Defendants go on to contend that "for purposes of the '289 Patent, accepting and ending a chat (changing 'chat status') is no different from logging on or off a computer network (changing log on status)." [Br. 19.] They offer this as part of an argument that monitoring whether a chat program is active will not satisfy the "monitoring activity of a user computer" requirement. [Id.] But Defendants cite no part of the specification or the claims for their proposed equation of "logging in" with "participating in a chat," or to any source at all. The words "logging in" appear nowhere in the '289 patent's claims, and the '289 patent never discusses "logging in."

Moreover, Defendants apparently misunderstand the differing purposes of "logging on" to a network, and participating in an activity <u>on</u> said network. Logging on to a network is a precursor to engaging in any communications on the network. The log on process is used to determine whether the user is authorized to participate in the network and lays the groundwork for the user's computer to engage in activities concerning the network. [Beckmann Decl. ¶ 42.] By contrast, participating in chat or email sessions are <u>specific activities of a user computer</u>. Logging in is a precursor to such activities—not a synonym. Defendants' analogy fails.

       **(b)**     **A factual question exists as to whether the Genesys system automatically monitors when a chat session is begun or ended.**





    (c)       A factual question exists as to whether the handling of a chat or email session in the Genesys system necessarily requires computer processing activity.





> **(d)** **A reasonable jury could find the "monitoring activity of a user computer" limitation in the Accused Genesys System.**

Microsoft has proposed that this term requires no explicit construction; to the extent one is required, Microsoft has proposed "monitoring the status of a user computer." Under either approach, a reasonable jury could find that the Accused Genesys System meets the limitation.



Even under Defendants' proposed construction of the term, "determining whether the agent's computer is active or idle," a reasonable jury could conclude that the Accused Genesys System meets that limitation. As already stated, a chat or email program that is processing a chat or email is engaged in more processing activity than one that is not.



## 2. The Accused Genesys Systems Meet the Limitation "receiving information from the telephone network . . ."

As they did in discussing the accused ALE Systems, Defendants put forward the unsupported position that the claims of the '289 patent require that a system receive information about a desire to communicate <u>before any telephone call is placed.</u> As discussed <u>supra</u> at V.A.2(a), such an argument has support in neither the claims, the specification, or the law.

Defendants' entire argument that the Accused Genesys System does not fulfill this limitation under Microsoft's construction consists of the words "As discussed above with respect to the accused ALE products, such functionality does not meet even Microsoft's construction of this limitation." [Br. 22.] Because Defendants make no effort to lay out a <u>single fact</u> concerning how the Accused Genesys System works, or why no reasonable jury could find infringement under Microsoft's construction, their motion fails.

A reasonable jury could find that the Accused Genesys System practices this limitation, at least under the claim construction put forward by Microsoft. [Beckmann Decl. ¶ 37.]

### 3.    Summary Judgment is Inappropriate Regarding Genesys's Indirect Infringement

Defendants have failed to show that no reasonable jury could find them indirect infringers.  First, Defendants assert that Microsoft cannot show that the accused Genesys Systems do not have substantial noninfringing uses.  This is incorrect.



In that light, a reasonable jury could find the accused Genesys system lacking substantial noninfringing uses.

Second, Defendants assert that, with respect to method claims 1 and 3, "Microsoft has offered no evidence that any person in the United States has ever performed the steps required by these claims."  [Br. 14.]  This is also incorrect.



### D.    The Chestnut Reference Does Not Invalidate the '289 Patent.

Defendants have failed to prove that, viewing all facts in the light most favorable to Microsoft, no reasonable jury could find the asserted claims valid over Chestnut.

1.  **Chestnut does not disclose "at the computer network, receiving information from the telephone network that a first party from whom a call is originating desires to establish telephone communication with a second party."**

A reasonable jury could find that Chestnut fails to disclose this limitation under either party's construction of this phrase, at least for the simple reason that <u>Defendants never argue that Chestnut discloses this element.</u>

A party seeking to invalidate a patent under § 102 has the burden to demonstrate, by clear and convincing evidence, that every element of the accused claim is either expressly or inherently present in a single prior reference. 35 U.S.C. § 102 (2000); <u>Kalman v. Kimberly-Clark Corp.</u>, 713 F.2d 760, 771 (Fed. Cir. 1983). Failure to prove the presence of even one element will defeat any motion for judgment of invalidity. <u>Id.</u> at 772. The burden is even higher in summary judgment practice. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

Defendants' failure to argue that Chestnut discloses this element is inexcusable, particularly in light of the fact that Dr. Beckmann has opined that Chestnut does not include this element. Defendants' motion should be denied. [<u>See, e.g.</u>, Beckmann Decl. ¶ 41.]

2.  **Chestnut does not disclose "at the computer network, monitoring activity of a user computer connected to the computer network and associated with the second party."**

A reasonable jury could find that Chestnut fails to disclose this limitation under either party's construction of the phrase "monitoring activity of a user computer." Under the plain language of the term, or under Microsoft's proposed construction, Chestnut never discloses monitoring the "activity" or "status" of a user computer. [Beckmann Decl. ¶ 42.] The only thing Chestnut teaches is monitoring whether or not a user has <u>logged on</u> to a computer network. [<u>See, e.g.</u>, Ex. 36, Chestnut col.4:50–57 (describing the Chestnut system checking "to see if the called party is logged on").] Whether a user has logged on to a computer network is neither "activity of

a user computer" nor "status of a user computer"—it is at best a <u>precursor</u> to whatever activity or status a user computer may later have. [Beckmann Decl. ¶ 42.] One of ordinary skill at the time of invention would have appreciated the distinction between simply determining whether a user was logged in to a computer network, and determining the activity/status of a user computer. [<u>Id.</u>] To the extent Defendants' argument has any merit at all, it is certainly not enough to meet Defendants' burden to prove that no reasonable jury could disagree. Defendants also do not even contend that Chestnut would invalidate any claim of the '289 patent under their proposed construction of "monitoring activity of a user computer."

