IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ALCATEL-LUCENT ENTERPRISE and GENESYS TELECOMMUNICATIONS LABORATORIES, INC.,<br><br>Defendants. | C.A. No. 07-090 (SLR)<br><br>**PUBLIC VERSION** |

**PLAINTIFF MICROSOFT'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY
OF ALL ASSERTED CLAIMS OF UNITED STATES
PATENT NOS. 6,263,064 AND 6,728,357**

**FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
Raymond N. Scott, Jr. (#4949)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607
John E. Gartman
12390 El Camino Real
San Diego, CA 92130

Ruffin B. Cordell
Linda Liu Kordziel
Indranil Mukerji
William Sekyi
Kfir Levy
Kori Anne Bagrowski
Robert Courtney
1425 K Street NW, Suite 1100
Washington, D.C. 20005

**ATTORNEYS FOR PLAINTIFF
MICROSOFT CORPORATION**

REDACTED DATE:  June 27, 2008
ORIGINAL DATE: June 20, 2008

# TABLE OF CONTENTS

**Page**

I.     NATURE AND STAGE OF THE PROCEEDINGS ...............................................1

II.    SUMMARY OF ARGUMENT ...........................................................................1

III.   STATEMENT OF FACTS ................................................................................2

    A.    The Asserted O'Neal Patents ........................................................2

    B.    The Accused Alcatel System ........................................................3

          1.    Introduction.......................................................................3

          2.    Overview and Components of the OXE System...........................4

          3.    Deployment and Use of the OXE System.......................................6

          4.    Architecture and Features of the OXE System ...............................8

    C.    The Prior Art ...............................................................................14

          1.    The Swartz Patent .............................................................14

          2.    The Nagai Patent.............................................................15

IV.    ARGUMENT...................................................................................................16

    A.    Legal Standards...........................................................................16

          1.    Summary Judgment .........................................................16

          2.    Infringement.....................................................................16

          3.    Validity ............................................................................18

    B.    The Accused OXE System Infringes Even Under ALE's
          Construction of the Single Graphical Menu Limitation ...........................19

          1.    The Accused OXE System Includes a Computer
               Server that is Configured to Generate a Single
               Graphical Menu for Displaying All Options for
               All of a Subscriber's Services............................................19

               a.    The O'Neal Patents and Their
                    Prosecution History do not Support
                     ALE's Implicit Construction that Limits
                     the Term "Menu" to Exclude the
                     Simultaneous Display of Multiple
                     Windows ..............................................................21

## TABLE OF CONTENTS (cont'd)

Page

b.   Whether the OXE System Meets the
Single Graphical Menu Limitation Under
ALE's Construction is a Disputed
Question of Fact ...................................................................23

2.   The OXE System Meets the Single Graphical
Menu Limitation Under the Doctrine of
Equivalents .........................................................................24

a.   Even if the Term "Single Graphical
Menu" is Construed To Exclude
Simultaneously Displayed Windows, a
Reasonable Jury Would Conclude That
the Differences Between the
Simultaneously Displayed Windows of
the OXE System the Single Graphical
Menu are insubstantial .......................................24

b.   The Prosecution History of the O'Neal
Patents Does not Preclude the Doctrine of
Equivalents .........................................................26

C.   The Accused OXE System Infringes Even Under ALE's
Construction of the Telephony Server Limitation .....................................28

1.   The OXE System Includes a Telephony Server
that Audibly Represent Several of the Same
Communication Options Displayed in the Single
Graphical Menu ..................................................................28

2.   The Accused Products Audibly Represent
Communication Options as Required by the
Claims, Either Literally or Under the Doctrine of
Equivalents .........................................................................29

D.   The Accused OXE System is Used as a Unified
Messaging System ..........................................................................31

E.   ALE Directly and Indirectly Infringes the Asserted
Claims ...........................................................................................33

F.   The O'Neal Patents are Valid Under Microsoft's
Proposed Constructions ....................................................................34

1.   The Swartz Patent Does Not Disclose a Unified
Messaging System ..............................................................34

2.   The Nagai Patent Does Not Disclose a Unified
Messaging System ..............................................................35

ii

**TABLE OF CONTENTS (cont'd)**

**Page**

V.     CONCLUSION...........................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Anderson v. Liberty Lobby, Inc.,
477 U.S. 317 (1986).................................................................................. 16

Apotex USA, Inc. v. Merck & Co.,
254 F.3d 1031 (Fed. Cir. 2001)................................................................... 18

Enercom GmbH v. U.S. Int'l Trade Comm'n,
151 F.3d 1376 (Fed. Cir. 1998)................................................................... 17

Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,
535 U.S. 722, 122 S.Ct. 1831 (2002).......................................................... 27

General Mills, Inc., v. Hunt-Wesson, Inc.,
103 F.3d 978 (Fed. Cir. 1997)..................................................................... 16

Insituform Techs., Inc. v. Cat Contracting, Inc.,
385 F.3d 1360 (Fed. Cir. 2004)................................................................... 27

Jeneric/Pentron, Inc. v. Dillon Co., Inc.,
205 F.3d 1377 (Fed. Cir. 2000)................................................................... 17

Kalman v. Kimberly-Clark Corp.,
713 F.2d 760 (Fed. Cir. 1983)..................................................................... 18

Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.,
285 F.3d 1353 (Fed. Cir. 2002).............................................................. 16, 17

Liquid Dynamics Corp. v. Vaughan Co.,
355 F.3d 1361 (Fed. Cir. 2004)................................................................... 17

Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics,
Inc.,
976 F.2d 1559 (Fed. Cir. 1992)................................................................... 18

Primos v. Hunter's Specialties,
451 F.3d 841 (Fed. Cir. 2006)..................................................................... 27

Schering Corp. v. Geneva Pharms.,
339 F.3d 1373 (Fed. Cir. 2003)................................................................... 18

Shumer v. Laboratory Computer Systems, Inc.,
308 F.3d 1304 (Fed. Cir. 2002)................................................................... 18

Stryker Corp. v. Davol Inc.,
234 F.3d 1252 (Fed. Cir. 2000)................................................................... 18

## TABLE OF AUTHORITIES (cont'd)

Page(s)

TechSearch LLC v. Intel Corp.,
    286 F.3d 1360 (Fed. Cir. 2002)............................................................... 16

Toro Co. v. White Consol. Indus., Inc.,
    266 F.3d 1367 (Fed. Cir. 2001)............................................................... 18

Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.,
    212 F.3d 1377 (Fed. Cir. 2000)............................................................... 17

W.E. Hall Co. v. Atlanta Corrugating, LLC,
    370 F.3d 1343 (Fed. Cir. 2004)......................................................... 16, 17

Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,
    520 U.S. 17 (1997)................................................................................. 17

### Statutes

35 U.S.C. § 102 ....................................................................................... 18

35 U.S.C. § 282 ....................................................................................... 18

### Rules

Fed. R. Civ. P. 56 .................................................................................... 16

v

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Microsoft Corporation ("Microsoft") filed this patent case on February

16, 2007, as a companion district court case to an investigation of the U.S. International

Trade Commission ("ITC") against Alcatel-Lucent Enterprise ("ALE") for infringement

of four Microsoft patents—U.S. Patent Nos. 6,421,439; 6,430,289; 6,263,064; and

6,728,357. [D.I. 1].  On May 9, 2008, Defendant Alcatel-Lucent Enterprise ("ALE")

filed a Motion for Summary Judgment of Non-infringement and Invalidity of U.S. Patent

Nos. 6,263,064 ("the '064 patent") and 6,728,357 ("the '357 patent") (collectively

referred to as the "O'Neal Patents"[1]).  Plaintiff Microsoft Corporation ("Microsoft") files

this brief in opposition to ALE's motion.  For the reasons discussed below, there are

genuine issues of material fact, and ALE is not entitled to judgment as a matter of law.

## II.    SUMMARY OF ARGUMENT

To prevail on a motion for summary judgment of noninfringement and invalidity,

Defendants must demonstrate, viewing the facts in a light most favorable to Microsoft,

that no reasonable jury could find that the O'Neal patents are infringed or valid.   ALE

has failed to meet this high burden.  ALE contends that its accused system does not

infringe the O'Neal patents under ALE's construction of the single graphical menu

limitation and the telephony server limitation, and does not infringe under Microsoft's

construction of the unified messaging system limitation.  ALE's noninfringement

arguments are legally flawed and factually incorrect:

---

[1]   The '357 patent is continuation of the '064 patent, and both patents share a common
specification and inventors.

- The facts to not support ALE's argument that the accused system does not include a "single graphical menu" under ALE's construction of that claim limitation. The accused system displays available communication options through multiple windows displayed on a display terminal screen at the same time, and in a non-hierarchical manner. This display represents one graphical menu that shows the communication options associated with a subscriber's communication services at the same time, even under ALE's proposed construction.

- The facts do not support ALE's argument that the accused system does not meet the "telephony server" under ALE's construction of that claim limitation. The accused system audibly represents several of the same communication options displayed in the system's single graphical menu. The system therefore provides the same options via the telephony server as are provided via the single graphical menu, even under ALE's proposed construction.

