IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICROSOFT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-090 (SLR) |
| | ) | |
| ALCATEL-LUCENT ENTERPRISE and | ) | **REDACTED –** |
| GENESYS TELECOMMUNICATIONS | ) | **PUBLIC VERSION** |
| LABORATORIES, INC.,  | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO MICROSOFT'S MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Defendants*
*Alcatel-Lucent Enterprise and*
*Genesys Telecommunications Laboratories,*
*Inc.*

*Of Counsel*:

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY  10022-4834
(212) 906-1200

David A. Nelson
LATHAM & WATKINS LLP
233 South Wacker Drive
Suite 5800
Chicago IL 60606
(312) 876-7700

Original Filing Date:  June 20, 2008
Redacted Filing Date: June 27, 2008

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF THE PROCEEDINGS ................................................1

II.     SUMMARY OF ARGUMENT ........................................................................1

III.    STATEMENT OF FACTS .............................................................................3

        A.      The Prosecution Of The Liffick Patents ................................................3

                1.      Prosecution Of The '439 Patent And Mr. Israelsen.........................4

                2.      Prosecution Of The '289 Patent And Mr. Israelsen.........................6

IV.     ARGUMENT ...............................................................................................8

        A.      The Law Of Inequitable Conduct ...........................................................8

        B.      Mr. Israelsen Knew About The Brennan Patent And The
                '439 Application During Prosecution Of The '289 Patent ......................10

        C.      The Brennan Patent And The '439 Patent Were Material To
                The Prosecution Of The '289 Patent.....................................................11

                1.      The Co-Pending Applications.....................................................11

                2.      The Brennan Patent..................................................................15

        D.      The Evidence Is Sufficient To Infer Intent To Deceive............................16

V.      CONCLUSION............................................................................................19

# TABLE OF AUTHORITIES

**CASES**  **PAGE**

*Akron Polymer Container Corp. v. Exxel Container, Inc.,*
148 F.3d 1380 (Fed. Cir. 1998).................................................................................. 13

*Cargill, Inc. v. Canbra Foods, Ltd.,*
476 F.3d 1359 (Fed. Cir. 2007).....................................................................9-10, 19

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,*
20 F.3d 1253 (Fed. Cir. 1997)..................................................................................... 18

*Digital Control Inc. v. Charles Mach. Works,*
437 F.3d 1309 (Fed. Cir. 2006)..................................................................................... 8

*eSpeed, Inc. v. BrokerTec USA, L.L.C.,*
480 F.3d 1129 (Fed. Cir. 2007)................................................................................... 10

*Fox Indus., Inc. v. Structural Preservation Sys., Inc.,*
922 F.2d 801 (Fed. Cir. 1991)..................................................................................... 11

*GFI, Inc. v. Franklin Corp.,*
265 F.3d 1268 (Fed. Cir. 2001)................................................................................... 19

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.,*
882 F.3d 1556 (Fed. Cir. 1989)................................................................................... 14

*Li Second Family Ltd. v. Toshiba Corp.,*
231 F.3d 1373 (Fed. Cir. 2000)................................................................................... 14

*McKesson Info. Solutions, Inc. v. Bridge Med., Inc.,*
487 F.3d 897 (Fed. Cir. 2007)............................................................................*passim*

*Molins PLC v. Textron, Inc.,*
48 F.3d 1172 (Fed. Cir. 1995)..................................................................................... 14

*Rohm & Haas Co. v. Crystal Chem. Co.,*
722 F.2d 1556 (Fed. Cir. 1983)................................................................................... 14

**RULES**

FED. R. CIV. P. 56(c)...................................................................................................... 18

37 C.F.R. § 1.56(a)............................................................................................................ 8

37 C.F.R. § 1.56(b) ........................................................................................................ 9, 16

MPEP § 1490 ...................................................................................................................... 12

MPEP § 2001.06(b) ........................................................................................................ 14-15

## I.    NATURE AND STAGE OF THE PROCEEDINGS

ALE and Genesys incorporate herein the description of the Nature and Stage of the Proceedings from their opening briefs in support of summary judgment.

