IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICROSOFT CORP.,<br>　　　Plaintiff,<br><br>v.<br><br>ALCATEL LUCENT ENTERPRISE<br>and<br>GENESYS TELECOMMUNICATIONS<br>LABORATORIES, INC.,<br>　　　Defendants. | Civil Action No. 07-090-SLR<br><br>**PUBLIC VERSION** |

## MICROSOFT'S REPLY IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT

**FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607

John E. Gartman
12390 El Camino Real
San Diego, CA 92130

Ruffin B. Cordell
Linda Liu Kordziel
Indranil Mukerji
William Sekyi
Kfir Levy
Kori Anne Bagrowski
Robert P. Courtney
1425 K Street N.W., Suite 1100
Washington D.C. 20005

**ATTORNEYS FOR PLAINTIFF
MICROSOFT CORPORATION**

REDACTED DATE: July 8, 2008
ORIGINAL DATE: June 30, 2008

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

    A.    Mr. Israelsen Was Not Aware Of The Brennan Reference And The '439 Application During His Prosecution Of The '289 Patent..............................................................................................................2

    B.    The Brennan Reference And The '439 Patent Application Would Not Have Been Material To The Prosecution Of The '289 Patent ................................................................................................4

        1.    Dr. Beckmann's Declaration Is Consistent With Microsoft's Position ...........................................................................5

        2.    The '289 and '439 Patent Applications Were Not Material to Each Other..............................................................................6

        3.    Brennan Would Not Have Been Material to the '289 Application...........................................................................................7

    C.    There Is No Evidence Of Deceptive Intent.........................................................9

CONCLUSION..............................................................................................................................12

# TABLE OF CITATIONS

*Eli Lilly & Co. v. Zenith Goldline Pharms, Inc.*
  471 F.3d 1369 (Fed. Cir. 2006) .......................................................................................... 4

*Hebert v. Lisle Corp.*
  99 F.3d 1109 (Fed. Cir. 1996) .......................................................................................... 10

*McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*
  487 F.3d 897 (Fed. Cir. 2007) .................................................................................. *passim*

*Molins PLC v. Textron*
  48 F.3d 1172 (Fed. Cir. 1995) ............................................................................................ 2

*Quad Environmental Techs. Corp. v. Union Sanitary Dist.*
  946 F.2d 870 (Fed. Cir. 1991) ............................................................................................ 7

*Therma-Tru Corp. v. Peachtree Doors, Inc.*
  44 F.3d 988 (Fed. Cir. 1995) .............................................................................................. 4

*Union Pacific Resources Co. v. Chesapeake Energy Corp.*
  236 F.3d 684 (Fed. Cir. 2006) .......................................................................................... 10

## **PRELIMINARY STATEMENT**

Plaintiff Microsoft Corporation ("Microsoft") submits this reply brief in support of its summary judgment motion (D.I. 165, 166 et seq.) directed to the inequitable conduct defense and counterclaim alleged by Alcatel-Lucent Enterprise ("ALE") and Genesys Telecommunications Laboratories, Inc. ("Genesys") (ALE and Genesys collectively "Defendants") against Microsoft's asserted U.S. Patent Nos. 6,421,439 ("the '439 Patent") and 6,430,289 ("the '289 Patent").

ALE and Genesys have now limited their inequitable conduct claim to only the '289 Patent, and have targeted their accusation only at alleged failures to disclose by patent attorney Burns Israelsen. Except for a passing, cryptic footnote (see D.I. 183 ("Defs.' Opp.") at p. 8, n. 3), neither Defendant offers any meaningful opposition to Microsoft's motion insofar as the '439 Patent is concerned. There is, therefore, no reason to delay granting summary judgment that the '439 Patent is enforceable.