> ### 3. Chestnut does not disclose "at the computer network, storing a set of predetermined rules for determining when the second party is available to take a call from the first party."

A reasonable jury could find that Chestnut fails to disclose this limitation. First, Defendants point to a disclosure in Chestnut of "forwarding preferences" that are either preprogrammed or entered into the telecommute server of the Chestnut system. [Br. 27 (citing Chestnut, col.5:13–26).] Defendants expressly assert that the telecommute server is "on the computer network," and allege that this satisfies the limitation. However, in their brief accompanying their Motion for Summary Judgment of Non-Infringement and Invalidity of All Asserted Claims of U.S. Patent No. 6,421,439, Defendants claim that the same telecommute server of the Chestnut system satisfies the "controller" limitation of U.S. Patent No. 6,421,439 ("the '439 patent"). [Br. ISO Defs. '439 MSJ, D.I. 159, 28–29.] Review of the '439 patent demonstrates that its "controller" element is expressly on the <u>telephone network</u>. This apparent inconsistency would be sufficient grounds for a reasonable jury to conclude that Chestnut did not disclose this limitation. [Beckmann Decl. ¶ 43.]

4.     **Chestnut does not disclose "at the computer network, using the set of predetermined rules . . . to determine when the second party is available . . . ."**

A reasonable jury could find that Chestnut fails to disclose this limitation because, as discussed above, Defendants never explain the inconsistency between their apparent position here that the "telecommute server" of Chestnut is on the "computer network," while in their briefing concerning the '439 patent, they argue it is on the "telephone network." [See Br. ISO Defs.' '439 MSJ, D.I. 159, 28–29; see also Beckmann Decl. ¶ 44.]

5.     **Chestnut does not disclose the "computer program product" required by claims 7, 8, and 10.**

A reasonable jury could find that Chestnut fails to disclose the "computer program product" required by claims 7, 8, and 10. These claims describe a "computer program product" that practices a series of steps. Defendants must demonstrate that the Chestnut reference discloses such a product, and to identify how Chestnut teaches performing each step. Defendants have failed to meet this burden. Rather than showing specific software elements of Chestnut that perform the required steps, they simply cite to a series of generic disclosures in Chestnut discussing software generally. [See Br. 29.] Indeed, the only cited language even discussing software does not identify specific steps executed by software, but merely recites some general functions of "CTI applications," or "the idea of a computer program" [Id. (citing Chestnut, col.1:47–51, and ITC Hr'g Tr. 1299:6–12 (Hyde-Thomson test.)); see also Beckmann Decl. ¶ 46.] None of this proves anticipation. [Beckmann Decl. ¶ 46.] Defendants have failed to show for each element how the reference allegedly anticipates.

## VI.    CONCLUSION

Defendant's motion for summary judgment is unsupported by the language of the '289 patent, the proper construction of the claims, or the facts of the case. It should be denied.

Dated: June 20, 2008

Respectfully submitted,

**FISH & RICHARDSON P.C.**

*/s/ Thomas L. Halkowski*
Thomas L. Halkowski (#4099)
Raymond N. Scott, Jr. (#4949)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607
halkowski@fr.com
rscott@fr.com

John E. Gartman
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099
gartman@fr.com

Ruffin B. Cordell
Linda Liu Kordziel
Indranil Mukerji
William Sekyi
Kfir Levy
Kori Anne Bagrowski
Robert Courtney
1425 K Street NW, 11th Floor
Washington, D.C. 20005
Tel: (202) 783-5070
Fax: (202) 783-2331
cordell@fr.com
kordziel@fr.com
mukerji@fr.com
sekyi@fr.com
kylevy@fr.com
bagrowski@fr.com
courtney@fr.com

**ATTORNEYS FOR PLAINTIFF
MICROSOFT CORPORATION**

80062404.doc

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2008, I electronically filed with the Clerk of Court the attached **PUBLIC VERSION – PLAINTIFF MICROSOFT'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT AND INVALIDITY FOR ALL ASSERTED CLAIMS OF U.S. PATENT NOS. 6,430,289,** using CM/ECF which will send notification of such filing to the following individuals:

Jack B. Blumenfeld - jblumenfeld@mnat.com
Maryellen Noreika - mnoreika@mnat.com
Richard J. Bauer - rbauer@mnat.com
MORRIS, NICHOLS, ARSHT & TUNNEL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
*(Also served via hand delivery)*

Steven C. Cherny - steven.cherny@lw.com
Karen Y. Tu - karen.tu@lw.com
Clement J. Naples - clement.naples@lw.com
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022

David A. Nelson - david.nelson@lw.com
Alan Devlin - alan.devlin@lw.com
Brett M. Doran - brett.doran@lw.com
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606

Michael J. Schallop - michael.schallop@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025

Susan S. Azad - susan.azad@lw.com
LATHAM & WATKINS LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071

/s/ *Thomas L. Halkowski*
Thomas L. Halkowski
halkowski@fr.com