- The facts do not support ALE's argument that the accused system does not meet the unified messaging system limitation under Microsoft's proposed construction. ALE assembles and uses the accused system to form a unified messaging system. The accused system receives, stores, retrieves and forwards messages in a coordinated manner as required under Microsoft's construction of the limitation.

ALE also contends that the O'Neal patents are invalid and anticipated by U.S. Patent No. 6,445,694 ("Swartz") and U.S. Patent No. 6,636,587 ("Nagai"). However, ALE fails to show by clear and convincing evidence that either the Swartz or the Nagai patent discloses the unified messaging system required by the asserted claims.

ALE's arguments cannot prevail on summary judgment. Not only are ALE's arguments legally unsound, but each of ALE's arguments for non-infringement and invalidity also relies on disputed facts. Microsoft respectfully submits that ALE's motion for summary judgment should be denied.

## III.    STATEMENT OF FACTS

### A.    The Asserted O'Neal Patents

2

The O'Neal Patents are directed to a computer implemented control center and a method for permitting a subscriber of a communication services of a unified messaging system to customize communication options pertaining to the communication services. [Ex. 2, '064 patent Abstract, col. 4:7-11.][2] The subscriber can customize these options through either a telephony-centric network using a telephone, or a through a data-centric network using a display terminal. [Id.] The system stores subscriber communication options in a subscriber communication profile database. [Id.] A computer server and a telephony server are both coupled to the subscriber communication profile database and respectively provide a graphical user interface ("GUI") and a telephone user interface ("TUI") to allow a user to review and change communication options using either a display terminal or a telephone. [Id.]

Microsoft is asserting claims 1, 3, 8, 9, 11 and 20 of the '064 patent. Asserted claims 3, 8, 9, and 11 depend from claim 1. Microsoft is also asserting claims 1, 6 and 17 of the '357 patent; claims 6 and 17 depend from claim 1. All of the asserted claims include the same or similar limitations regarding the unified messaging system, GUI and TUI that are at issue in ALE's motion for summary judgment.

B.    The Accused Alcatel System

    1.    Introduction

On February 16, 2007, Microsoft informed ALE that ALE infringed the O'Neal patents by designing, selling, installing, and using a combination of unified communication products in the United States. [See Ex. 1, Microsoft's Complaint and Demand for Jury Trial.] But ALE had learned of Microsoft's patents much earlier. ALE

---

[2]    All exhibits referenced as "Ex. ___" are exhibits to the accompanying Declaration of Raymond Scott, dated June 20, 2008, submitted herewith.

3



**2.    Overview and Components of the OXE System**



---

3    A "private branch exchange" or "PBX" is a device that allows agencies, companies, or other organizations to internally route calls to users using a small telephony switch to reduce the cost of providing a large number of telephone lines individually. [Beckmann Decl. ¶ 16.]





3.     Deployment and Use of the OXE System







### 4.    Architecture and Features of the OXE System

Microsoft's expert, Dr. William Beckmann, extensively reviewed and analyzed a representative demonstration system (shown in Figure 1, below) that was designed and configured as described and instructed according to product literature ALE provides to its customers and resellers in the United States.















**C.     The Prior Art**

     **1.     The Swartz Patent**

The Swartz patent describes an internet controlled Telephone System that handles incoming calls and establishes outgoing telephone connections in accordance with the preference data provided by the subscriber.  [See, e.g., Ex. 4, Swartz, at Abstract, 1:12–15.]  In other words, the Swartz system is a telephone and voicemail system with limited functionalities related to email and other communications, that does not anticipate the asserted claims of the '064 patent.  [Id.]

The Swartz system "operates as a POP mailbox and SMTP server for receiving and sending email respectively."  [See Ex. 4, Swartz, at 12:20–31.]  There is no disclosure of any additional software used with the Swartz POP server that would be needed to coordinate messaging.  The POP server Swartz discloses does not receive,

store, retrieve and forward messages in a coordinated manner. [Beckmann Decl. ¶¶ 41-42.]

### 2.    The Nagai Patent

The Nagai patent relates to a computer-telephony integration ("CTI") system and an information reception processing method in which information (*e.g.*, multimedia information with voice, text and image) sent from a device such as a computer, a cell phone or a facsimile machine can be automatically converted and transmitted to a similar or different device at a connection destination. [Ex. 5, Nagai, fig.1; Beckmann Decl. ¶ 43.]