Microsoft asserted the same patents against ALE in the International Trade Commission ("ITC").  The ITC has determined that ALE did not infringe either of those patents and that the asserted claims of the '439 were invalid.  As a result of the ITC determination, the parties agreed to defer summary judgment and claim construction briefing, and to have the June 30, 2008 hearing taken off calendar.  (D.I. 181).  They have also agreed to schedule a mediation with Magistrate Judge Thynge.  (*Id.*).  The parties acknowledged that those agreements might well affect the September 22, 2008 trial date.  (*Id.*).  Indeed, given the stage of proceedings, and especially the status of summary judgment and claim construction, it does not appear that a September 22 trial is possible.

## II.    SUMMARY OF ARGUMENT

Microsoft seeks summary judgment on Defendants' inequitable conduct defense. As an initial matter, as this issue will be presented to the Court and not a jury, there is no reason for the Court to decide this issue without a full presentation of the disputed facts.

Nevertheless, the central issue concerns Mr. R. Burns Israelsen's failure to disclose the co-pending '289 and '439 patent applications and the Brennan prior art reference during his prosecution of the '289 patent. ████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████  ████████

████████████████████████████

The facts are that: 1) in October, 2001, Mr. Israelsen and a junior associate met with the examiner of the '439 application; 2) the meeting centered around the prior art Brennan patent, which the examiner of the '439 patent stated covered call routing based on a list of rules; 3) on March 24, 2002 (just five months after meeting with the '439 examiner) Mr. Israelsen drafted a response to an office action in connection with the '289 patent application and added *the limitation of call routing based upon rules* in order to get the '289 application allowed; and 4) Mr. Israelsen never informed the examiner of the '289 patent application of the existence of the co-pending '439 application or of the Brennan patent.  Mr. Israelsen has no explanation, other than a lack of memory, for his failure to do so.

Microsoft's brief obfuscates these facts.  To the extent Microsoft tries to dispute them, Microsoft merely establishes that this issue is not ripe for summary judgment. The co-pending applications were nearly identical to each other and the withheld Brennan patent was directly material to Mr. Israelsen's amendments to the '289 patent claims.  Based on the high materiality of the withheld references and Mr. Israelsen's refusal or inability to explain why he withheld the references, intent should be inferred.  *McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 913 (Fed. Cir. 2007)  (affirming district court's finding of inequitable conduct because of the high materiality of the withheld reference and the lack of a credible explanation from the prosecuting attorney for the nondisclosure).

### III.    STATEMENT OF FACTS

#### A.    The Prosecution Of The Liffick Patents

On March 24, 1999, Microsoft filed Application No. 08/275,689 (the "'439 application") titled "System And Method For User Affiliation In A Telephone Network," which resulted in the '439 patent. (Ex. 1 at MSAL 00528). On April 13, 1999 – less than a month after filing the '439 application – Microsoft filed application No. 09/291,693 (the "'289 application") titled "System and Method For Computerized Status Monitor and Use in a Telephone Network," which resulted in the '289 patent. (Ex. 2 at MSAL 01431).

The '289 and '439 applications are very similar. They share the same inventor, Stephen Liffick, the same assignee, Microsoft, and were co-pending for approximately three years. (Ex. 3 at cover; Ex. 4 at cover). In addition, the applications have overlapping specifications; the first 8 figures are identical, as is the text of the 2 patents, except for the inclusion of five additional columns of text in the '289 patent. (Ex. 3; Ex. 4; *see also* Ex. 5 (Microsoft ITC Post-Hrg Brief) at 37 (discussing the "similarity in patent specifications")).

As originally filed, the '289 and '439 applications each claimed what the other had not. The '439 application originally claimed call routing based on "rules" but did not yet require a subset of rules that processed calls "according to current activity of subscribers on the computer network or according to current activity of the user on the computer network."[1] (Ex. 1 (Prosecution History of the '439 Patent) at MSAL 00683). Conversely, as filed, the '289 patent application claimed routing calls based on the activity of a user's computer but did not claim routing based on "a set of pre-determined rules for determining when the second party is available to take a call from the first party." (Ex. 2 at MSAL 01465).

---

[1]    The technical differences between the computer related activity of the issued patents are set forth in ALE and Genesys' Markman brief.

Both applications were originally filed by the law firm of Seed and Berry LLP. (Ex. 1 at MSAL 00528; Ex. 2 at MSAL 01431). Shortly after the applications were filed, the law firm of Workman & Nydegger took over prosecution. (Ex. 1 at MSAL 00677-78; Ex. 2 at MSAL 01566-1571). R. Burns Israelsen and his partner Rick Nydegger prosecuted the '289 application. (Id. at MSAL 01580, 01581-01600). Mr. Israelsen and a junior associate, Carl Reed, prosecuted the '439 application. (Ex. 1 at MSAL 00678). Thus, Mr. Israelsen was on both the '439 and '289 patent prosecution teams.