Defendants' '289 Patent inequitable conduct claim now turns on resolving two questions: (1) whether Mr. Israelsen improperly withheld the Brennan reference (U.S. Patent No. 5,329,578) during prosecution of the '289 Patent with an intent to deceive the Patent Office; and (2) whether Mr. Israelsen improperly withheld the existence of the co-pending '439 Patent application during prosecution of the '289 Patent with an intent to deceive. [See Defs.' Opp. at 1 ("[t]he central issue concerns Mr. R. Burns Israelsen's failure to disclose the co-pending '289 and '439 patent applications and the Brennan prior art reference during prosecution of the '289 patent.").]

Both inquiries are answered in the negative, for at least three independently sufficient reasons. First, the uncontroverted evidence shows that Mr. Israelsen never knew enough about

1

the Brennan reference or the '439 Patent application to disclose either to the Patent Office during the '289 Patent prosecution (and what little he knew faded by the time he was involved in the '289 prosecution). Second, neither the Brennan reference nor the '439 application would have been material to the prosecution of the '289 Patent application. Third, there is a complete lack of evidence that Mr. Israelsen intended to deceive the Patent Office; indeed, what evidence there is of Mr. Israelsen's state of mind indicates he acted in good faith.

Since ALE and Genesys have failed to carry their burden of showing inequitable conduct during prosecution of the '289 Patent by clear and convincing evidence, their inequitable conduct claim is ripe for disposal by summary judgment.

## ARGUMENT

### A. Mr. Israelsen Was Not Aware Of The Brennan Reference And The '439 Application During His Prosecution Of The '289 Patent.

For Mr. Israelsen to have committed a wrong by withholding the Brennan reference and the '439 Patent application, he must have known (at least known enough to make a meaningful assessment on materiality) about these items. See Molins PLC v. Textron, 48 F.3d 1172, 1178 (Fed. Cir. 1995). There is no record evidence that comes close to establishing such knowledge on Mr. Israelsen's part.

The evidence shows the full extent of Mr. Israelsen's involvement in the '439 Patent prosecution – the only possible source of his knowledge – was his attendance at an in-person interview, conducted by his colleague (Mr. Reed) with the '439 examiner, that took place more than five months before Mr. Israelsen's allegedly deficient submission in the '289 Patent prosecution. [Ex. O[1] (Israelsen Depo.) at 26:11-15; 36:18-37:4; 149:12-24; 177:1-22.] Thus, Mr.

---

[1] All exhibits referenced as "Ex. ___" are exhibits either to the May 9, 2008 "Declaration of Thomas L. Halkowski in Support of Microsoft Corporation's Motion for Summary

2

Israelsen's entire exposure to the '439 prosecution (including the Brennan reference) amounted to those minutes he spent attending the interview. There is no evidence that Mr. Israelsen, during the relevant time periods, ever read the '439 Patent application or the Brennan reference. Mr. Israelsen testified that he (i) did not conduct any substantial preparation for the interview; (ii) attended the interview mainly to evaluate the performance of Mr. Reed; and (iii) was available at the interview in case any unexpected issues arose. [Ex. O (Israelsen Depo.) at 26:11-15; 36:18-37:4; 149:12-24; 177:1-22.] As Mr. Israelsen has explained, at "interviews I [Israelsen] would have in effect an observer's role to continue to increase our level of comfort with what Carl's [Reed's] doing and kind of a facilitator, docket manager, to ensure the work was being done." [Ex. O (Israelsen Depo.) at 255:15-256:25.] Mr. Israelsen did not attend the interview to argue about rules-based call routing or computer activity; he attended to make sure his colleague had developed to the point of flying solo. The evidence also shows that Mr. Israelsen was not involved in the office action response Mr. Reed later filed based on the interview; in essence, his involvement with the '439 Patent prosecution ended the moment he walked out of the interview. [Ex. O (Israelsen Depo.) at 26:11-15; 149:12-24; 177:1-22.]