As shown in Figure 2 of the Nagai patent, the disclosed system includes a CTI server connected to a telephone network via a PBX and to various other servers, including a groupware server labeled as a "unified messaging system." The Nagai system is connected to the internet via an internet server. [Ex. 5, Nagai, fig.2.] The system receives e-mail messages directed to system subscribers at the groupware server via the internet server. A groupware control program running on the CTI server detects that a message has been received and loads the received message from the groupware server onto the CTI server. [Ex. 5, Nagai, at col. 19:16–26, col. 21:16–22.] The CTI server reformats the message if necessary, then finally routes the message to the intended subscriber's device. As noted in the Nagai patent's abstract, the Nagai system only temporarily stores messages to process and route them to destination devices. [Nagai Abstract; Beckmann Decl. ¶ 44.]

Nagai explains that the groupware server does not perform the conversions required to send messages to "communication devices or networks employed for the transmission of messages" as required by Microsoft's and by ALE's construction. That

15

task is performed by Nagai's CTI server. [See, e.g., Ex. 5, Nagai, at col. 8:39–9:36, col. 21:9–64.] The Nagai system formats and routes messages from a source to a destination, but it does not coordinate retrieval and forwarding of messages as required of unified messaging systems. [Beckmann Decl. ¶ 45.]

## IV.    ARGUMENT

### A.    Legal Standards

#### 1.    Summary Judgment

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); TechSearch LLC v. Intel Corp., 286 F.3d 1360, 1369 (Fed. Cir. 2002). A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. General Mills, Inc., v. Hunt-Wesson, Inc., 103 F.3d 978, 980 (Fed. Cir. 1997). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. Id. In making determinations regarding summary judgment, a court should view the record in a light most favorable to the non-movant. Leggett & Platt, Inc. v. Hickory Springs Mfg. Co., 285 F.3d 1353, 1357 (Fed. Cir. 2002) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 317, 322 (1986)).

#### 2.    Infringement

Determination of patent infringement is a two-step analysis: first, the claims must be properly construed, and second, the properly construed claims must be compared to the infringing device. W.E. Hall Co. v. Atlanta Corrugating, LLC, 370 F.3d 1343, 1350 (Fed. Cir. 2004); Liquid Dynamics Corp. v. Vaughan Co., 355 F.3d 1361, 1367 (Fed. Cir.

16

2004). The first step, claim construction, is a matter of law, and the second step, comparison of the properly construed claims to the accused product, is a question of fact. W.E. Hall Co., 370 F.3d at 1350. An accused device literally infringes a patent claim if it meets every limitation recited in the claim. Enercom GmbH v. U.S. Int'l Trade Comm'n, 151 F.3d 1376, 1384 (Fed. Cir. 1998). Summary judgment of no literal infringement is proper only if "there is no genuine issue whether the accused device is encompassed by the patent claims." Novartis Corp. v. Ben Venue Labs., Inc., 271 F.3d 1043, 1046 (Fed. Cir. 2001).

But even where literal infringement is not found, infringement nevertheless can be found under the doctrine of equivalents. Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997). An accused device is equivalent to the claim element if the differences between the two are insubstantial, or, put another way, if the accused device performs substantially the same function, in substantially the same way, with substantially the same result as the claim element. Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997).

Infringement under the doctrine of equivalents requires an intensely factual inquiry. Leggett & Platt, Inc., 285 F.3d at 1357; see also Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc., 212 F.3d 1377, 1381 (Fed. Cir. 2000) (standard "sets a high hurdle this court does not lightly attempt to surmount."). Generally, such a highly factual inquiry "rarely comes clear on a premature record." Jeneric/Pentron, Inc. v. Dillon Co., Inc., 205 F.3d 1377, 1384 (Fed. Cir. 2000). Summary judgment of no infringement under the doctrine of equivalents therefore is appropriate only where the record "leaves no room for

a reasonable jury to find equivalence." <u>Toro Co. v. White Consol. Indus., Inc.</u>, 266 F.3d 1367, 1370 (Fed. Cir. 2001).

### 3. Validity

"The burden of proving invalidity on summary judgment is high." <u>Shumer v. Laboratory Computer Systems, Inc.</u>, 308 F.3d 1304, 1316 (Fed. Cir. 2002). The asserted patents are presumed valid. 35 U.S.C. § 282. To overcome this presumption of validity, a party must prove all necessary facts supporting a determination of invalidity by clear and convincing evidence. <u>Apotex USA, Inc. v. Merck & Co.</u>, 254 F.3d 1031, 1036 (Fed. Cir. 2001). Clear and convincing evidence has been described as evidence which proves in the mind of the trier of fact "an abiding conviction that the truth of [the] factual contentions [is] 'highly probable.'" <u>Intel Corp. v. United States Int'l Trade Comm'n</u>, 946 F.2d 821, 829-30 (Fed. Cir. 1991) (quoting <u>Colorado v. New Mexico</u>, 467 U.S. 310, 316 (1984)).