Importantly, different patent examiners handled the applications. PTO Examiner Benny Tieu reviewed the '439 application. (Ex. 1, at MSAL 00525). PTO Examiner Creighton Smith reviewed the '289 application. (Ex. 2, at MSAL 01428).

After ALE submitted its opening expert reports in the related ITC hearing regarding materiality and inequitable conduct, Microsoft filed a terminal disclaimer in which it disclaimed any term of the '289 patent that would extend beyond the term of the '439 patent. (Ex. 6 at MSAL 05020213-14).

### 1.    Prosecution Of The '439 Patent And Mr. Israelsen

On July 30, 2001, Examiner Tieu issued an Office Action in the prosecution of the '439 application rejecting all pending claims. (Ex. 1 at MSAL 00586-87). Examiner Tieu rejected the claims under 35 U.S.C. § 102(b) as being anticipated by U.S. Patent No. 5,329,578 to Brennan et al. (the "Brennan patent"). (Id. at MSAL 00588).[2] He stated, inter alia, that "Brennan teaches ... process[ing] the incoming call in accordance with the user-selectable criteria." (Id. at MSAL 00588-89).

---

[2]    Some claims were rejected as being unpatentable over the Brennan patent in view of U.S. Patent No. 6,005,870 issued to Leung et al. (the "Leung patent") and U.S. Patent No. 6,041,108 to Brewster et al. (the "Brewster patent"). (Ex. 1 (Prosecution History of the '439 Patent) at MSAL 00592).

On October 17, 2001, Messrs. Israelsen and Reed met with Examiner Tieu to discuss the rejection. (*Id.* at MSAL 00678).

At the interview, Messrs. Israelsen and Reed told Examiner Tieu that the claimed invention of the '439 patent was different from Brennan because Brennan filters calls based on caller lists (*i.e.*, user-selectable criteria or "rules"), and the '439 invention filters calls based on caller lists *and* the current activity of a user on a computer network. (*See, e.g.*, Ex. 1 at MSAL 00694 (Office Action Response stating that "the claim amendments made by this paper are consistent with the proposals discussed, and the agreements reached, during the interview")).

Messrs Israelsen and Reed also proposed amended claims to Examiner Tieu that *added in* the computer activity limitation to make clear that the '439 invention uses rules and computer activity to process incoming calls. Examiner Tieu's Interview Summary states that the parties discussed Brennan and that "Examiner agreed that the proposed amended claims overcame the art of Brennan." (*Id.* at MSAL 00678). The claims as amended and issued required that the call filtering be, in addition to using rules, "according to current activity of subscribers... on the computer network." (*Id.* at MSAL 00697).

Thus, Messrs. Israelsen and Reed overcame Examiner Tieu's rejection of the '439 patent in view of Brennan by amending the claims to specifically recite filtering an incoming call

*"according to current activity of subscribers on the computer network or according to current activity of the user on the computer network."* (*Id.* at MSAL 00683) (emphasis added).

On December 28, 2001, Mr. Reed submitted Amendment A and Remarks in the prosecution of the '439 application. (*Id.* at MSAL 00682-00709). The Remarks section states that:

> [f]or at least these reasons and for the reasons discussed in the interview, Brennan does not teach or anticipate claim 1 as amended and claim 1 is believed to be in condition for allowance. For similar reasons, the other independent claims, namely claims 21, 28 and 38, are not taught or anticipated by Brennan and are in condition for allowance. The remaining dependent claims, which depend from one of the independent claims, are in condition for allowance for similar reasons.

(*Id.* at MSAL 00696).

On March 19, 2002, Examiner Tieu issued a Notice of Allowability of the '439 patent. (*Id.* at MSAL 00722).

### 2. Prosecution Of The '289 Patent And Mr. Israelsen

On October 2, 2001, Examiner Smith issued an office action rejecting all pending claims in the '289 patent as anticipated by U.S. Patent No. 6,175,619 ("the DeSimone patent"). (Ex. 2 (Prosecution History of the '289 Patent) at MSAL 01497-01499). He stated, *inter alia*, that the DeSimone patent discloses call routing based on whether the parties' computer status was busy:

> DeSimone discloses … [a] call processor will set up a telephone call from the calling party (102/103) to the called party (113/114) *based upon the status of the calling and called parties' computer status.* Both the calling and called parties' computer status will be "busy" in order that a telephone call can be set up between the parties.