From that limited involvement, Defendants imbue Mr. Israelsen with detailed knowledge of both the Brennan reference and the '439 Patent application, speculating that "it defies reason" to find otherwise. Yet, given the evidence, such a finding is the only supportable conclusion. At the relevant time, Mr. Israelsen was handling five to six patent matters per day. [Ex. O (Israelsen Depo.) at 170:17-24.] Further, in the same timeframe, he was attending thirty to forty examiner interviews per year. [Id. at 227:12-20.] Given Mr. Israelsen's marginal participation in the '439

---

Judgment of No Inequitable Conduct" (which comprise Exs. A through N), or to the June 30, 2008 "Reply Declaration of Thomas L. Halkowski" (which comprise Exs. O through S).

3

examiner interview (his only involvement in the '439 Patent prosecution), and given that he likely handled hundreds of patent matters and more than a dozen examiner interviews during the five months elapsed from the date of that interview until the date he filed the response in the '289 Patent prosecution, it is not at all surprising that Mr. Israelsen lacked awareness at the time he filed the '289 response of anything discussed during the '439 interview, or even of the existence of the '439 Patent. And that is precisely what Mr. Israelsen has stated, under oath, and that is precisely what the International Trade Commission found after a thorough examination of the same inequitable conduct allegation by ALE.

Without knowledge, there was nothing for Mr. Israelsen to disclose. Moreover, there is no evidence that Mr. Israelsen made any conscious decision to withhold the Brennan reference and the '439 Patent application from the '289 Patent examiner. See Therma-Tru Corp. v. Peachtree Doors, Inc., 44 F.3d 988, 996 (Fed. Cir. 1995) ("It is necessary that the failure [to disclose] be based on *affirmative material withholding* for the purpose of misleading or deceiving the patent examiner.") (emphasis added); See Eli Lilly & Co. v. Zenith Goldline Pharms., Inc., 471 F.3d 1369, 1382 (Fed. Cir. 2006) ("Gross negligence alone is insufficient to justify an inference of intent to deceive the PTO.") (citations omitted). There is no reason to allow Defendants' aspersions, cast without any evidence, to go any further.

### B. The Brennan Reference And The '439 Patent Application Would Not Have Been Material To The Prosecution Of The '289 Patent.

Even if Defendants are believed, and Mr. Israelsen somehow absorbed the merits of the Brennan reference and the '439 Patent application while sitting in the interview, and affirmatively decided not to cite this information, their inequitable conduct charge would still fail because neither item would have been material to the prosecution of the '289 Patent. Defendants argue principally that the Brennan reference and the '439 Patent application are material because

4

of some facial similarities between the '439 and '289 Patents. From this, they construct the unsupported maxim that whatever is material to the '439 Patent automatically is material to the '289 Patent. Even if the flawed premise were accepted, neither the Brennan reference nor the '439 Patent application satisfies the legal definition of materiality.[2]

### 1. Dr. Beckmann's Declaration Is Consistent With Microsoft's Positions.

In an effort to draw similarities between the '289 and '439 Patents, Defendants first argue that Dr. Beckmann's sworn expert testimony, that the inventions claimed in the '289 and '439 patent are different, somehow contradicts Microsoft's arguments presented at the International Trade Commission. This argument is unfounded, and based on a truncated portion of testimony from Microsoft's expert (Jack Chang) before the International Trade Commission. In the excerpt cited by Defendants, Administrative Law Judge Luckern was clarifying that the standard for one of ordinary skill in the art was consistent between the '289 and '439 patents, that the interpretation of overlapping claim terms was also consistent, and that a distinction was not to be drawn between the interpretation of identical claim terms. [Ex. P (ITC Hr'g Tr.) at 416:5-418:14.]