Anticipation requires that a single prior art reference discloses each and every limitation of the claimed invention. <u>Schering Corp. v. Geneva Pharms.</u>, 339 F.3d 1373, 1379-80 (Fed. Cir. 2003). Thus, a patent is invalid for anticipation if and only if each element of the accused claim is present either expressly or inherently in a single prior reference based on the vantage point of a person of ordinary skill. <u>Kalman v. Kimberly-Clark Corp.</u>, 713 F.2d 760, 771 (Fed. Cir. 1983); <u>see also</u> 35 U.S.C. § 102. If even one element is missing from the prior art, there can be no anticipation. <u>Kalman</u>, 713 F.2d at 772. Anticipation is a question of fact. <u>Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.</u>, 976 F.2d 1559, 1565 (Fed. Cir. 1992). Therefore, summary judgment of anticipation is inappropriate if any factual question exists.

**B.**     **The Accused OXE System Infringes Even Under ALE's Construction of the Single Graphical Menu Limitation**

   **1.**     **The Accused OXE System Includes a Computer Server that is Configured to Generate a Single Graphical Menu for Displaying All Options for All of a Subscriber's Services**



---

[4] The asserted claims call for "a computer server...configured to generate a single graphical menu for displaying said communication options for each of said communication services at the same time." ['064 patent col. 18:37-42; see also '064 patent, claim 20, '357 patent claims 1 and 17.] One graphical menu that displays a first communication service and an associated communication option, and a second communication service and an associated communication option on a display terminal at the same time meets the single graphical menu limitation under Microsoft's proposed construction.



---

ALE's Opening Brief in Support of Its Motion for Summary Judgment of Non-Infringement and Invalidity of All Asserted Claims of United States Patent Nos. 6,263,064 and 6,728,357 (hereinafter "ALE Brief").

6 The construction ALE proposed for the phrase "a single graphical menu for displaying said communication options for each of said communication services at the same time" differs from the construction ALE proposed in the Joint Claim Chart: "one graphical menu that shows *all* of the communication options associated with the subscriber's communication services." [May 2, 2008 Joint Claim Chart at 4 (emphasis added).]



     **a.**    **The O'Neal Patents and Their Prosecution History do not Support ALE's Implicit Construction that Limits the Term "Menu" to Exclude the Simultaneous Display of Multiple Windows**

Embedded in ALE's arguments is the presumption that a menu cannot include multiple windows. Both ALE and its expert, Mr. Hyde-Thomson, equate the claimed "menu" with "window". [See, e.g., Hyde-Thomson ("HHT") Decl. at 8 ¶ 33 ("In fact, each window in Screenshot 4 is a graphical menu").] But the plain words of ALE's construction include no such limitation. More importantly, nothing in the O'Neal patents' specification, the prosecution history or the claims suggest that graphical menu should mean window. [See ALE Markman Brief at 4-12.]

The asserted claims do not exclude the concurrent display of multiple windows from the scope of a graphical menu. Instead, the asserted claims call for a computer server configured to generate "a single graphical menu *for displaying* said *communication options* for each of said communication services *at the same time*…and to visually display said single graphical menu on said display terminal." [See, e.g., Ex. 2, '064 patent col. 18:39-43 (emphasis added).] In other words, the only restriction the asserted claims place on the meaning of "single graphical menu" is functional: the menu is for displaying communication options associated with the subscriber's communication services at the same time, regardless of the number of windows displayed. Unasserted claim 16 of the '064 patent, on the other hand, makes clear that the single graphical menu of that claim should be displayed in one window. Claim 16 explicitly calls for "a single

graphical menu arranged for displaying [] communication options ...*via an individualized web page*." [Ex. 2, '064 patent, claim 16 at 21:12-17 (emphasis added).] But no such limitation exists in the asserted claims, and it would be improper to read in such a requirement into the claims.

The O'Neal patents' prosecution history supports the view that the claimed graphical menu can include multiple simultaneously displayed windows. During prosecution of the '064 patent, the patentees argued that the claimed invention permitted the display of various communication options on a display terminal *screen* at the same time and never argued that the invention of the asserted claims was limited to one *window*. [See Ex. 61, 7/24/2000 Amendment (MSAL00992-01005).] Specifically, the patentees stated that "[i]n contrast to Pepe, independent claims 1 and 20 of the present application require a single graphical menu that is arranged to display the communication options for each of the communication services at the same time. That is, the communication options for each of the communication services are simultaneously displayed on a computer terminal..." [Id. at MSAL01001.] The applicants observed that Pepe disclosed "multiple views, which are independently displayed on a PCI subscriber's PDA screen." [Id. at MSAL01000.] In Pepe, "the subscriber must go through a *plurality of views* independently, wherein the *options* are *displayed at different times*." [Id. at MSAL01001-2.] "In contrast, the present invention does not have to access multiple *screens* to modify options." [Id.] The claims and the prosecution history make abundantly clear that the claimed graphical menu is displayed on one screen and is not limited to one window. Accordingly, a reasonable jury would conclude that Screenshot 4 meets the single graphical menu limitation of the asserted claims. [Beckmann Decl ¶ 27.]