(*Id.* at MSAL 01497 (emphasis added)).

6

On March 4, 2002, Mr. Israelsen responded to the office action by canceling the original claims and submitting new claims.  (*Id.* at MSAL 01581-01600).  He added new claim 59, which required that the call routing be based on rules:

> at the computer network, storing a set of pre-determined rules for determining when the second party is available to take a call from the first party;

(*Id.* at MSAL 01582).

In the remarks accompanying the new claims, Mr. Israelsen stated that the claimed invention, as reflected in the new claims, utilizes a user's computer activity *and* pre-determined rules to process calls:

> As claimed, applicant's invention requires receiving information from a telephone network that a first party from whom a call is originating desires to establish telephone communication with a second party. This information is communicated to a computer network (such as a server on the Internet) which is interfaced to the telephone network. The second party's activity on the network is monitored. The monitoring server also *stores at the computer network a set of pre-determined rules for determining when the second party is available to take a call from the first party.* Then, using the set of pre-determined rules to process i) the information received from the telephone network regarding the call being originated by the first part, and ii) information regarding the monitored activity of the user computer of the second party, a determination is made as to when the second party is available to take the call originated by the first party. Using the information processed at the computer network using the predetermined rules, the call originated by the first party through the telephone network to the second party is facilitated so that the call can be connected at the appropriate time through the telephone network.

(*Id.* at MSAL 01591-92 (emphasis added)).  Mr. Israelsen therefore, distinguished the '289 application from the prior art by emphasizing "storing a set of pre-determined rules for determining when the second party is available to take a call from the first party." (*Id.* at MSAL 01582).

7

Mr. Israelsen, however, *never told* Examiner Smith about the co-pending '439 application or the Brennan patent – both of which explicitly disclose call routing based upon pre-determined rules. (Ex. 1 (Prosecution History of the '439 Patent) at MSAL 00588-89). It is undisputed that Mr. Israelsen attended the October 17, 2001 meeting with Examiner Tieu regarding the Brennan Patent's impact on the patentability of the '439 patent. (*Id.* at MSAL 00678).

As a result, on March 26, 2002, Examiner Smith issued a Notice of Allowability of the '289 application. (Ex. 2 (Prosecution History of the '289 Patent) at MSAL 01606-07).[3]

## IV.    ARGUMENT

### A.    The Law Of Inequitable Conduct

A patent is unenforceable due to inequitable conduct when: (1) the applicant fails to disclose or misstates material information to the PTO during prosecution; and (2) this omission or misstatement is made with the intent to deceive the PTO examiner. *See, e.g., Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006). PTO Rule 56 makes clear that "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section." 37 C.F.R. § 1.56(a).

---

[3]    Notably, Mr. Israelsen never notified Examiner Tieu of the existence of the '289 application and the DeSimone patent – both of which disclose the same limitation that Microsoft relied upon to distinguish the pending claims of the '439 patent from the prior art, *i.e.*, filtering an incoming call "according to current activity of subscribers on the computer network or according to current activity of the user on the computer network." (Ex. 1 at MSAL 00683). As a likely result of this failure to disclose, on March 19, 2002, Examiner Tieu issued a Notice of Allowability for claims 1-51 of the '439 application, having no knowledge of either the co-pending '289 application or of the DeSimone patent. (*Id.* at MSAL 00722).

Determining whether information is material "may be judged by the 'reasonable examiner' standard." *McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 913 (Fed. Cir. 2007). Materiality "embraces any information that a reasonable examiner would substantially likely consider important in deciding whether to allow an application to issue as a patent." *McKesson*, 487 F.3d at 913. PTO Rule 56 states that the information is material if:

(1)   It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim, or

(2)   It refutes, or is inconsistent with, a position the applicant takes in:

(i)   Opposing an argument of unpatentability relied on by the Office, or

(ii)   Asserting an argument of patentability.

37 C.F.R. § 1.56(b). Moreover, "[i]nformation concealed from the PTO may be material even though it would not invalidate the patent." *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1364 (Fed. Cir. 2007).