Microsoft did not represent to the ITC that the '289 and '439 patents claimed the same inventions. Instead, under direct questioning by Judge Luckern, Microsoft's expert explained that the '289 and '439 inventions were different. [Ex. P (ITC Hr'g Tr.) at 413:21-416:4.] Microsoft's expert also acknowledged the differences in the patents, and referenced the figures in the patent to illustrate. [Ex. P (ITC Hr'g Tr.) at 413:21-416:4.] Moreover, after reviewing the

---

[2] Incidentally, ALE's technical expert, Mr. Hyde-Thomson, did not offer any opinion regarding materiality with respect to ALE's inequitable conduct defense during the ITC hearing. [Ex. P (Hr'g. Tr. 1458:16-18.]

evidence, Judge Luckern found that "the specifications of the two patents contain substantial differences." [Ex. Q (Fin. and Init. Rec. Init. Det.) at 33.]

    2.    <u>The '289 and '439 Patent Applications Were Not Material to Each Other.</u>

Beyond miscasting Microsoft's ITC testimony, Defendants gloss over numerous critical technical differences between the '439 and '289 patents, and quote misleading portions of the record in their haste to allege that the '289 and '439 applications were material to each other. To begin with, the plain language of the '289 and '439 patent claims demonstrates that each is directed to distinct subject matter. While both generally address call routing, the '289 patent is directed to call routing based on the activity <u>of a computer</u>, where the '439 patent is directed to call routing based on the activity <u>of a person</u>. [See Ex. B, '289 patent col.14 l.1–col.18 l.18 (specifically describing technologies for <u>monitoring computer activity</u>, not mentioned in the '439 specification).] And, as Defendants themselves note, extensive additional matter in the '289 patent is specifically directed to monitoring <u>computer activity</u>. [See id.; see also Defs.' Opp. 3 (noting five additional columns of text and two additional figures in the '289 patent, but dismissing them, simply calling the specifications "overlapping").] These differences are so crucial, that Defendants rely heavily upon them in their own summary judgment papers moving for non-infringement of the '439 and '289 Patents. [See, e.g., D.I. 156, 160.]

Defendants, however, gloss over these distinctions with out-of-context quotes from the ITC. See supra. Defendants also mischaracterize Microsoft's positions concerning ALE's infringement of the two patents, writing that "Microsoft relies on the same features and functionality in the accused ALE products in support of its infringement contentions for **both** the '289 patent and the '439 patent." [Defs.' Opp. at 12 n.4.] In reality, as the law of infringement requires, Microsoft has pointed to <u>specific</u> features of the accused products that practice the

6

claims. In the case of the '439 patent, Microsoft has shown how the accused products route calls based on <u>user</u> activity; for the '289 patent Microsoft has shown routing based on <u>monitored computer activity</u>.

Finally, Defendants' proposal that "[a]s originally filed, the '289 and '439 applications each claimed what the other had not" is as unsupportable as it is remarkable. [<u>See</u> Defs.' Opp. at 3.] Defendants seem to believe that the '289 and '439 applications were exact complements to each other, aimed at essentially the same subject matter. In fact, from the beginning the '439 patent was directed to call routing based on <u>user</u> activity, while the '289 patent was based on routing according to <u>computer</u> activity. [<u>Compare</u> Ex. R, '439 PH, Application (Mar. 24, 1999) (reciting 51 claims, all requiring <u>user</u>-selectable criteria, stored on a computer network) <u>with</u> Ex. S, '289 PH, Application (Apr. 13, 1999) (reciting 58 claims, all requiring call routing based on <u>computer</u> network status data).] The refinements to the claims made during each application's prosecution focused upon the essential idea of each patent.

Defendants also place great significance on Microsoft having filed a terminal disclaimer in the '289 Patent, which limits the patent term of the '289 Patent to that of the '439 Patent (originally, the '289 Patent would have expired three weeks after the '439 Patent). Defendants' reliance on Microsoft's terminal disclaimer is misplaced since, as a matter of law, the filing of a terminal disclaimer is not an admission that the two subject patents contain patentably indistinct claims. See <u>Quad Environmental Techs. Corp. v. Union Sanitary Dist.</u>, 946 F.2d 870, 873 (Fed. Cir. 1991).