22

      **b.**    **Whether the OXE System Meets the Single Graphical Menu Limitation Under ALE's Construction is a Disputed Question of Fact**



[ALE Brief at 9.] Neither ALE nor Mr. Hyde-Thomson cites any support for this conclusion, which amounts to nothing more than a bald assertion. [Id.; HHT Decl. ¶ 34.]



This represents a disputed question of fact that precludes summary judgment. W.E. Hall Co., 370 F.3d at 1350 (holding that comparison of the properly construed claims to the accused product is a question of fact).





2.   **The OXE System Meets the Single Graphical Menu Limitation Under the Doctrine of Equivalents**

a.   **Even if the Term "Single Graphical Menu" is Construed To Exclude Simultaneously Displayed Windows, a Reasonable Jury Would Conclude That the Differences Between the Simultaneously Displayed Windows of the OXE System the Single Graphical Menu are insubstantial**







**b.    The Prosecution History of the O'Neal Patents Does not Preclude the Doctrine of Equivalents**



ALE contends that Microsoft is precluded from asserting infringement under the doctrine of equivalents of the single graphical menu limitation because patentees amended the asserted claims during prosecution to add the single graphical menu limitation. However, a narrowing amendment does not absolutely bar the patentee from asserting the doctrine of equivalents for the added limitation. The amendment merely creates a rebuttable presumption that the patentee surrendered the entire territory between the original claim limitation and the amended claim limitation. Courts have repeatedly held that the presumption can be rebutted by a showing that the "rationale underlying the

26

amendment may bear no more than a tangential relation to the equivalent in question."

Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 535 U.S. 722, 740-1, 122

S.Ct. 1831 (2002); see also Insituform Techs., Inc. v. Cat Contracting, Inc., 385 F.3d

1360, 1368 (Fed. Cir. 2004); Primos v. Hunter's Specialties, 451 F.3d 841, 849 (Fed. Cir.

2006).

   Here, the applicants for the '064 patent amended the claims to include the single

graphical menu limitation to distinguish over U.S. Patent No. 5,742,905 ("Pepe") for

reasons unrelated to whether a menu can encompass multiple windows.  [See Ex. 61,

7/24/2000 Amendment at MSAL01001-2.]  They argued that "[i]n contrast to Pepe,

independent claims 1 and 20 of the present application require a single graphical menu

that is arranged to display the communication options for each of the communication

services at the same time.  That is, the communication options for each of the

communication services are simultaneously displayed on a computer terminal…" [Id. at

MSAL01001.]  The applicants observed that Pepe disclosed "multiple views, which are

independently displayed on a PCI subscriber's PDA screen."  [Id. at MSAL01000.]  In

Pepe, "the subscriber must go through a *plurality of views* independently, wherein the

*options* are *displayed at different times*." [Id. at MSAL01001-2.]  "In contrast, the

present invention does not have to access multiple *screens* to modify options." [Id.]

Thus, what Pepe failed to disclose is a single graphical menu allowing for the display of

several options at one time on a display screen.  Pepe does not disclose multiple,

simultaneously displayed windows, and the presence or absence of windows in the

claimed single graphical menu was irrelevant to the reasons the applicants advanced for

distinguishing Pepe.

Adding the single graphical menu limitation to the claims was unrelated to whether a graphical menu can include multiple concurrently displayed windows. Therefore, the amendment did not foreclose the application of the doctrine of equivalents to the graphical menu limitation.

### C. The Accused OXE System Infringes Even Under ALE's Construction of the Telephony Server Limitation

#### 1. The OXE System Includes a Telephony Server that Audibly Represent Several of the Same Communication Options Displayed in the Single Graphical Menu



Despite the plain language of the clams, ALE construes the telephony server limitation as "a telephony server that represents the same communication options that are available through the single graphical menu." [Joint Claim Chart at 5.]



**2. The Accused Products Audibly Represent Communication Options as Required by the Claims, Either Literally or Under the Doctrine of Equivalents**

Dissatisfied with the fact that the OXE system meets the telephony server limitation under ALE's flawed construction, ALE seeks to narrow its construction yet

29

further, by reading the construction to require a telephony server that audibly represents *all* of the same communication options displayed in the single graphical menu. [ALE Brief at 11-12.]