The intent element of inequitable conduct requires that "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *Cargill*, 476 F.3d at 1364. Intent "need not be, proven by direct evidence. Instead, an intent to deceive is usually inferred from the facts and circumstances surrounding the conduct at issue." *Cargill*, 476 F.3d at 1364.

If the court finds that the threshold level of materiality and intent have been established by clear and convincing evidence, it must then "balance the equities to determine whether the patentee has committed inequitable conduct that warrants holding the patent unenforceable." *Cargill*, 476 F.3d at 1364; *see also McKesson*, 487 F.3d at 913. Under the balancing test, "[t]he more material the omission or the misrepresentation, the lower the level of

intent required to establish inequitable conduct, and vice versa." *Cargill*, 476 F.3d at 1364. In cases where the omission or misrepresentation is highly material, "less evidence of intent will be required in order to find that inequitable conduct has occurred." *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129, 1135 (Fed. Cir. 2007).

### B.    Mr. Israelsen Knew About The Brennan Patent And The '439 Application During Prosecution Of The '289 Patent

Microsoft states that Mr. Israelsen *"could not have cited"* the '439 application or the Brennan reference when he responded to the rejection in the '289 application because he was not "aware" of them. (D.I. 166 at 3) (emphasis added) ("Messrs. Nydegger and Israelsen also explained that they could not have cited art (such as the Brennan patent) in the '289 prosecution from the '439 Patent Prosecution because they did not know of such art at the relevant times."). This is incorrect. Mr. Israelsen was well aware of both the '439 application and the Brennan patent months before he drafted the response for the '289 application. It is undisputed that Mr. Israelsen flew from Salt Lake City to Washington, to meet with the examiner of the '439 patent *about* the Brennan patent 5 months before he drafted the response in the '289 application. (Ex. 1 at MSAL 00678).

Microsoft's argument, boiled down, is that Mr. Israelsen *forgot* about the Brennan patent and the '439 application at the time he drafted the response for the '289 application. However, this strains credulity when viewed in the context of the facts:

- On October 17, 2001, Mr. Israelsen attended an interview with the examiner for the '439 application where the only reference discussed was Brennan, which discloses rules-based routing;

- Mr. Israelsen attended this interview with a junior associate, whom he was responsible for supervising;

- Mr. Israelsen personally drafted the March 2002 response for the '289 application amending the claims to *require*

*rules-based call routing* and arguing that the '289 claims were patentable based on this amendment; and

- The '289 application and the '439 application are from the same inventor, have the same assignee (Microsoft, a large client of the firm) and are, even according to Microsoft, nearly identical in scope.

Put simply, it defies reason that Mr. Israelsen did not "know" of the '439 application and the Brennan reference at the time he drafted and filed the response in the '289 application. (*See* Ex. 2 (Prosecution History of the '289 Patent) at MSAL 01581-01605). It also strains credulity that Mr. Israelsen continued to "forget" about the '439 patent application and Brennan reference for the pendency of both applications. *See, e.g., Fox Indus., Inc. v. Structural Preservation Sys., Inc.*, 922 F.2d 801, 803 (Fed. Cir. 1991) ("The duty of candor extends throughout the patent's entire prosecution history."). █████████████████

████████████████████████████████████████████████████████

███████████████████████████████████ This evidence and testimony are more than sufficient to create a dispute of material fact sufficient to withstand summary judgment.

**C.    The Brennan Patent And The '439 Patent Were Material To The Prosecution Of The '289 Patent**

**1.    The Co-Pending Applications**

Microsoft argues that the Brennan patent and the '439 application were not material to the prosecution of the '289 application because, *inter alia*, the inventions of the '289 and '439 patents are different. (Beckmann Declaration at ¶ 15). This contradicts what Microsoft told Judge Luckern at the ITC hearing.

████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████



Microsoft's new expert (Dr. Beckmann) takes a contrary position.  In his declaration, Dr. Beckmann states that "[i]t is my opinion that *the '289 and '439 patents teach different inventions* with differing specifications." (Beckmann Dec. at ¶ 15 (emphasis added)).

Thus, for purposes of infringement, Microsoft told Judge Luckern that he need not "worry too much about the distinction as far as the claims" of the '289 and '439 patents are concerned. [4]  But for purposes of inequitable conduct, it says this Court should understand that the "the '289 and '439 patents teach different inventions."