    3.    <u>Brennan Would Not Have Been Material to the '289 Application</u>

Defendants' assertion that "both [Brennan and the '289 patent] refer to the same type of rules-based call routing" is wrong and, as such, unsupported by the record. [<u>See</u> Defs.' Opp. 15

7

(selectively quoting the Brennan and '289 specifications, and never discussing the '289 Patent's claims).] In fact, the routing taught by Brennan is markedly distinct from the '289 patent, and renders Brennan immaterial to examination of the '289 Patent.

Microsoft has already shown that Brennan teaches nothing about using activity of a computer or computer network as a basis for call routing. [D.I. 163 at 17.] Such incorporation of computers and computer networks into call routing is at the very heart of the invention claimed by the '289 patent, and has been since first filing. [See, e.g., Ex. S, '289 PH, Application (Apr. 13, 1999).] And though the '289 application's claims evolved over time, at no point did the patentee excise these core features from his claim. Defendants gloss over this distinction by comparing four brief lines of the '289 patent's specification to six from Brennan. [Defs.' Opp. at 15.] These selective quotes from the two patents' specifications are insufficient to draw any conclusions about their overall subject matter. Yet, Defendants fail to offer <u>any</u> additional citation.

In particular, Brennan includes no discussion of monitoring the activity of a computer on a computer network, or of routing a call based on such activity. [See, e.g., Ex. H., Brennan col.4 ll.19–35 (discussing call routing based only on a profile set by a user using his telephone).] Instead, Brennan simply teaches the storage of subscriber profiles on a "node" in a telephone system, and routing calls based on those profiles. [See, e.g., id. col.13 ll.4–16 (describing how a subscriber of the disclosed system sets a "subscriber profile" using his telephone), figs.3a–3e (same), col.4 ll.19–35 (stating that a call will be routed by the telephone network, with no mention of monitoring computer activity), col.12 ll.38–55 (discussing call routing based on whether the callee has "accepted" a call using his telephone keypad).] The approach taken by

8

Brennan is dramatically different from the '289 patent's reliance on monitored computer activity; as such, the Brennan reference is not material to the invention of the '289 application.

Defendants make much of the fact the '289 patentee added wording about "pre-determined rules" to his claims. [Defs.' Opp. at 15–16.] Even assuming without accepting that Brennan taught some "pre-determined rules," it plainly did not teach any of the other limitations of the '289 patent, such as the key "monitoring activity of a user computer" limitation. Compare McKesson Info. Solutions, Inc. v. Bridge Med., Inc., 487 F.3d 897, 918-19 (Fed. Cir. 2007) (finding inequitable conduct where the undisclosed reference taught the very technology ("three-node communication") the applicant was claiming).

Moreover, and contrary to Defendants' representation that "there is no evidence whatsoever" on the point, Examiner Smith (the examiner of the '289 Patent) was in fact well-aware of Brennan. He encountered it on at least nine separate occasions[3], including twice before ever receiving Mr. Israelsen's December 28, 2001 response in the '289 Patent prosecution. If the Brennan reference were as crucial as Defendants imply, Examiner Smith had every opportunity to utilize it and could have applied it to the '289 Patent application. Thus, the evidence shows that not just a reasonable examiner, but Examiner Smith himself, did not believe Brennan to be material.

Therefore, in addition to not being able to prove knowledge on Mr. Israelsen's part, Defendants also cannot prove materiality of the allegedly omitted information.

C. **There Is No Evidence Of Deceptive Intent.**

---

[3] According to searches conducted on Patent Office public records at www.uspto.gov, the Brennan reference has been cited in the following U.S. Patents issued by Examiner Smith: 7,085,363; 6,947,544; 6,813,345; 6,728,360; 6,404,874; 6,345,095; 6,327,354; 6,075,854; and 5,933,487. Of these, the last two were issued prior to December 28, 2001. Moreover, Defendants know this because Examiner Smith issued an Alcatel USA Sourcing patent citing Brennan more than a year before Mr. Israelsen filed his response.