According to Alcatel literature, the TUI provides just about any feature of the OTUC display that a user would need:

> Users can choose their own interface as the OmniTouch Unified Communication imposes no constraints. This encourages user acceptance of the products and minimizes training costs. The interface can be web, mobile phone, wireless, PDA, Outlook, Outlook Web Access, iNotes, or any kind of phone for voice access.
>
> * * *
>
> The OmniTouch Unified Communication also allows a user to customize his or her multi-device home page to design a personalized day-to-day communication applications and information environment (bookmarks, e-news, etc). A tool, known as the Content and Terminal Studio, is available to information system teams or web designers to aggregate any web content on any device by generating the relevant markup language for each device: PC, web phone, web TV, PDA, mobile phone, VXML browser for voice access and IP phones with XML screen (See Figure 11).

[ Ex. 62, Next Generation of Unified Communications for Enterprises White Paper, at MSAL 0021442-3 (emphasis added); Beckmann Decl. ¶ 35.]





**D.     The Accused OXE System is Used as a Unified Messaging System**







### E.    ALE Directly and Indirectly Infringes the Asserted Claims

Again, ALE fails to meet its summary judgment burden.  There is ample evidence to support a reasonable jury's finding of direct and indirect infringement of all the asserted claims.  Microsoft has laid out this evidence in its Opposition to Defendant's Motion for Summary Judgment of Non-Infringement and Invalidity for All Asserted Claims of U.S. Patent No. 6,421,439, filed herewith.  To avoid duplication, Microsoft does not repeat those facts and arguments here, but incorporates them herein by reference.  ['439 Patent Opposition at Section V.B.]  At the very least, there are genuine issues of fact regarding whether ALE directly and indirectly infringes the asserted claims.

F.    **The O'Neal Patents are Valid Under Microsoft's Proposed Constructions**

    1.    **The Swartz Patent Does Not Disclose a Unified Messaging System**

ALE contends that U.S. Patent No. 6,445,694 ("Swartz") discloses a unified messaging system under Microsoft's construction and therefore anticipates all the asserted claims. The Swartz reference does not anticipate any of the asserted claims because it does not disclose a "system that allows messages of a data-centric network and a telephony-centric network to be received, stored, retrieved, and forwarded without regard to the communication devices or networks employed for the transmission of the messages (*i.e.*, in a coordinated manner)," as required under Microsoft's construction. The Swartz messaging system operates as a POP mailbox and SMTP server for receiving and sending email respectively. [See Beckmann Decl ¶¶ 41-42.] Swartz does not disclose a unified messaging system at least because the POP server in Swartz does not receive, store, retrieve and forward messages in a coordinated manner. [Id.] Contrary to ALE's assertions, there is no disclosure of any additional software used with the Swartz POP server in order to implement this coordination.

ALE disagrees that POP systems, without additional software, are incompatible with unified messaging systems. However, as reflected in public documentation available at the time of the invention, it was commonly known at the time of the invention that POP systems were incompatible with unified messaging systems. [See, e.g., Ex. 65, Unified Messaging, at MSAL0505955, MSAL0505957, and MSAL05059589; Beckmann Decl ¶ 42.] In any event, whether the POP system disclosed in the Swartz patent represents a unified messaging system is a disputed fact

34

that is ALE's burden to prove by clear and convincing evidence. ALE has failed to meet

its burden, and granting summary judgment on this issue would be inappropriate.

### 2.    The Nagai Patent Does Not Disclose a Unified Messaging System

ALE contends that U.S. Patent No. 6,636,587 ("Nagai") discloses a unified

messaging system and thereby anticipates all the asserted claims of the O'Neal patents.

However, Nagai does not disclose the claimed unified messaging system. [Beckmann

Decl. ¶¶ 44-46.] As shown in Figure 2 of the Nagai patent, the disclosed system includes

a CTI server connected to a telephone network via a PBX and to various other servers,

including a groupware server labeled as a "unified messaging system." Despite this

label, the groupware server is not a unified message system. [Beckmann Decl. ¶ 46.]

The Nagai system is connected to the internet via an internet server. [Nagai

fig.2.] The system receives e-mail messages directed to system subscribers at the

groupware server via the internet server. [Beckmann Decl. ¶ 44.] A groupware control

program running on the CTI server detects that a message has been received and loads

the received message from the groupware server onto the CTI server. [Ex. 5, Nagai

19:16–26, 21:16–22; Beckmann Decl. ¶ 44.] The CTI server reformats the message if

necessary, then finally routes the message to the intended subscriber's device. As noted

in the Nagai patent's abstract, the Nagai system only temporarily stores messages to

process and route them to destination devices. [Ex. 5, Nagai, Abstract; Beckmann Decl.