Microsoft's argument that the '289 and '439 applications are not material to each other is further belied by the fact that Microsoft filed a terminal disclaimer disclaiming the term of the '289 patent that extended beyond the term of the '439 patent.  A terminal disclaimer is typically required by the Patent Office when, *inter alia*, the coverage of one patent overlaps so much with another patent such that the patent office requires that both patents expire on the same day.  (MPEP § 1490 ("A terminal disclaimer, when filed to obviate judicially created double

---

[4]     Microsoft relies upon the same features and functionality in the accused ALE products in support of its infringement contentions for *both* the '289 patent and the '439 patent.  (*See* Ex. 9 (Beckmann Initial Report) at 9-10, 31-32, Exhibits E-I).

patenting in a patent application or in a reexamination proceeding . . . must: . . . [i]nclude a provision that any patent granted on that application or any patent subject to the reexamination proceeding shall be enforceable only for and during such period that said patent is commonly owned with the application or patent which formed the basis for the judicially created double patenting.")). This is because, but for the disclaimer, the patentee would obtain patent protection for the same invention beyond the statutory grant of 20 years from the date of filing.

Microsoft states in its brief that it *voluntarily* filed a terminal disclaimer, but fails to mention that it did so *more than eight years after the patents were filed **and** after* ALE (1) asserted inequitable conduct by failure to disclose the existence of the applications to the respective examiners, (2) deposed the prosecuting attorneys and (3) served an expert report detailing Microsoft's failures. (Ex. 6 (Terminal Disclaimer of '289 Patent) at MSAL 05020213-14). Thus, although Microsoft refers to the disclaimer as *voluntary*, the circumstances surrounding its filing speak volumes about materiality.

Moreover, the Federal Circuit has made abundantly clear that a co-pending application that could *conceivably* give rise to a double patenting rejection is material. *See Akron Polymer Container Corp. v. Exxel Container, Inc.*, 148 F.3d 1380, 1382 (Fed. Cir. 1998) (Holding that a second-filed application was highly material to the prosecution of the first-filed application, because "it could have conceivably served as the basis of a double patenting rejection."); *McKesson*, 487 F.3d at 925 ("[T]he district court's stated basis for finding materiality – the conceivability of a double patenting rejection – is not incorrect because allowance of the three-node system of the '372 patent claims plainly gives rise to a **conceivable** double patenting rejection...") (emphasis in original)).

In any event, Microsoft's filing of a terminal disclaimer cannot sanitize Mr. Israelsen's inequitable conduct. *See, e.g., Li Second Family Ltd. v. Toshiba Corp.*, 231 F.3d 1373, 1381 (Fed. Cir. 2000) (holding that submission of material information in a related proceeding after issuance of the asserted patent "had no bearing" on the applicant's conduct during prosecution of the asserted patent); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1182 (Fed. Cir. 1995) (holding that references cited during re-examination could not cure failure to disclose such references during original prosecution because "the references were not cited when they should have been"); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 882 F.3d 1556, 1564 (Fed. Cir. 1989) ("It is well settled that, in the reverse case of inequitable conduct during prosecution of the original application, reissue is not available to obtain new claims and thereby rehabilitate the patent.").

Moreover, with respect to co-pending applications of the same inventor, the Manual of Patent Examination and Procedures ("MPEP") instructs that:

> *if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact* __*must*__ *be disclosed to the examiner of each of the involved applications.*

MPEP § 2001.06(b) (emphasis added). There is no option.[5]

---

[5] Microsoft also argues that because the examiner of the '289 application did not cite the Brennan patent and the examiner of the '439 application did not cite the DeSimone patent, the examiners "apparently agreed" with Microsoft's conclusion that these references were not material. There is no evidence whatsoever that the examiners had independent knowledge of any of the references cited in either application, and arguments of this sort (guessing or relying on what the examiners may or may have not known) have been repeatedly rejected by the Federal Circuit. (*See Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1573 (Fed. Cir. 1983) (overturning a ruling of no inequitable conduct because "the record is devoid of any documentation showing that the PTO was told that any misrepresentations had been made or precisely where they had been made [and s]uch express disclosure was necessary to meet [the applicant's] duty, and would have alerted the PTO to the necessity of reconsidering rejections which had been withdrawn as a result of those submissions"); *see also* MPEP § 2001.06(b) ("[T]he

14

## 2.    The Brennan Patent

The Brennan patent discloses rules-based call routing, the very amendment added

to the '289 application to overcome a prior art rejection.  A cursory comparison of the Brennan

patent with the '289 patent reveals that they both refer to the same type of rules-based call

routing.