9

Even if Defendants were somehow able to conjure evidence of knowledge and materiality, and a conscious decision to withhold, it still would be insufficient to support an inequitable conduct finding here absent at least some evidence of deceptive intent. See Union Pacific Resources Co. v. Chesapeake Energy Corp., 236 F.3d 684, 693 (Fed. Cir. 2006) (quoting Hebert v. Lisle Corp., 99 F.3d 1109, 1116 (Fed. Cir. 1996)) ("Intent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent.")

Defendants readily concede they have no direct evidence of deceptive intent. Faced with constructing a circumstantial case, they attempt to shoehorn the facts of the present case into those of a recent Federal Circuit case, McKesson Info. Solutions, Inc. v. Bridge Med., Inc., 487 F.3d 897 (Fed. Cir. 2007), arguing that the undisclosed references are so material that intent to deceive can be presumed. McKesson, however, is distinguishable from Mr. Israelsen's situation, for several critical reasons.

In McKesson, the Federal Circuit affirmed an inequitable conduct finding after noting that "[t]he issues of materiality and intent are fact-driven." Among the facts the Federal Circuit relied upon in McKesson are:

- both applications were being prosecuted by the same patent attorney, McKesson, 487 F.3d at 904;

- it was "not a case of mistake or negligence – the prosecuting attorney testified that he would make all of the same nondisclosure decisions today if prosecuting the same applications today", id. at 901;

- up to the point that the non-disclosure took place, the patent attorney was citing the same prior art in both applications, id. at 910;

- the undisclosed reference was so material to the first application that it forced the patent attorney to cancel all of that application's claims, id.; and

- the patent attorney's first act of (non)disclosure came only seventeen days after he discussed the undisclosed reference with the patent examiner, id. at 909.

*None* of the above facts exist in the present case:

- Mr. Reed was responsible for prosecuting the '439 Patent, and Messrs. Israelsen and Nydegger were responsible for prosecuting the '289 Patent, [Ex. E (Reed Depo.) at 40:6-20; Ex. O (Israelsen Depo.) at 26:11-15; 36:2-37:4; 149:12-24; 177:1-22; Ex. G (Nydegger Depo.) at 13:10-14; 152:16-20; 192:8-18];

- Mr. Israelsen candidly admits that, had he known of the Brennan reference and the '439 Patent application, he probably would have cited them in the '289 Patent prosecution out of an abundance of caution [Ex. O (Israelsen Depo.) 108:1-109:24; 110:12-112:2];

- There was no pattern of citing identical prior art in the '439 and '289 applications [Ex. R '439 PH, Application (Mar. 24, 1999); Ex. S '289 PH, Application (Apr. 13, 1999)];

- The Brennan reference was not nearly so material to the '439 Patent application as the undisclosed reference in McKesson, because the rejection over Brennan only necessitated some amending of the existing '439 claims (again, not by Mr. Israelsen) [Ex. C (Pros. Hist. '439 patent) at MSAL00682-696]; and

- Mr. Israelsen's alleged non-disclosure came five months after he attended Mr. Reed's examiner interview in the '439 prosecution. [Ex. O (Israelsen Depo.) at 26:11-15; 36:18-37:4; 149:12-24; 177:1-22].

The last distinction is perhaps the most critical. As discussed supra, Mr. Israelsen's lack of knowledge of both Brennan and the '439 application and non-substantive role in the '439 prosecution, when coupled with the demanding nature of his practice and the substantial passage of time, all militate against implying deceptive intent. In contrast, in McKesson, there was a "mere seventeen-day gap" between the prosecuting attorney's affirmative representation that none of the prior art references disclosed the "three-node approach to communications" as provided in the claimed invention, and his examiner interview in which he discussed the prior art teaching the "three-node approach to communications" as claimed in a co-pending application.