¶ 44.]

Nagai's groupware server cannot be a unified messaging system even under

ALE's construction because the groupware server does not perform the conversions

required to send messages to "communication devices or networks employed for the

transmission of messages" as required by both parties' constructions. [Beckmann Decl. ¶ 45.] That task is performed by Nagai's CTI server. [See, e.g., Ex. 5, Nagai 8:39–9:36, 21:9–64; Beckmann Decl. ¶ 45.]   Thus, those skilled in the art would have understood that Nagai's label of "unified messaging system" is inconsistent with both parties' constructions proposed in this case. [Beckmann Decl. ¶ 45.]

Furthermore, careful review of Nagai shows that it does not describe a "system that allows messages of a data-centric network and a telephony-centric network to be received, stored, retrieved, and forwarded without regard to the communication devices or networks employed for the transmission of the messages (i.e., in a coordinated manner)," as Microsoft proposes the term unified messaging system should be construed. [Beckmann Decl. ¶ 46.] The Nagai system formats and routes messages from a source to a destination, but it does not coordinate retrieval and forwarding of messages as required of unified messaging systems. [Id.] In any event, whether the Nagai patent discloses a unified messaging system is a disputed fact that is ALE's burden to prove by clear and convincing evidence.   ALE has failed to meet its burden, and granting summary judgment on this issue would be inappropriate.

In addition, Nagai fails to disclose the limitations of claim 8 of the '064 patent. To date, neither ALE nor its expert, Mr. Hyde-Thomson has ever identified in Nagai a "first communication option [which] includes a first routing option" and a "second communication option [which] includes a second routing option" as called for by claim 8. In his report, Mr. Hyde-Thomson quotes the Nagai patent at col.8 ll.3–6 and describes various services that the system offers.   However, neither Mr. Hyde-Thomson nor the portions of Nagai he relies on describes displaying options. [Beckmann Decl. ¶ 47.]

36

Microsoft pointed out this omission on multiple occasions during the ITC investigation and more recently in Dr. Beckmann's rebuttal expert report. Now, ALE attempts to gloss over the omission by characterizing the argument as based on ALE's proposed construction of the single graphical menu limitation. ALE is plainly wrong and has failed to come forward with any facts supporting its position. Accordingly, Microsoft respectfully submits that summary judgment with respect to claim 8 should be denied.

## V.     CONCLUSION

For the foregoing reasons, Microsoft requests that the Court deny ALE's motion for summary judgment of noninfringement and invalidity.

37

Dated: June 20, 2008

Respectfully submitted,

**FISH & RICHARDSON P.C.**

/s/ *Thomas L. Halkowski*
Thomas L. Halkowski (#4099)
Richard N. Scott, Jr. (#4949)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607
halkowski@fr.com
John E. Gartman
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099
gartman@fr.com

Ruffin B. Cordell
Linda Liu Kordziel
Indranil Mukerji
William Sekyi
Kfir Levy
Kori Anne Bagrowski
Robert Courtney
1425 K Street NW, 11th Floor
Washington, D.C. 20005
Tel: (202) 783-5070
Fax: (202) 783-2331
cordell@fr.com
kordziel@fr.com
mukerji@fr.com
sekyi@fr.com
kylevy@fr.com
bagrowski@fr.com
courtney@fr.com

**ATTORNEYS FOR PLAINTIFF
MICROSOFT CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2008, I electronically filed with the Clerk of Court the attached **PUBLIC VERSION – PLAINTIFF MICROSOFT CORP.'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT AND INVALIDITY FOR ALL ASSERTED CLAIMS OF U.S. PATENT NOS. 6,263,064 AND 6,728,357**, using CM/ECF which will send notification of such filing to the following individuals:

Jack B. Blumenfeld - jblumenfeld@mnat.com
Maryellen Noreika - mnoreika@mnat.com
Richard J. Bauer - rbauer@mnat.com
MORRIS, NICHOLS, ARSHT & TUNNEL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
*(Also served via hand delivery)*

Steven C. Cherny - steven.cherny@lw.com
Karen Y. Tu - karen.tu@lw.com
Clement J. Naples - clement.naples@lw.com
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022

David A. Nelson - david.nelson@lw.com
Alan Devlin - alan.devlin@lw.com
Brett M. Doran - brett.doran@lw.com
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606

Michael J. Schallop - michael.schallop@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025

Susan S. Azad - susan.azad@lw.com
LATHAM & WATKINS LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071

/s/ *Thomas L. Halkowski*
Thomas L. Halkowski
halkowski@fr.com