The Brennan patent states:

> *Some subscribers may wish to change, at regular intervals, the*
> *way their calls are managed, e.g. only emergency calls after 11*
> *p.m. weekdays and after midnight on weekends.* ... Multiple time
> slots can be specified, e.g. Monday-Friday 0900-1700 hours,
> Saturday 1030-2330 hours, and "other" which defines what
> happens for non-specified time slots.

(Ex. 10, at 6:46-7:1).

The '289 patent states:

> The potential callee can specify call processing criteria ... *such as*
> *accepting or blocking calls during certain times of day* or during
> certain periods of activity, such as when the user may be otherwise
> occupied and unwilling to accept an incoming call.

(Ex. 3, at 2:8-15).

And Microsoft points to identical "rules" in the accused ALE products in

connection with its infringement allegations.  ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

In addition to the fact that Mr. Israelsen amended the claims of the '289 patent to

require the use of rules *to overcome* Examiner Smith's rejection.  (Ex. 2 at MSAL 01591-92).

Mr. Israelsen also argued, in support of his amendment, that "[t]he monitoring server also stores

applicant has the burden of presenting the examiner with a complete and accurate record
to support the allowance of letters patent.")).

15

at the computer network *a set of pre-determined rules for determining when the second party is available* to take a call from the first party." (Ex. 2 at MSAL 01591-92) (emphasis added).

As such, the Brennan patent falls squarely within the definition of material information that "refutes, or is inconsistent with, a position the applicant takes in . . . [a]sserting an argument of patentability." 37 C.F.R. § 1.56(b); *see McKesson*, 487 F.3d at 908, 914, 918-19 (affirming the district court's conclusion that the omission of prior art was "highly material" where the prior art Baker patent "include[d] three-node communication – the very type of communication Schumann used to differentiate the claims of the '716 patent from the prior art."). Had Examiner Smith known about the Brennan patent, Mr. Israelsen's distinguishing amendment requiring "stor[ing] at the computer network a set of predetermined rules" and using "the set of predetermined rules" to process a telephone call would likely have been rejected. (Ex. 2 at MSAL 01582, 01591-92).[6]

In view of the foregoing, the '439 application and the Brennan patent were highly material to the prosecution of the '289 patent.

### D.    The Evidence Is Sufficient To Infer Intent To Deceive

As set forth above, during prosecution of the '289 patent application, Mr. Israelsen overcame Examiner Smith's rejection of the original claims by drafting a new set of claims that specifically recited "storing a set of pre-determined rules" to process telephone calls. (Ex. 2 at MSAL 01582, 01591-92). Mr. Israelsen further argued to Examiner Smith that the new claims were patentable over the prior art *because* the claims required "stor[ing] at the computer

---

[6]    Notably, during the ITC proceeding, Microsoft construed the term "predetermined rules" from the '289 patent to mean user-selectable criteria to control call processing. (Ex. 12 (Microsoft's ITC Interrogatory Responses, dated July 3, 2007) at 4.)

network a set of predetermined rules" and using "the set of predetermined rules" to process a telephone call. (*Id.*).

When Mr. Israelsen made those arguments with regard to the '289 patent application, *he was aware of the Brennan patent, which discloses rules-based call routing, and the '439 patent application.* (Ex. 1 at MSAL 00588). ████████████

████████████████████████████████████████████████████████████████

Under similar facts, in *McKesson v. Bridge Medical*, the Federal Circuit found intent to deceive where the withheld references were, like the references here, highly material and the only explanation the prosecuting attorney could conjure was that he could not remember the prosecution.

In *McKesson*, the prosecuting attorney failed to disclose to the patent examiner in one application the existence of a co-pending application (*that the same examiner was handling*) and a reference that resulted in the cancellation of certain claims in the co-pending application. The prosecuting attorney stated that he had no recollection of prosecuting the application where the prior art and co-pending application were not disclosed and therefore had no explanation for why it was not disclosed.  The Federal Circuit, affirming the district court's finding of intent, held that intent could be inferred in these circumstances, and that intent may be inferred where there was circumstantial evidence of intent "coupled with the lack of any credible explanation for nondisclosure." *McKesson*, at 487 F.3d at 919.

Just as in *McKesson*, the '439 application was co-pending at the time of the '289 application and the Brennan patent was used to reject *all* the claims of the '439 patent. ███



The effect of his lack of candor is particularly significant here, because, unlike in *McKesson*, there were *different* examiners reviewing the co-pending '289 and '439 applications.