11

McKesson, 487 F.3d at 910. The district court inferred intent largely based on these assertions to the Patent Office that occurred in such a short lapse of time: "Schumann could not have (or certainly should not have) missed Baker's significance [since] it rendered his recent statement to Examiner Trafton untrue, further confirming that intent to deceive should be inferred." McKesson, 487 F3d at 909. The Federal Circuit also noted this short amount of time was critical in inferring intent from the particular facts of McKesson:

> The mere seventeen-day gap is important, however, because it bolsters the district court's inferences that Schumann knew or should have known of Baker's materiality to the '278 application, and that he intentionally withheld Baker from Examiner Trafton with deceptive intent.

McKesson, 487 F3d at 910.

In this case, no reasonable factfinder could find that the non-disclosure of non-material information (of which Mr. Israelsen had, at best, marginal awareness) five months after hearing it mentioned during an interview for which Mr. Israelsen was not responsible in a prosecution he was not handling, to constitute clear and convincing evidence from which an intent to deceive on Mr. Israelsen's part could be inferred.

## CONCLUSION

For the foregoing reasons, and those set forth in Microsoft's moving papers, Microsoft respectfully submits that no reasonable factfinder could find inequitable conduct with respect to the '439 and '289 Patents, and Microsoft's motion for summary judgment should be granted.

Dated:  June 30, 2008                               Respectfully submitted,

**MICROSOFT CORPORATION**

 /s/ Thomas L. Halkowski
Thomas L. Halkowski (#4099)
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607
E-Mail: halkowski@fr.com

John E. Gartman
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099
E-Mail:  gartman@fr.com

Ruffin B. Cordell
Linda Liu Kordziel
Indranil Mukerji
William Sekyi
Kfir Levy
Kori Anne Bagrowski
Robert P. Courtney
FISH & RICHARDSON P.C.
1425 K Street N.W., Suite 1100
Washington D.C. 20005
Tel:  (202) 783-5070
Fax: (202) 783-2331
E-Mail: cordell@fr.com
E-Mail: kordziel@fr.com
E-Mail: mukerji@fr.com
E-Mail: sekyi@fr.com
E-Mail: kylevy@fr.com
E-Mail: bagrowski@fr.com
E-Mail: courtney@fr.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2008, I electronically filed with the Clerk of Court the attached **PUBLIC VERSION – MICROSOFT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT**, using CM/ECF which will send notification of such filing to the following individuals:

    Jack B. Blumenfeld - jblumenfeld@mnat.com
    Maryellen Noreika - mnoreika@mnat.com
    Richard J. Bauer - rbauer@mnat.com
    MORRIS, NICHOLS, ARSHT & TUNNEL LLP
    1201 North Market Street
    P.O. Box 1347
    Wilmington, DE 19899-1347
    *(Also served via hand delivery)*

    Steven C. Cherny - steven.cherny@lw.com
    Karen Y. Tu - karen.tu@lw.com
    Clement J. Naples - clement.naples@lw.com
    LATHAM & WATKINS LLP
    885 Third Avenue, Suite 1000
    New York, NY 10022

    David A. Nelson - david.nelson@lw.com
    Alan Devlin - alan.devlin@lw.com
    Brett M. Doran - brett.doran@lw.com
    LATHAM & WATKINS LLP
    Sears Tower, Suite 5800
    Chicago, IL 60606

    Michael J. Schallop - michael.schallop@lw.com
    LATHAM & WATKINS LLP
    140 Scott Drive
    Menlo Park, CA 94025

    Susan S. Azad - susan.azad@lw.com
    LATHAM & WATKINS LLP
    355 South Grand Avenue, Suite 100
    Los Angeles, CA 90071-1560

                                     */s/ Thomas L. Halkowski*
                                        Thomas L. Halkowski
                                        halkowski@fr.com