Hence, the circumstantial evidence from which one could reasonably infer intent to deceive is abundant. Issues of Mr. Israelsen's credibility are paramount.

Mr. Israelsen used the very same claim limitation disclosed in Brennan ('439) to distinguish prior art in the '289 application.

A moving party is entitled to judgment as a matter of law *only* when there is *no* genuine issue as to any material fact. FED. R. CIV. P. 56(c). Moreover, when, as in this case, "a patentee [is] facing a high level of materiality and clear proof that it knew or should have know of that materiality," it "can expect it difficult to establish 'subjective good faith' sufficient to prevent the drawing of an inference of intent to mislead." *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257 (Fed. Cir. 1997).

Microsoft argues that there would be no reason for Mr. Israelsen to hide the existence of the co-pending applications from the respective examiners because the "end-game" of non-disclosure would merely be an extra three weeks of patent term for the '289 patent

(meaning that the examiners might have only issued a double patenting rejection). (D.I. 166 at 16). This is incorrect. The "end-game" of non-disclosure was two patents. Had Examiner Smith known about the '439 application and the Brennan patent and had Examiner Tieu known about the '289 application (and the DeSimone patent, *see, supra,* fn4) (which they should have), the consequences were for the *Examiners* to decide, not Mr. Israelsen. *See e.g., GFI, Inc. v. Franklin Corp.,* 265 F.3d 1268, 1274 (Fed. Cir. 2001) ("[I]t was incumbent on [the patentee] to disclose the [information] to the examiner and not to unilaterally make a determination that [it] was not prior art.").

Indeed, given the significant materiality of the co-pending applications (as demonstrated by Microsoft's litigation-induced terminal disclaimer), Mr. Israelsen's knowledge of the co-pending applications (including the Brennan patent), and his lack of any good faith explanation for the failure to disclose, it is proper to infer intent to deceive the PTO. *See Cargill,* 476 F.3d at 1364; *McKesson,* at 487 F.3d at 919. And under these circumstances, the Federal Circuit has held that intent can and should be inferred.

## V.    CONCLUSION

For the foregoing reasons, ALE and Genesys respectfully request that the Court deny Microsoft's motion for summary judgment on their inequitable conduct defense.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com
*Attorneys for Defendants*
*Alcatel-Lucent Enterprise and*
*Genesys Telecommunications Laboratories, Inc.*

*Of Counsel:*

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834
(212) 906-1200

David A. Nelson
LATHAM & WATKINS LLP
233 South Wacker Drive
Suite 5800
Chicago IL 60606
(312) 876-7700


June 20, 2008
2376056

20

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on June 20, 2008 I electronically filed

the foregoing document, which will send notification of such filing(s) to the following:

Thomas L. Halkowski, Esquire
FISH & RICHARDSON P.C.

I also certify that copies were caused to be served on June 20, 2008 upon the

following in the manner indicated:

**BY ELECTRONIC MAIL
and HAND DELIVERY**

Thomas L. Halkowski, Esquire
FISH & RICHARDSON P.C..
919 N. Market Street
Suite 1100
Wilmington, DE 19801

**BY ELECTRONIC MAIL**

Ruffin B. Cordell, Esquire
Linda Liu Kordziel, Esquire
FISH & RICHARDSON P.C.
1425 K. Street, N.W.
11th Floor
Washington, DC 20005

John E. Gartman, Esquire
FISH & RICHARDSON P.C.
12390 EL Camino Real
San Diego, CA 92130


Jack B. Blumenfeld (#1014)

CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2008 I electronically filed the foregoing document, which will send notification of such filing(s) to the following:

Thomas L. Halkowski, Esquire
FISH & RICHARDSON P.C.

I also certify that copies were caused to be served on June 27, 2008 upon the following in the manner indicated:

**VIA ELECTRONIC MAIL**
**and HAND DELIVERY**

Thomas L. Halkowski, Esquire
FISH & RICHARDSON P.C.
919 N. Market Street
Suite 1100
Wilmington, DE  19801


**VIA ELECTRONIC MAIL**

Ruffin B. Cordell, Esquire
Linda Liu Kordziel, Esquire
FISH & RICHARDSON P.C.
1425 K. Street, N.W.
11th Floor
Washington, DC 20005

Jack B. Blumenfeld (#1014)